UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILIP L. TROPEANO, PETER TROPEANO,  )
CAROLYN PATTON,                      )
                Plaintiffs                )
                                          )
v.                                   )  CIVIL ACTION
                                          )  CASE NO. 03CV12231 (RGS)
CHARLENE DORMAN, BIANCA DORMAN,      )
LYDIA DORMAN, TODD DORMAN,           )
T&N REALTY TRUST AND                 )
CAPTAIN PARKER ARMS PARTNERSHIP,     )
                Defendants                )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), Charlene Dorman, Bianca Dorman, Lydia Dorman, Todd Dorman, T&N Realty Trust and Captain Parker Arms Partnership (collectively "the defendants"), hereby move to dismiss or in the alternative for summary judgment on Counts I and III of the plaintiffs' Complaint. As set forth in more detail below, the plaintiffs have failed to state a claim upon which relief can be granted as to Counts I and III because plaintiffs and defendants are partners under a partnership agreement which expressly precludes this action.

In addition, the plaintiffs have failed to allege facts sufficient to state a claim for relief as to Count II. Accordingly, the defendants' motion to dismiss or in the alternative for summary judgment should be allowed.

## I.   FACTS[1]

The plaintiffs Phillip L. Tropeano, Peter Tropeano and Carolyn Tropeano are partners in the Captain Parker Arms Partnership (the "Partnership," Complaint at ¶ 4). Collectively, the plaintiffs' interest was 42.86% of the Partnership. (Id.) The defendants, Charlene Dorman, Bianca Dorman, Lydia Dorman and Todd Dorman are the remaining partners in the Partnership with a 57.14% interest. (Id.)

The Partnership was created by agreement dated January 8, 1964 (the "1964 Partnership Agreement," attached hereto as Exhibit A, Complaint at ¶10). Section 1 of the 1964 Partnership Agreement provides that the purpose of the Partnership is for the partners to "become and remain partners in the business of acquiring the title to the land situated at the intersection of Waltham Street and Worthen Road, in said Lexington, and to construct apartments on said land, for the term of thirty years from the date hereof." (Exhibit A, at p.1)

During the thirty-year term of the 1964 Partnership Agreement it was amended by a modification dated March 11, 1987 (the "Amended Partnership Agreement," attached hereto as Exhibit B). The Amended Partnership Agreement provides, in pertinent part, several new sections governing the operation of the partnership:

> 4. Termination.
>    The partnership can be terminated by a vote of not less that 60% interest of 100% and upon such vote the partners shall so notify the Trustee to liquidate the assets and distribute the net principal and accumulated income as provided by number 8 hereunder.
>
> 5. Partner's Rights to Assign or Sell to Certain Individuals.
>    Any partner shall have the right to assign or sell any portion of his interest to his wife or his children or grandchildren, without the

---

[1] Since the defendants bring this motion pursuant to Fed. R. Civ. P. 12(b)(6), all of the allegations of the plaintiffs complaint must be viewed in the light most favorable to the plaintiffs. Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855,863 (1st Cir 1993)("[F] actual allegations in a complaint are assumed to be true when a court is passing on a motion to dismiss, but this tolerance does not extend to legal conclusions or to bald assertion." Citations omitted.)

582718_1                                    2

consent of the other partners, who may take title in their own name or a separate entity in which they will be the sole beneficiary.

6. Partners [sic] Right to Assign or Sell to Others.
Prior to any assignment or sale of any partner's interest or those having his interest to others than the aforesaid, the assigning or selling partner shall offer the same in writing with a certified copy of the terms offered to him by the proposed assignee or purchaser. The partners shall have thirty (30) business days to accept or reject the offer. If they do not accept the offer, the assignment or sale to the third party shall only be made with the consent of the other partners and those claiming through them which consent will not be unreasonably withheld.

8. Distribution on Termination.
In the event of the dissolution and termination of the partnership, the Trustees[2] shall be instructed to proceed to the liquidation of the partnership and the proceeds of the liquidation shall be applied and distributed in the following order of priority:
(a) Debts. To the payment of the debts and liabilities of the partnership (other than any loans or advances that may have been made by the partners to the partnership) and the expenses of liquidation
(b) Reserves. To the setting up of any reserves which the partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligation of the partnership arising out of or in connection with the operation and liquidation of the partnership. Any reserves shall be held by the Trustees as "Escrowee", to be held by then for the purpose of disbursing the reserves in payment of any of the contingencies, and, at the expiration of the period the partners shall deem advisable and have so instructed the Trustees to disburse the balance thereafter remaining to the partners.
(c) Partner loans. To the repayment of any loans or advances that may have been made by any of the partners to the partnership, but if the amount available for such repayment shall be insufficient, then pro rata on account thereof.
(d) Balance. Any balance remaining shall be distributed among all partners as follows according to their percentage holdings:
    (aa) Cash. In the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership.

---

[2] For purposes of the Partnership, the Trustees are defined as the trustees of the T&N Realty Trust, which is the entity that holds the real estate in trust for the benefit of the Partnership. (Complaint at ¶ 9)

(Exhibit B, at pp. 2-4.)

Immediately upon the execution of the Amended Partnership Agreement, on March 11, 1987, several of the then living partners took advantage of the modification to the 1964 Partnership Agreement by assigning their interest in the partnership upon their death to named family members. A copy of the assignments is attached hereto as Exhibit C. Plaintiffs Peter Tropeano and Carolyn Patton acquired their interests in the amended partnership by the terms of an assignment made on August 10, 1992. Exhibit D.

The remaining plaintiff, Philip L. Tropeano, assigned his interest in the partnership upon his deaths with certain qualifications to his wife in 1992. A copy of that assignment is attached hereto as Exhibit E. Additionally, plaintiff Carolyn Patton assigned her interest in the partnership subject to her death on April 11, 2000. A copy of that assignment is attached hereto as Exhibit F. As a consequence, each of the plaintiffs has specifically taken advantage of the new provisions governing the partnership relationship contained within the Amended Partnership Agreement.

Each of these assignments was accomplished by resorting to Paragraph 5 of the Amended Partnership Agreement.

Additionally, review of the Amended Partnership Agreement establishes that there is no express provision calling for an accounting. As such, entitlement to an accounting is governed by Massachusetts General Laws, Chapter 108A, Section 22.

## II.   ARGUMENT

(a)   <u>Valuation (Counts I and III)</u>

In Count I of the Complaint, the plaintiffs ask that this Court ascertain the value of their interest in the Partnership. The plaintiffs also appear to propose that "an appraisal by a Certified Appraiser of the real estate of the partnership showing a gross value of the 96 Unit Residential

Complex located in Lexington, Massachusetts" should be used to determine the value of their 42.86% interest in the Partnership. Count III demands an award of interest on the ascertained value.[3] The plaintiffs are wrong on each front, because the remedies they seek are contrary to the express terms of the Amended Partnership Agreement, which contains provisions governing the manner in which a partner's interest may be ascertained, transferred and distributed.[4]

This case raises what appears to be a novel issue of law in the Commonwealth of Massachusetts: whether a provision in a partnership agreement dictating how a departing partner's interest is to be valued and distributed is enforceable. But, the issue has been addressed in other jurisdictions. As set forth below, this Court should dismiss the Complaint and uphold the Amended Partnership Agreement as to the valuation of and compensation for a partner's interest. Thus plaintiffs' claims must fail.

The Amended Partnership Agreement expressly provides a mechanism for how partners may value and divest themselves of their interest in the Partnership. Such a valuation and divestiture may happen in one of three ways: (1) by *termination* of the Partnership and liquidation and distribution of the assets pursuant to Paragraphs 4 and 8; (2) by *assignment or sale* of the partner's interest to a family member without the consent of the other partners, pursuant to Paragraph 5; and (3) by assignment or sale to other third parties with consent of the other partners (not to be unreasonably withheld), pursuant to Paragraph 6.

---

[3] Count II demands a partnership accounting. The partnership routinely provides such an accounting to partners and will routinely do so again.
[4] It is important to note that it is not the position of the defendants that the plaintiffs are bound forever to the partnership. Rather, it is the defendants' position that plaintiffs must separate themselves from the partnership in accordance with its express terms and without resort at this juncture to the courts.

582718_1                                     5

1. <u>Termination of the Partnership</u>

Upon termination of the Partnership, valuation and distribution of partnership interests proceed under Section 8 of the Amended Partnership Agreement. Here, in the event of termination the Partnership Agreement provides for liquidation of the assets and distribution of cash proceeds, if any, to the partners after payment of other debts of the partnership. Section 8 states that, upon termination and "in the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership" (Exhibit B, at Section 8(d)(aa))

2. <u>Sale/Assignment to Certain Related Parties</u>

Absent termination, a partner may divest of and obtain compensation for his or her partnership interest by assigning or selling the interest to a certain class of family members, pursuant to Section 5 of the Amended Partnership Agreement. In this event, the other partners have no contractual rights or recourse as to the assignment or sale. Here, the value of the partnership interest is determined by what the family member is willing to pay for the assignment or sale of the partnership interest.

3. <u>Sale/Assignment to Others</u>

In the alternative, also absent termination, a partner may divest of and obtain compensation for his or her partnership interest by assigning or selling that interest to an unrelated third party under Section 6 of the Amended Partnership Agreement. In this event, the other partners have a right of first refusal and a right of approval (subject to the limitation of reasonableness) of the assignment or sale. Here, the value of the partnership interest is determined by what a willing third party or a willing partner would pay for the assignment or sale of the partnership interest.

The Amended Partnership Agreement allows for valuation and distribution of cash to partners, along the lines sought by Counts I and III only if the Partnership has been terminated by a vote of sixty percent of the interest in the Partnership and the assets have been liquidated. Such a vote has not been taken. The Plaintiffs do not allege that the Partnership has been terminated and, in fact, by letter dated August 21, 2003 (attached hereto as Exhibit G) the plaintiffs, acting through their attorney, expressly acknowledge that the Partnership is not terminated. The letter provides, at page 2, that the plaintiffs "recognize that in order to terminate the partnership, a vote of 60% of the partners is required. In the absence of this 60% vote, you will of course continue the partnership as the sole partners and we will be the general creditors of the partnership for our partnership interest." Accordingly, the plaintiffs cannot avail themselves of Sections 4 or 8 of the Amended Partnership Agreement and their claim for a judicial valuation must fail.

1.   The Terms of the Amended Partnership Agreement Govern

When an agreement is unambiguous, its terms and scope are to be determined based upon the language of the instrument itself. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996). The unambiguous terms of the Amended Partnership Agreement make it clear that the ownership of the Partnership is to be altered in one of three ways. As the mechanism chosen by plaintiffs in bringing this action, is inconsistent with the express terms of the agreement, the claims must be dismissed.

Without a termination of the Partnership, Section 5 and Section 6 of the Amended Partnership Agreement govern how plaintiffs must proceed in seeking to ascertain and receive value for their partnership interest. These sections do not allow the matter of valuation of a partner's interest to be ascertained by a court of law.

Courts have frequently upheld contractual provisions limiting a party's recourse to a judicial proceeding. In <u>Gertz v. Fontecchio</u>,[5] the Michigan Supreme Court found that a provision in a partnership agreement stating that if either of the partners desired to terminate the partnership at any time, the continuing partner could take over the partnership business at a rate at which it may be appraised and valued, was intended to provide a means for termination of the partnership without recourse to a judicial proceeding. Accordingly, one partner's desire to terminate was not permitted to defeat the other partner's rights under the partnership agreement by bringing a lawsuit.

Under Sections 5 and 6 of the Amended Partnership Agreement, value is to be assessed by the market, not by the courts. The Amended Partnership Agreement simply does not allow minority partners to commission an appraisal of some the Partnership assets and bring a court action to force majority partners to buy them out. Accordingly, the plaintiffs' claim asking this court to ascertain the value of their partnership interest contravenes the Amended Partnership Agreement and must fail.

2.      <u>The Massachusetts Uniform Partnership Act also Requires Dismissal</u>

The Massachusetts Uniform Partnership Act, M.G.L. c. 108A (the "UPA"), also bars the plaintiffs' claim for valuation by this court. Section 42 of the UPA establishes the rights of withdrawing partners:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1) (2) (3) (5) (6), or section thirty-eight (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, **unless otherwise agreed**, he or his legal representative as against such persons or partnership may have the value of

---

[5] 49 N.W.2d 121, 124, 331 Mich. 165, 169-170 (1951). See also, Cominos v. Kalkanes, 37 Wash.2d 843, 226 P.2d 863 (1951)(Parties entering into a partnership agreement may provide by the contract for dissolution and termination without resorting to legal methods of dissolution as provided by the UPA.)

582718_1                                                    8

>his interest at the date of dissolution ascertained and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership...

(emphasis supplied). "It is implicit in Section 42 in the use of the words 'unless otherwise agreed' that partners may provide by agreement the amounts to be paid to retiring partners by the surviving partnership." Devlin v. Rockey, 295 F.2d 266, 269 (1961). Since, as described above, the Amended Partnership Agreement provides for valuation and compensation of a partner's interest in a different manner than that prescribed by the UPA, the Amended Partnership Agreement must prevail and the plaintiffs' claim be dismissed.

Other courts considering this issue have consistently ruled that partnership agreements trump the UPA with respect to the rights of withdrawing partners. See e.g., Robbins v. Salem Radiology, 764 A.2d 885, 145 N.H. 415 (2000) (The UPA provisions on settling accounts between the partners after dissolution do not apply when there is an agreement to the contrary); Wood v. Gunther, 201 P.2d 874, 89 Cal. App.2d 718 (1949) (Partners may agree in their contract of co-partnership that interest of a deceased partner may be purchased by surviving partners for a stated sum or for an amount arrived at by a process or formula.); Balafas v. Balafas, 117 N.W.2d 20, 263 Minn. 267 (1962) (The UPA does not preclude an agreement between partners that upon the death of one the survivor should be the owner of property of the partnership, even though such agreement called for a disposition of partnership assets contrary to statutory provisions which would have been controlling in absence of such agreement.); In re Eddy's Estate, 49 N.E.2d 628, 290 NY 677 (1941) (The liquidation of a partnership dissolved by death of a member is controlled by partnership law only in the absence of a particular agreement on the subject made by the partners themselves.); Heath v. Spitzmiller, 663 S.W.2d 351 (Mo.App. S.D. 1983)

(Partnership agreement superseded general law, and thus withdrawing partner's rights were to be determined by partnership agreement.)

Accordingly, under the UPA the plaintiffs are bound by Section 5 and Section 6 of the Partnership Agreement, which dictate how the plaintiffs may seek to ascertain and ultimately recover the value of their interest in the Partnership. That is, where the Partnership has not been terminated, the plaintiffs – having withdrawn form the Partnership – are free to assign or sell their partnership interest and receive fair compensation from whatever assignee or buyer receives the interest. Under the Amended Partnership Agreement, however, the plaintiffs are not free to bring this action asking the court to ascertain the value of their partnership interest.

(b)  Accounting (Count II)

Finally, by Count II plaintiffs seek an accounting. The bare bones allegations of the Complaint are inadequate as a matter of law to entitle plaintiffs to the requested relief.[6]

There is no provision for an accounting in the Amended Partnership Agreement. In the absence of such a provision, the right to an accounting is governed by the terms of M.G.L. c.108A, §22. Section 22 only provides for an accounting, where at least one of four conditions is satisfied. Plaintiffs have failed to even allege that any of the conditions established by §22, which entitle a partner to an accounting, have in fact occurred. Thus, plaintiffs have failed to adequately state a claim for an accounting

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss all Counts of the plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

---

[6] As with the defendants' position regarding Counts I and III, it is not the defendants' position that plaintiffs are not entitled to an accounting. They have routinely received accountings and will be afforded further accountings. They have simply not alleged, and cannot allege, facts which entitle them to an accounting ordered by the Court.

582718_1                                10

>Respectfully submitted,
>Charlene Dorman, Bianca Dorman,
>Lydia Dorman, Todd Dorman, T&N
>Realty Trust and Captain Parker Arms
>Partnership
>By their Attorney,
>
>_____
>Gary C. Crossen, BBO # 106580
>Rubin and Rudman LLP
>50 Rowes Wharf
>Boston, MA 02110
>Tel.: (617) 330-7036

Dated: January 21, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2004, I sent a copy of the foregoing by overnight mail to Frederick J. Conroy, Esq., 114 Waltham Street, Lexington, MA 02421 and to Matthew J. Conroy, Esq., Belesi & Donovan, P.C., 1225 Franklin Avenue, Suite 400, Garden City, NY 11530.

_____
Gary C. Crossen