UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PHILIP L. TROPEANO, PETER TROPEANO, CAROLYN PATTON, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | CIVIL ACTION CASE NO. 03CV12231 (RGS) |
| CHARLENE DORMAN, BIANCA DORMAN, LYDIA DORMAN, TODD DORMAN, T&N REALTY TRUST AND CAPTAIN PARKER ARMS PARTNERSHIP, | ) ) ) ) ) | |
| Defendants | ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Defendants Charlene Dorman, Bianca Dorman, Lydia Dorman, Todd Dorman, T&N Realty Trust and Captain Parker Arms Partnership have collectively moved for an order of disqualification precluding Attorneys Frederick and Matthew Conroy, counsel for plaintiffs Philip L. Tropeano, Peter Tropeano and Carolyn Patton from continuing to represent the plaintiffs in this litigation. The grounds for the motion are that Frederick Conroy has historically represented each of the parties involved in the litigation in matters that are substantially the same or similar and thus is precluded by the Massachusetts Rules of Professional Conduct from representing one interest against the others in this litigation.[1] The defendants file this memorandum of law in support of their motion to disqualify.

---

[1] Additionally, it appears that Attorney Matthew Conroy, son of Frederick Conroy, is likely hampered by the same issues of disqualification that pertain to his father.

583518_1

## INTRODUCTION

Plaintiffs are represented in this litigation by Attorney Frederick Conroy of Lexington, MA and his son, Matthew Conroy of Garden City, NY. The Dorman defendants (hereinafter "the Dorman Partners") and the plaintiffs (hereinafter alternatively referred to as "the Tropeano Partners) are cousins. Affidavit of Charlene Dorman in Support of Motion to Disqualify, ¶2 (hereinafter "Dorman Aff. ¶2") The Dorman Partners acquired their interest in the partnership based upon the provisions of the will of Charlene Dorman's father, Alfred P. Tropeano, who died in 1997. As the largest interest holder in the partnership and by agreement of her children, Charlene began taking over responsibility as the managing partner of the Partnership in about 1998. Dorman Aff. ¶3.

Over approximately the past ten (10) years, dating to well before the death of her father, Charlene understood that Attorney Frederick J. Conroy ("Conroy") was an attorney for the Captain Parker Arms Partnership ("the Partnership") and that he also provided personal legal services to interest holders in the partnership, including her father. When her father died, Charlene had a number of meetings and telephone conversations with Conroy to discuss the affairs and future of the partnership. During at least one of these meetings, Conroy encouraged Charlene to take a more active role in the management and decision-making for the Partnership in keeping with her large personal holding. Thereafter, Charlene endeavored to take a more active role on the strength of Conroy's advice. Dorman Aff. ¶4.

Between 1994 and 1996, there was a litigation brought by one of Charlene's aunts, Emily Tropeano, against the Partnership. Charlene understands that the lawsuit was a petition to partition the real estate, which is now the subject of this litigation. That lawsuit was eventually settled. Conroy represented the Partnership and individual partners in that litigation. A copy of

one of the bills rendered by Conroy in that litigation is attached to the Dorman Affidavit as Exhibit A. A Release Of All Demands ("Release") was executed in December 1996 terminating the litigation. Conroy witnessed eight of the signatures on the Release. A copy of the Release is attached to the Dorman Affidavit as Exhibit B. Dorman Aff. ¶5.

During 2001 and continuing into 2002, Conroy advised the partners in the Partnership to consider changing its legal form to a limited partnership. He drafted a document for discussion purposes in connection with that recommendation. A copy of that document is attached to the Dorman Affidavit as Exhibit D. The document was never finalized and thus never signed. Charlene Dorman understood that Conroy was acting as the lawyer for the Partnership and both the Dorman Partners and the Tropeano Partners, at the time of that recommendation. Dorman Aff. ¶6.

The remaining defendant in the litigation is T & N Realty Trust ("the Realty Trust"). It was created in 1962 and holds title to the real estate, which is the subject of the litigation, in trust for the benefit of the Partnership. Charlene Dorman is a trustee of the Realty Trust. As of 2002, other trustees of the Realty Trust were Mary Carol Tropeano (Charlene's cousin and Philip's daughter), Laurence Tropeano (Charlene's brother), Peter L. Tropeano (one of the plaintiffs) and Philip L. Tropeano (another of the plaintiffs). Dorman Aff. ¶7.

In January 2002, a document was executed by the Trustees of the Realty Trust, acknowledging their powers and duties. This document is attached to the Dorman Affidavit as Exhibit C. The document was drafted by Conroy, who also notarized all of the signatures of the trustees. It was Charlene Dorman's understanding that Conroy was the lawyer for the Realty Trust and the Partnership, when this document was executed. Dorman Aff. ¶8.

In 2003, acting as the managing partner of the Partnership, Charlene Dorman decided to shift day to day management of the Partnership property to a professional management company, the Dolben Company. That decision ended the prior management, which was run by plaintiff Peter Tropeano. Ms. Dorman did this because she felt that a professional management company would be better suited to the task for a number of reasons and would perform the necessary services at greater benefit to the Partnership. Before the decision was made, she considered the change for two years or more, during which time she viewed Conroy to be the lawyer for the Partnership. During that period, she consulted with Conroy and he initially encouraged her to make the change in management. The dispute, leading up to this litigation, followed the management change. Dorman Aff. ¶9.

On August 21, 2003 Conroy sent a letter to the Dorman Partners. In it he reported that he represented the Tropeano Partners and that they sought to separate from the Partnership and to be paid for their interests. A copy of that letter is attached to the Dorman Affidavit as Exhibit E. Dorman Aff. ¶10.

When Charlene Dorman received Conroy's letter, she was disturbed that the lawyer who had represented all of the individual partners, her father, the Partnership, and the Realty Trust was now seeking to represent one group of partners in an adversarial situation against the other partners and the Partnership. She consulted with counsel, Kevin Sargis ("Sargis"), who thereafter communicated with Conroy about the issues raised by the August 21, 2003 letter. On two occasions, Sargis raised the issue of the propriety of Conroy representing the Tropeano Partners in the dispute. Copies of letters by Sargis to Conroy on September 15 and October 15, 2003 are attached to the Dorman Affidavit as Exhibits F and G respectively. On each occasion, Conroy failed to respond to the concern about his role. Dorman Aff. ¶11.

Also during the same time frame of the Fall 2003, Charlene Dorman sent a letter to her cousin, plaintiff Peter Tropeano. In that letter, she raised the issue of a conflict of interest in Conroy's new role as counsel to the Tropeano Partners. As she said in the letter:

> "As the attorney for T + N Realty Trust and as my father's attorney,
> Mr. Conroy several times acknowledged the rights that accompany majority
> partnership; in fact he encouraged my use of them. He did this quite strongly
> soon after my Dad's passing. Later, when we spoke of Dolben Company saving
> money for CPA [Captain Parker Arms Partnership], he said, "Of course it would,
> of course it would." On his own, I believe, he set the property up as a corporation
> and put me as president, encouraging me to do "whatever I wanted."
> Was he advising the minority partners along those lines or differently? I have
> been advised that a conflict of interest in a counsel is a very serious matter."

A copy of that letter is attached to the Dorman Affidavit as Exhibit H. Dorman Aff. ¶12.

## ARGUMENT

The Massachusetts Rules of Professional Conduct provide that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation. Rules of the Supreme Judicial Court, Rule 3:07 § 1.9(a).

    1.    <u>Former representation of a client</u>

On the strength of the information contained within the Dorman Affidavit, it cannot reasonably be doubted that Conroy has previously represented at least the Partnership and the Realty Trust both of whom are defendants in the matter now brought by the Tropeanos. That representation continued into at least 2002, at which time Conroy was counseling the partners to change the legal nature of the entity from a partnership to a limited partnership. By that time the attorney client relationship between Conroy and the two entities had existed for at least eight (8) years.

It is also clear that Conroy had an attorney client relationship with Charlene Dorman, personally. This is so because he had advised her regarding her legal rights as the lead member of the majority interest holders of the Partnership.

As this Court has observed "[A]n attorney will be disqualified from representing a client if confidential or privileged information obtained during the representation of a prior client *could* be used to the prior client's disadvantage." (emphasis in original) Smith & Nephew, Inc. v. Ethicon, Inc., 98 F.Supp.2d 106, 108 (D. Mass. 2000); citing Freund v. Butterworth, 117 F.3d 1543, 1574 (11th Cir. 1997). Also see, Borges v. Our Lady of the Sea Corp., 935 F.2d 436 (1st Cir. 1991).

Generally speaking, "confidential client information in a lawyer's possession need not be admissible under the rules of evidence to cause the disqualification of his firm." Smith & Nephew at 110.

Defendants recognize that motions to disqualify counsel are generally disfavored and that a party moving for disqualification bears a heavy burden. Felix v. Balkin, 49 F.Supp.2d 260 (S.D. NY, 1999). But any doubts about the need for disqualification must be resolved in favor of disqualification. Cheng v. GAF Corp., 631 F.2d 1052, 1059 (2d Cir. 1980), judgment vacated on other grounds, 450 U.S. 903, 101 S.Ct. 1338 (1981); See also, Deloury v. Deloury, 22 Mass.App.Ct. 611, 613 (Mass.App.Ct. 1986).

2.    Substantially similar matter

The litigation before the Court focuses on the respective rights of partners in a partnership that has previously been represented by Attorney Conroy, which the lawyer previously represented in other partnership litigation and which the lawyer recently represented in connection with an evaluation of whether to change its legal form. As was the case in Smith

& Nephew, the issue is "what [Conroy] knows because of the prior representation that might prove harmful to defendants' cause." Id.

The Ninth Circuit has construed a matter to be substantially similar if "the factual contexts of the two representations are similar or related." Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). The purpose of the rule is two fold. First, it is designed to preserve the secrets and confidences communicated to the lawyer by the client. Second, it protects the lawyer's professional commitment to his client. Id.; Savoy Oil & Gas, Inc. v. Preston Oil Company, 828 F.Supp. 34 (W.D. Mich. 1993).

The Comment to Rule 3.07 §1.09(a) indicates that "a lawyer could not properly [under the Rule] seek to rescind on behalf of a new client a contract drafted on behalf of the former client." Her, similarly we are faced with counsel who seeks to construe the language of a partnership agreement on behalf of new clients (i.e. The Tropeano Partners, a subset of the entire partnership group) in a fashion adverse to former clients (the Dorman Partners, the Partnership and the Realty Trust), where he has previously and extensively represented all parties under the very same Partnership Agreement.

The Second Circuit has evaluated similar disqualification motions using the "substantial relationship test." United States Football League v. National Football League, 605 F.Supp. 1448 (S.D. NY 1985).[2] Using the test, an attorney should be disqualified if:

1. The moving party is a former client of the adverse party's counsel;

2. There is a substantial relationship between the subject matter of the prior representation and the issues in the present lawsuit; and

---

[2] The Massachusetts Supreme Judicial Court has cited the substantial relationship test approvingly. See, Adoption of Erica, 426 Mass. 55, 686 N.E.2d 467 (1997).

3.  The attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of representation of the former client.

Id. at 1452.

Here, as discussed above, there can be no doubt that the defendants are former clients of Attorney Conroy.

There can be little question here that there is a substantial relationship between the present lawsuit and the prior representation. Here, the lawsuit involves the parties rights under a partnership agreement. Attorney Conroy has (1) previously litigated on behalf of the partnership in defense of an action brought by another partner (i.e. the petition to partition); (2) provided legal advice to the partners, including Charlene Dorman in operating the partnership under the terms of the partnership agreement; (3) provided legal advice to the partners in consideration of whether or not to change the legal form of the partnership; and (4) was the lawyer for the Partnership and the individual partners, right up until the time this dispute arose..   Additionally, Attorney Conroy provided legal advice to Charlene Dorman regarding a change of management for the partnership property, which management change appears to have been the catalyst for the litigation.

In cases involving representation in a substantially similar matter, "the district court is required to presume that confidences and secrets were divulged by the former client to the attorney, for a requirement of proof would inevitably 'tear aside the protective cloak drawn about the lawyer-client relationship,' and to disqualify counsel as a prophylactic." Felix v. Balkin, at 268.

For all of the reasons cited herein, the defendants respectfully request that Attorney Frederick Conroy be disqualified from continued representation of the plaintiffs in this litigation.[3]

## CONCLUSION

For the reasons cited above, defendants respectfully request that their motion to disqualify counsel for the plaintiffs be granted.

Respectfully submitted,
CHARLENE DORMAN, BIANCA
DORMAN, LYDIA DORMAN, TODD
DORMAN, T&N REALTY TRUST and
CAPTAIN PARKER ARMS
PARTNERSHIP,
By their attorney,

Gary C. Crossen (BBO#106580)
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA  02110
(671) 330-7000

---

[3] The plaintiffs also move for disqualification of Attorney Matthew Conroy.  As grounds for such disqualification, plaintiffs urge that the same policy reasons which apply to imputed disqualification of a law firm pursuant to Rule 3:07 §1.10, should be applied to the representation of plaintiffs by Attorney Matthew Conroy, the son of Attorney Frederick Conroy.  Absent disqualification of Matthew Conroy, plaintiffs respectfully request that he be directed not to consult with Frederick Conroy in connection with the future litigation of this matter.