UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILIP L. TROPEANO, PETER TROPEANO,
CAROLYN PATTON,
            Plaintiffs

v.

CHARLENE DORMAN, BIANCA DORMAN,
LYDIA DORMAN, TODD DORMAN,
T&N REALTY TRUST AND
CAPTAIN PARKER ARMS PARTNERSHIP,
            Defendants

CIVIL ACTION
CASE NO. 03CV12231 (RGS)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Defendants, Charlene Dorman, Bianca Dorman, Lydia Dorman, Todd Dorman, T&N Realty Trust and Captain Parker Arms Partnership (collectively "the defendants"), hereby file this reply memorandum in response to the opposition of the plaintiffs to defendants' motion to dismiss or in the alternative for summary judgment on the plaintiffs' Complaint.

### ARGUMENT

a.    **"Retirement" is not intended by the Partnership Agreement.**

The plaintiffs argue that the Partnership Agreement ("the Agreement") is silent on the mechanism for "retirement" from the partnership. The simple response is that the Partnership Agreement does not provide for "retirement," because such a provision manifestly was not the intent of those who formed the agreement. In other words, there were various mechanisms created for opting out of the Captain Parker Arms Partnership: retirement was not one of them.

582718_1

1

To conclude otherwise, would be to ignore the intent of the parties as established from a reading of the clear and unambiguous language of the Amended Partnership Agreement.

It is correct, as Plaintiffs' argue, that the original Partnership Agreement as executed on "January 08, 1964 does not address termination, dissolution, withdrawal, retirement, valuation or liquidation in any way" and that it thereafter "specifically incorporate[d] Massachusetts General Laws Ch. 108A by reference in paragraph 7." Plaintiffs' Opposition Memorandum, p. 6-7. But the Plaintiffs' then conveniently ignore the implications of the Modification to the Agreement, dated March 11, 1987.

In the Modification, the partners amended the original partnership agreement by specifically providing for continuing existence of the partnership and for mechanisms for partners to extract themselves from the partnership. As an example, the Modification provided circumstances that had been omitted from the original 1964 Agreement: termination, dissolution, valuation and liquidation. A clear reading of the Agreement, as Modified in 1987, establishes that there were newly agreed upon mechanisms for extraction from the partnership: retirement was simply not one of them.

The resulting Agreement ("the Amended Partnership Agreement") contains a number of new provisions which are inconsistent with, or otherwise not contained within Ch. 108A. Specifically:

1. the partnership does not terminate on the death or withdrawal of a partner, but rather on a 60% vote of the partnership interests;

2. the partners can transfer their interest in the partnership to defined members of their family, or entities controlled by them, without any approval process; and

582718_1    2

3. the partners can transfer their interest in the partnership to third parties, after adhering to a right of first refusal process that requires the offer of the third party to be made available to the other partners for acceptance or rejection before transfer can be made to the third party.[1]

Review of these provisions added in 1987 by the Modification makes clear the intent of the Modification and thus the intent of the Amended Partnership Agreement. The partnership was to continue indefinitely and separation of partners from the partnership was to be on only limited terms. To accept the position urged by the Plaintiffs', i.e. that partners may "retire" and thus force the remaining partners to buy out their interests, would be inconsistent with the clear terms of the Amended Partnership Agreement.

When an agreement is unambiguous, its terms and scope are to be determined based upon the language of the instrument itself. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996).

Unless there is an ambiguity in the contract, or an expressly defined term, the interpretation of contract language "presents a question of law for the court." "The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose." USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116, 546 N.E.2d 888 (1989); Rey v. Lafferty, 990 F.2d 1379 (1st Cir. 1993)

In construing a contract the Court is to "take into account not only the meaning of the individual words of the contract and their interrelation with each contract provision and the contract as a whole, but also the attendant facts and circumstances. Massachusetts Municipal Wholesale Electric Co., v. Danvers, 411 Mass. 39, 45-46 (1991).

---

[1] In the event of rejection of the right of refusal by the partners, the partners must consent to a third party transfer, unless

582718_1

3

The plaintiffs seek a construction of the contract that would permit a partner or partners to "retire" from the partnership and force the remaining partners to buy out their interests at a value to be ascertained in the context of this litigation. Complaint, Count 1. Such an interpretation would be inconsistent with the specific terms of the Amended Partnership Agreement and, thus, would not be a reasonable and practical construction of the contract as a whole. The Amended Partnership Agreement specifically permits a partner to (a) transfer a partnership interest to family interests without consent of the other partners (¶ 5); and (b) transfer a partnership interest to third parties in an arms length transaction at a fair market price, subject to the right of first refusal held by the other partners (¶ 6). The contract interpretation and remedy the plaintiffs seek is directly inconsistent with ¶ 6 of the Amended Partnership Agreement. This is so, because on one hand it would impose a requirement on the remaining partners to buy out a partnership interest in a transaction, that on the other hand they are specifically permitted to reject by such ¶ 6.

### b. The Massachusetts Uniform Partnership Act also Requires Dismissal

As already discussed in some detail in the original memorandum of law relating to this motion, the Massachusetts Uniform Partnership Act, M.G.L. c. 108A (the "UPA"), also supports dismissal of the plaintiffs' claim for valuation by this court. Section 42 of the UPA establishes the rights of withdrawing partners:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1) (2) (3) (5) (6), or section thirty-eight (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, **unless otherwise agreed**, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership…

---

failure to give consent would be deemed reasonable.

582718_1                                    4

(emphasis supplied). In the face of an agreement setting out different mechanisms for separation from the partnership, the UPA yields. Devlin v. Rockey, 295 F.2d 266, 269 (1961). Since, as described above, the Amended Partnership Agreement provides for valuation and compensation of a partner's interest in a different manner than that prescribed by the UPA, the Amended Partnership Agreement must prevail and the plaintiffs' claim must be dismissed.

## CONCLUSION

For the foregoing reasons as well as those enumerated in the Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6), the Court should dismiss all Counts of the plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,
Charlene Dorman, Bianca Dorman,
Lydia Dorman, Todd Dorman, T&N
Realty Trust and Captain Parker Arms
Partnership
By their Attorney,

Gary C. Crossen, BBO # 106580
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA  02110
Tel.: (617) 330-7036

Dated: March 11, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2004, I sent a copy of the foregoing by overnight mail to Frederick J. Conroy, Esq., 114 Waltham Street, Lexington, MA 02421, to Matthew J. Conroy, Esq., Belesi & Donovan, P.C., 1225 Franklin Avenue, Suite 400, Garden City, NY 11530 and to Thomas M. Ciampa, Esq., Ciampa & Associates, 33 Mount Vernon Street, Boston, MA 02108.

_____
Gary C. Crossen

582718_1                                6