UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -2 P 3: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

PHILIP L. TROPEANO, PETER TROPEANO, )
CAROLYN PATTON, )
              Plaintiffs )
)
   v. )
)
CHARLENE DORMAN, BIANCA DORMAN, )
LYDIA DORMAN, TODD DORMAN, )
T&N REALTY TRUST AND )
CAPTAIN PARKER ARMS PARTNERSHIP, )
              Defendants )

CIVIL ACTION
CASE NO. 03CV12231 (RGS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

Pursuant to Fed. R. Civ. P., 12(b)(6), Charlene Dorman, Bianca Dorman, Lydia Dorman, Todd Dorman, T&N Realty Trust and Captain Parker Arms Partnership (collectively, "the defendants"), hereby move to dismiss or in the alternative for summary judgment on Counts I-VIII of the First Amended Complaint. As set forth in more detail below, the plaintiffs have failed to state a claim upon which relief can be granted because plaintiffs and defendants are partners under a partnership agreement which expressly precludes this action.

## I.    FACTS

The plaintiffs Phillip L. Tropeano, Peter Tropeano and Carolyn Tropeano are partners in the Captain Parker Arms Partnership (the "Partnership," First Amended Complaint at ¶ 30). Collectively, the plaintiffs' interest was 42.86% of the Partnership. (Id.) The defendants, Charlene Dorman, Bianca Dorman, Lydia Dorman and Todd Dorman are the remaining partners in the Partnership with a 57.14% interest. (Id.)

The Partnership was created by agreement dated January 8, 1964 (the "1964 Partnership Agreement," attached as Exhibit A," First Amended Complaint at ¶11). Section 1 of the 1964 Partnership Agreement provides that the purpose of the Partnership is for the partners to "become and remain partners in the business of acquiring the title to the land situated at the intersection of Waltham Street and Worthen Road, in said Lexington, and to construct apartments on said land, for the term of thirty years from the date hereof." (First Amended Complaint Exhibit A, at p.1)

During the thirty-year term of the 1964 Partnership Agreement it was amended by a modification dated March 11, 1987 (the "Amended Partnership Agreement," attached to First Amended Complaint as Exhibit B). The Amended Partnership Agreement provides, in pertinent part, several new sections governing the operation of the partnership:

4.    Termination.
      The partnership can be terminated by a vote of not less that 60% interest of 100% and upon such vote the partners shall so notify the Trustee to liquidate the assets and distribute the net principal and accumulated income as provided by number 8 hereunder.

5.    Partner's Rights to Assign or Sell to Certain Individuals.
      Any partner shall have the right to assign or sell any portion of his interest to his wife or his children or grandchildren, without the consent of the other partners, who may take title in their own name or a separate entity in which they will be the sole beneficiary.

6.    Partners [sic] Right to Assign or Sell to Others.
      Prior to any assignment or sale of any partner's interest or those having his interest to others than the aforesaid, the assigning or selling partner shall offer the same in writing with a certified copy of the terms offered to him by the proposed assignee or purchaser. The partners shall have thirty (30) business days to accept or reject the offer. If they do not accept the offer, the assignment or sale to the third party shall only be made with the consent of the other partners and those claiming through them which consent will not be unreasonably withheld.

8.    Distribution on Termination.

In the event of the dissolution and termination of the partnership, the Trustees[1] shall be instructed to proceed to the liquidation of the partnership and the proceeds of the liquidation shall be applied and distributed in the following order of priority:

(a)    Debts.  To the payment of the debts and liabilities of the partnership (other than any loans or advances that may have been made by the partners to the partnership) and the expenses of liquidation

(b)    Reserves.  To the setting up of any reserves which the partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligation of the partnership arising out of or in connection with the operation and liquidation of the partnership.  Any reserves shall be held by the Trustees as "Escrowee", to be held by then for the purpose of disbursing the reserves in payment of any of the contingencies, and, at the expiration of the period the partners shall deem advisable and have so instructed the Trustees to disburse the balance thereafter remaining to the partners.

(c)    Partner loans.  To the repayment of any loans or advances that may have been made by any of the partners to the partnership, but if the amount available for such repayment shall be insufficient, then pro rata on account thereof.

(d)    Balance.  Any balance remaining shall be distributed among all partners as follows according to their percentage holdings:

   (aa)    Cash.  In the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership.

(First Amended Complaint, Exhibit B, at pp. 2-4.)

Immediately upon the execution of the Amended Partnership Agreement, on March 11, 1987, several of the then living partners took advantage of the modification to the 1964 Partnership Agreement by assigning their interest in the partnership upon their death to named family members.  A copy of the assignments is attached to Memorandum of Law in Support of Defendants Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) ("First Motion to Dismiss") as Exhibit C.  Plaintiffs Peter Tropeano and Carolyn Patton acquired their interests in

---

[1] For purposes of the Partnership, the Trustees are defined as the trustees of the T&N Realty Trust, which is the entity that holds the real estate in trust for the benefit of the Partnership.  (Complaint at ¶ 9)

the amended partnership by the terms of an assignment made on August 10, 1992. Attached to First Motion to Dismiss as Exhibit D.

The remaining plaintiff, Philip L. Tropeano, assigned his interest in the partnership upon his death with certain qualifications to his wife in 1992. A copy of that assignment is attached to First Motion to Dismiss as Exhibit E. Additionally, plaintiff Carolyn Patton assigned her interest in the partnership subject to her death on April 11, 2000. A copy of that assignment is attached to First Motion to Dismiss as Exhibit F. As a consequence, each of the plaintiffs has specifically taken advantage of the new provisions governing the partnership relationship contained within the Amended Partnership Agreement.

Each of these assignments was accomplished by resorting to Paragraph 5 of the Amended Partnership Agreement.

Additionally, review of the Amended Partnership Agreement establishes that there is no express provision calling for an accounting. As such, entitlement to an accounting is governed by Massachusetts General Laws, Chapter 108A, Section 22.

## II.     PROCEDURAL BACKGROUND

In the original Complaint, plaintiffs pursuant to M.G.L. ch. 108A, § 29, sought to "retire" from the Partnership. The Complaint describes the Partnership as a "Massachusetts Partnership created by written instrument dated January 8, 1964 [the "1964 Partnership Agreement"], as amended," by modification dated March 11, 1987, (the "Amended Partnership Agreement"). Complaint, at ¶ 10.a. The Complaint contains no assertion that the written Amended Partnership Agreement ceased to be in effect.

Defendants moved to dismiss the Complaint on the grounds that, *inter alia*, the Amended Partnership Agreement clearly and unambiguously states the three exclusive ways in which a

partner may disassociate himself or herself from the Partnership. "Retirement" pursuant to M.G.L. ch. 108A, §29 is not among them.

Plaintiffs Opposition argued, incorrectly, that the Amended Partnership Agreement specifically incorporated by reference Massachusetts General Laws Chapter 108A including the right to retire under Section 29. Again, there was no mention of the allegation that the Partnership Agreement had terminated.

Defendants' Reply Memorandum articulated the fatal flaws in plaintiffs argument: the plain terms of the Amended Partnership Agreement preclude "retirement" as an option for partners who wish to withdraw from the Partnership and under the Uniform Partnership Agreement this express agreement among the Partners trumps the general application of M.G.L. ch. 108A, § 29.

In the First Amended Complaint, Plaintiffs now advance a new theory of the case: the Amended Partnership Agreement terminated in 1994 on the thirty-year anniversary of its creation, at which time the First Amended Partnership was automatically converted into a partnership at will pursuant to M.G.L. ch. 108A, §23. First Amended Complaint, ¶ 29. For the reasons set forth below, Plaintiffs are wrong as a matter of law and the Court should dismiss the First Amended Complaint.[2]

## III.    ARGUMENT

### (a)    The Partnership Agreement Dictates Methods for Withdrawal, Valuation and Distribution

---

[2] To the extent the First Amended Complaint raises the same or similar arguments addressed in the Complaint, Defendants renew, restate and incorporate by reference herein their Memorandum of Law and Reply Memorandum of Law in Support of Defendants' Motion to Dismiss for failure to State a Claim under Rule 12 (b)(6).

In the First Amended Complaint, the plaintiffs ask that this Court for various forms of declaratory and other relief to enable plaintiffs to withdraw from and ascertain the value of their interest in the Partnership..[3] The plaintiffs are wrong on each front, because the remedies they seek are contrary to the express terms of the Amended Partnership Agreement, which contains provisions governing the manner in which a partner may withdraw from the Partnership and how a partner's interest may be ascertained, transferred and distributed.[4]

This case raises what appears to be a novel issue of law in the Commonwealth of Massachusetts: whether provisions in a partnership agreement dictating how a partner can withdraw and have his or her interests valued and distributed is enforceable. But, the issue has been addressed in other jurisdictions. As set forth below, this Court should dismiss the First Amended Complaint and uphold the Amended Partnership Agreement as to the withdrawal from, valuation of and compensation for a partner's interest. Thus plaintiffs' claims must fail.

The Amended Partnership Agreement expressly provides a mechanism for how partners may value and divest themselves of their interest in the Partnership. Such a valuation and divestiture may happen in one of three ways: (1) by *termination* of the Partnership and liquidation and distribution of the assets pursuant to Paragraphs 4 and 8; (2) by *assignment or sale* of the partner's interest to a family member without the consent of the other partners, pursuant to Paragraph 5; and (3) by assignment or sale to other third parties with consent of the other partners (not to be unreasonably withheld), pursuant to Paragraph 6.

1.    Termination of the Partnership

---

[3] Count VIII demands a partnership accounting. The partnership routinely provides such an accounting to partners and will routinely do so again.

[4] It is important to note that it is not the position of the defendants that the plaintiffs are bound forever to the partnership. Rather, it is the defendants' position that plaintiffs must separate themselves from the partnership in accordance with its express terms and without resort at this juncture to the courts.

Upon termination of the Partnership, valuation and distribution of partnership interests proceed under Section 8 of the Amended Partnership Agreement. Here, in the event of termination the Partnership Agreement provides for liquidation of the assets and distribution of cash proceeds, if any, to the partners after payment of other debts of the partnership. Section 8 states that, upon termination and "in the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership" (Exhibit B, at Section 8(d)(aa))

      2.     Sale/Assignment to Certain Related Parties

Absent termination, a partner may divest of and obtain compensation for his or her partnership interest by assigning or selling the interest to a certain class of family members, pursuant to Section 5 of the Amended Partnership Agreement. In this event, the other partners have no contractual rights or recourse as to the assignment or sale. Here, the value of the partnership interest is determined by what the family member is willing to pay for the assignment or sale of the partnership interest.

      3.     Sale/Assignment to Others

In the alternative, also absent termination, a partner may divest of and obtain compensation for his or her partnership interest by assigning or selling that interest to an unrelated third party under Section 6 of the Amended Partnership Agreement. In this event, the other partners have a right of first refusal and a right of approval (subject to the limitation of reasonableness) of the assignment or sale. Here, the value of the partnership interest is determined by what a willing third party or a willing partner would pay for the assignment or sale of the partnership interest.

The Amended Partnership Agreement allows for valuation and distribution of cash to partners, only if the Partnership has been terminated by a vote of sixty percent of the interest in the Partnership and the assets have been liquidated. Such a vote has not been taken. The Plaintiffs do not allege that the Partnership has been terminated and, in fact, by letter dated August 21, 2003 (attached to First Amended Complaint as Exhibit C) the plaintiffs, acting through their attorney, expressly acknowledge that the Partnership is not terminated. The letter provides, at page 2, that the plaintiffs "recognize that in order to terminate the partnership, a vote of 60% of the partners is required. In the absence of this 60% vote, you will of course continue the partnership as the sole partners and we will be the general creditors of the partnership for our partnership interest." Accordingly, the plaintiffs cannot avail themselves of Sections 4 or 8 of the Amended Partnership Agreement and their claims for judicial dissolution and valuation must fail.

### (b)     The Terms of the Amended Partnership Agreement Govern

When an agreement is unambiguous, its terms and scope are to be determined based upon the language of the instrument itself. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996). The unambiguous terms of the Amended Partnership Agreement make it clear that the ownership of the Partnership is to be altered in one of three ways. As the mechanism chosen by plaintiffs in bringing this action, is inconsistent with the express terms of the agreement, the claims must be dismissed.

Without a termination of the Partnership, Section 5 and Section 6 of the Amended Partnership Agreement govern how plaintiffs must proceed in seeking to ascertain and receive value for their partnership interest. These sections do not allow the matter of valuation of a partner's interest to be ascertained by a court of law.

Courts have frequently upheld contractual provisions limiting a party's recourse to a judicial proceeding. In <u>Gertz v. Fontecchio</u>,[5] the Michigan Supreme Court found that a provision in a partnership agreement stating that if either of the partners desired to terminate the partnership at any time, the continuing partner could take over the partnership business at a rate at which it may be appraised and valued, was intended to provide a means for termination of the partnership without recourse to a judicial proceeding. Accordingly, one partner's desire to terminate was not permitted to defeat the other partner's rights under the partnership agreement by bringing a lawsuit.

Under Sections 5 and 6 of the Amended Partnership Agreement, value is to be assessed by the market, not by the courts. The Amended Partnership Agreement simply does not allow minority partners to commission an appraisal of some the Partnership assets and bring a court action to force majority partners to buy them out. Accordingly, the plaintiffs' claim asking this court to ascertain the value of their partnership interest contravenes the Amended Partnership Agreement and must fail.

### (c)    The Massachusetts Uniform Partnership Act also Requires Dismissal

The Massachusetts Uniform Partnership Act, M.G.L. c. 108A (the "UPA"), also bars the plaintiffs' claim for valuation by this court. Section 42 of the UPA establishes the rights of withdrawing partners:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1) (2) (3) (5) (6), or section thirty-eight (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, **unless otherwise agreed**, he or his legal representative as against such persons or partnership may have the value of

---

[5] 49 N.W.2d 121, 124, 331 Mich. 165, 169-170 (1951). <u>See also</u>, <u>Cominos v. Kalkanes</u>, 37 Wash.2d 843, 226 P.2d 863 (1951)(Parties entering into a partnership agreement may provide by the contract for dissolution and termination without resorting to legal methods of dissolution as provided by the UPA.)

> his interest at the date of dissolution ascertained and shall receive as an ordinary
> creditor an amount equal to the value of his interest in the dissolved partnership...

(emphasis supplied). "It is implicit in Section 42 in the use of the words 'unless otherwise agreed'

that partners may provide by agreement the amounts to be paid to retiring partners by the

surviving partnership." Devlin v. Rockey, 295 F.2d 266, 269 (1961). Since, as described above,

the Amended Partnership Agreement provides for valuation and compensation of a partner's

interest in a different manner than that prescribed by the UPA, the Amended Partnership

Agreement must prevail and the plaintiffs' claim be dismissed.

Other courts considering this issue have consistently ruled that partnership agreements

trump the UPA with respect to the rights of withdrawing partners. See e.g., Robbins v. Salem

Radiology, 764 A.2d 885, 145 N.H. 415 (2000) (The UPA provisions on settling accounts

between the partners after dissolution do not apply when there is an agreement to the contrary);

Wood v. Gunther, 201 P.2d 874, 89 Cal. App.2d 718 (1949) (Partners may agree in their contract

of co-partnership that interest of a deceased partner may be purchased by surviving partners for a

stated sum or for an amount arrived at by a process or formula.); Balafas v. Balafas, 117 N.W.2d

20, 263 Minn. 267 (1962) (The UPA does not preclude an agreement between partners that upon

the death of one the survivor should be the owner of property of the partnership, even though

such agreement called for a disposition of partnership assets contrary to statutory provisions

which would have been controlling in absence of such agreement.); In re Eddy's Estate, 49

N.E.2d 628, 290 NY 677 (1941) (The liquidation of a partnership dissolved by death of a member

is controlled by partnership law only in the absence of a particular agreement on the subject made

by the partners themselves.); Heath v. Spitzmiller, 663 S.W.2d 351 (Mo.App. S.D. 1983)

(Partnership agreement superseded general law, and thus withdrawing partner's rights were to be determined by partnership agreement.)

Accordingly, under the UPA the plaintiffs are bound by Section 5 and Section 6 of the Partnership Agreement, which dictate how the plaintiffs may seek to ascertain and ultimately recover the value of their interest in the Partnership. That is, where the Partnership has not been terminated, the plaintiffs – having withdrawn form the Partnership – are free to assign or sell their partnership interest and receive fair compensation from whatever assignee or buyer receives the interest. Under the Amended Partnership Agreement, however, the plaintiffs are not free to bring this action asking the court to ascertain the value of their partnership interest.

    (d)    **"Retirement" is not intended by the Partnership Agreement.**

The plaintiffs argue that the Amended Partnership Agreement is silent on the mechanism for "retirement" from the partnership. The simple response is that the amended Partnership Agreement does not provide for "retirement," because such a provision manifestly was not the intent of those who formed the agreement. In other words, there were various mechanisms created for opting out of the Captain Parker Arms Partnership: retirement was not one of them. To conclude otherwise, would be to ignore the intent of the parties as established from a reading of the clear and unambiguous language of the Amended Partnership Agreement.

It is correct, as Plaintiffs' argue, that the original Partnership Agreement as executed on "January 08, 1964 does not address termination, dissolution, withdrawal, retirement, valuation or liquidation in any way" and that it thereafter "specifically incorporate[d] Massachusetts General Laws Ch. 108A by reference in paragraph 7." Plaintiffs' Opposition Memorandum, p. 6-7. But the Plaintiffs' then conveniently ignore the implications of the Modification to the Agreement, dated March 11, 1987.

In the Modification, the partners amended the original partnership agreement by specifically providing for continuing existence of the partnership and for mechanisms for partners to extract themselves from the partnership. As an example, the Modification provided circumstances that had been omitted from the original 1964 Agreement: termination, dissolution, valuation and liquidation. A clear reading of the Agreement, as Modified in 1987, establishes that there were newly agreed upon mechanisms for extraction from the partnership: retirement was simply not one of them.

The resulting Agreement (the Amended Partnership Agreement) contains a number of new provisions which are inconsistent with, or otherwise not contained within Ch. 108A. Specifically:

1. the partnership does not terminate on the death or withdrawal of a partner, but rather on a 60% vote of the partnership interests;

2. the partners can transfer their interest in the partnership to defined members of their family, or entities controlled by them, without any approval process; and

3. the partners can transfer their interest in the partnership to third parties, after adhering to a right of first refusal process that requires the offer of the third party to be made available to the other partners for acceptance or rejection before transfer can be made to the third party.[6]

Review of these provisions added in 1987 by the Modification makes clear the intent of the Modification and thus the intent of the Amended Partnership Agreement. The partnership was to continue indefinitely and separation of partners from the partnership was to be on only limited terms. To accept the position urged by the Plaintiffs', i.e. that partners may "retire" and thus

---

[6] In the event of rejection of the right of refusal by the partners, the partners must consent to a third party transfer, unless failure to give consent would be deemed reasonable.

force the remaining partners to buy out their interests, would be inconsistent with the clear terms of the Amended Partnership Agreement.

When an agreement is unambiguous, its terms and scope are to be determined based upon the language of the instrument itself. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996).

Unless there is an ambiguity in the contract, or an expressly defined term, the interpretation of contract language "presents a question of law for the court." "The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose." USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116, 546 N.E.2d 888 (1989); Rey v. Lafferty, 990 F.2d 1379 (1st Cir. 1993)

In construing a contract the Court is to "take into account not only the meaning of the individual words of the contract and their interrelation with each contract provision and the contract as a whole, but also the attendant facts and circumstances. Massachusetts Municipal Wholesale Electric Co., v. Danvers, 411 Mass. 39, 45-46 (1991).

The plaintiffs seek a construction of the contract that would permit a partner or partners to "retire" from the partnership and force the remaining partners to buy out their interests at a value to be ascertained in the context of this litigation. Such an interpretation would be inconsistent with the specific terms of the Amended Partnership Agreement and, thus, would not be a reasonable and practical construction of the contract as a whole. The Amended Partnership Agreement specifically permits a partner to (a) transfer a partnership interest to family interests without consent of the other partners (¶ 5); and (b) transfer a partnership interest to third parties in an arms length transaction at a fair market price, subject to the right of first refusal held by the other partners (¶ 6). The contract interpretation and remedy the plaintiffs seek is directly

inconsistent with ¶ 6 of the Amended Partnership Agreement. This is so, because on one hand it would impose a requirement on the remaining partners to buy out a partnership interest in a transaction, that on the other hand they are specifically permitted to reject by such ¶ 6.

(e)    **The Partnership Agreement Did Not Terminate on January 8, 1994.**

The 1964 Partnership Agreement provided that the Partners "will become and remain partners… for the term of thirty years from the date hereof." 1964 Partnership Agreement, ¶ 1, Exhibit A to First Amended Complaint. Clearly, the death of one of the original partners, Joseph P. Tropeano, prior to the end of thirty years, made it impossible for all of the named original partners to "remain partners." Accordingly, the surviving partners -- Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano and Phillip Tropeano -- executed the Amended Partnership Agreement on March 11, 1987. First Amended Complaint, ¶ 22 and Exhibit B thereto.

The Amended Partnership Agreement expressly affirmed the existence of the Partnership among the surviving partners and it also expressly stated the new way in which the Partnership could be terminated. Rather than termination occurring automatically after a term of years, termination would now occur only upon a 60% vote of the Partners. Paragraph 4, Amended Partnership Agreement.[7]

Quite simply, the Amended Partnership Agreement's provision for termination by a 60% vote supersedes the 1964 Partnership Agreement's provision for termination by the end of a 30-year term.

---

[7] While termination occurs only upon a 60% vote, the partners are free to withdraw from the Partnership at any time, provided they do so as provided in the Amended Partnership Agreement. Under the express terms of the Agreement, there are two ways in which partners can withdraw from the Partnership absent termination: (1) a Partner can assign or sell his or her rights to a family member pursuant to Paragraph 5 of the Agreement; or (2) a partner can assign or sell his or her interest to a third party pursuant to Paragraph 6 of the Agreement subject to a thirty day right of first refusal held by the other partners.

It is clear as a matter of Massachusetts law that a contract will not be deemed terminable-at-will merely because it contains no precise expiration date, if the contract delineates circumstances in which the parties may cease to be obligated to perform it." G.M. Abodeely Insurance Agency, Inc. v. Commerce Insurance Company, 41 Mass. App. Ct. 274, 276, 669 N.E. 2d 787, 789 (1996), quoting Kirkley v. F.H. Roberts Co., 268 Mass. 246, 252, 167 N.E. 289 (1929). Since the Amended Partnership Agreement specifies the sole circumstance in which the partners can terminate the Partnership – a 60% vote of the partners – the Amended Partnership Agreement is not terminable-at-will. To conclude otherwise would render the 1987 amendment meaningless.

In fact, the plaintiffs' attempt to render the Partnership terminable-at-will would involve a wholesale re-writing of the Amended Partnership Agreement's express and unambiguous terms governing termination. This the court cannot do. Berman v. B.C. Associates, 219 F. 3d 48, 51 (2000) ("We enforce the contract as written, and are not free to revise or change it."). Absent a 60% vote of the partners, the Partnership continues under the terms of the Amended Partnership Agreement. Accordingly, in order to withdraw from the Partnership a partner may do so only in the manner specified in the Amended Partnership Agreement, and not otherwise.

**(f)    The Partners Intended That The Partnership Agreement Govern the Affairs of the Partnership**

Plaintiffs do not dispute that the Partnership continued to be in effect after 1994. Clearly, there was some agreement or understanding among the partners as to how the Partnership would operate.

In construing a contract the Court is to "take into account not only the meaning of the individual words of the contract and their interrelation with each contract provision and the

whole, but also the attendant facts and circumstances." <u>Massachusetts Municipal Wholesale</u>
<u>Electric Co., v. Danvers,</u> 411 Mass.39, 45046 (1991). It is clear both from the 1987 Amendment
and from the conduct of the partners since 1994 that the Amended Partnership Agreement
continues to govern the affairs of the Partnership.

For example, on May 15, 1996, now-deceased partner Alfred P. Tropeano amended his
Partner's schedule by using the procedure set forth in Paragraph 9 of the Amended Partnership
Agreement. A copy of the Tropeano Schedule is attached hereto as Exhibit A. So too, on April
11, 2000, current partner and plaintiff Carolyn M. Patten also amended her Partnership Schedule
by following the procedure set forth in Paragraph 9 of the Amended Partnership Agreement.
Significantly, her April 11, 2000 schedule modification is entitled "Schedule of Carolyn M. Patten,
Captain Parker Arms *Partnership Agreement*." (emphasis added) A copy of the Patten Schedule
is attached hereto as Exhibit B.

Moreover, even in the act of seeking to withdraw from the Partnership, the plaintiffs also
affirm the authority of the Amended Partnership Agreement. By letter dated August 21, 2003 the
plaintiffs, by their then-attorney Frederick J. Conroy, wrote to the individual defendants,
informing them of their "wish to retire from the Captain Parker Arms Partnership effective
October 1, 2003." In the letter, then counsel for the plaintiffs also states:

> We recognize that in order to terminate the partnership, a vote of
> 60% of the partners is required… If you wish to terminate the
> partnership, we would participate in that vote in the affirmative.

The August 21, 2003 letter is attached as Exhibit C to the First Amended Complaint.

As recently as 2003, the Plaintiffs expressly recognize the existence and authority of the
Amended Partnership Agreement to govern the affairs of the Partnership. The plaintiffs cannot
pick and choose which provisions of the Amended Partnership Agreement they wish to adhere to

and which provisions they wish to ignore. The entire Amended Partnership Agreement, as it provides for termination and withdrawal, must be enforced. AccuSoft Corp. v. Palo, 237 F. 3d 31, 41-42 (2001) (Court states that parties have a right to rely upon the contract and "it is far wiser for a court to honor the parties' words than to imply other and further promises out of thin air." (citations omitted) See also Rogaris v. Albert, 730 N.E. 2d 833 (2000) (It is not the role of the Court to alter the parties' contractual agreement) There is nothing in the Partnership Agreement or the conduct of the Partners that suggests that the Amended Partnership Agreement has terminated. Accordingly, the provisions of the Amended Partnership Agreement must be enforced and the Court should dismiss the First Amended Complaint.

### (g)    Accounting

Finally, by Count VIII plaintiffs seek an accounting. The bare bones allegations of the First Amended Complaint are inadequate as a matter of law to entitle plaintiffs to the requested relief.[8]

There is no provision for an accounting in the Amended Partnership Agreement. In the absence of such a provision, the right to an accounting is governed by the terms of M.G.L. c.108A, §22. Section 22 only provides for an accounting, where at least one of four conditions is satisfied. Plaintiffs have failed to even allege that any of the conditions established by §22, which entitle a partner to an accounting, have in fact occurred. Thus, plaintiffs have failed to adequately state a claim for an accounting

---

[8] Again, it is not the defendants' position that plaintiffs are not entitled to an accounting. They have routinely received accountings and will be afforded further accountings. They have simply not alleged, and cannot allege, facts which entitle them to an accounting ordered by the Court.

## CONCLUSION

For the foregoing reasons the Court should dismiss all Counts of the Plaintiffs' First

Amended Complaint, leaving the plaintiffs to withdraw from the Partnership on the contractual

terms already provided.

> Respectfully submitted,
> Charlene Dorman, Bianca Dorman,
> Lydia Dorman, Todd Dorman, T&N
> Realty Trust and Captain Parker Arms
> Partnership
> By their Attorney,
>
> Gary C. Crossen, BBO # 106580
> Rubin and Rudman LLP
> 50 Rowes Wharf
> Boston, MA 02110
> Tel.: (617) 330-7036

Dated:  June 1, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2004, I sent a copy of the foregoing by hand delivery and by U.S. mail to Thomas M. Ciampa, Esq., 33 Mount Vernon Street, Boston, MA 02108.

Gary C. Crossen