UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

200? JUN 22  P 3: 47

U.S. DISTRICT COURT
DISTRICT OF MASS.

```
                                          )
PHILIP L. TROPEANO, PETER TROPEANO,       )
and CAROLYN PATTON,                       )
                                          )
            Plaintiffs,                   )
                                          )
v.                                        )
                                          )   DOCKET NO.
CHARLENE DORMAN, BIANCA DORMAN,           )   03-CV-12231-RGS
LYDIA DORMAN, AND TODD DORMAN,            )
Individually and as they are Trustees of T&N  )
REALTY TRUST and Partners of CAPTAIN      )
PARKER ARMS PARTNERSHIP,                  )
                                          )
            Defendants.                   )
                                          )
```

## PLAINTIFFS' CONSOLIDATED (1) OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND (2) MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, Philip Tropeano, Peter Tropeano, and Carolyn Patton (collectively, "Plaintiffs") hereby (1) oppose Defendants' Motion to Dismiss (or in the alternative for Summary Judgment) and (2) submit the following memorandum in support of their Cross-Motion for Partial Summary Judgment. Plaintiffs seek summary judgment on Counts I –VI, and Count VIII. In support of their consolidated opposition and cross-motion, Plaintiffs state as follows.

### Facts

As the First Amended Complaint and Defendants' Motion demonstrate, all of the relevant material facts are undisputed. Briefly, the relevant facts are as follows.

On or about January 8, 1964, the Captain Parker Arms Partnership (the "Partnership") was created by agreement of the then five partners (the "Partnership Agreement"). A true and accurate copy of the Partnership Agreement is attached to the First Amended Complaint as

Exhibit A. Pursuant to the terms of the Partnership Agreement, the purpose of the Partnership was to acquire a certain parcel of land in Lexington, Massachusetts (the "Real Estate") and to "construct apartments on said land." See Partnership Agreement, ¶1.

The Partnership Agreement also provided that title to the Real Estate was to be taken in the name of a nominee realty trust, the T&N Realty Trust (the "Trust"), which was to hold the Real Estate in trust for the benefit of the Partnership. See Partnership Agreement, ¶4. The Real Estate remains an asset of the Trust and the Partnership remains the Trust's sole beneficiary.

The Partnership Agreement, by its express terms, was to terminate after a term of "thirty years from the date hereof" (on January 8, 1994). See Partnership Agreement, ¶1. In addition, the Partnership Agreement expressly incorporated by reference "all applicable provisions and sections of General Laws Chapter 108A...." See Partnership Agreement, ¶7.

In March of 1987, following the death of one of the original partners (Joseph C. Tropeano), the surviving partners entered into a modification of the original Partnership Agreement (the "Modification"). A true and accurate copy of the Modification is attached to the First Amended Complaint as Exhibit B. The Modification reaffirmed the original terms of the Partnership Agreement and declared that the death of Joseph Tropeano had not dissolved or terminated the Partnership Agreement. See Modification, ¶1. The Modification also provided that Joseph Tropeano's interest in the Partnership was to be distributed as provided for in his will allowed for probate, an issue not addressed by the original Partnership Agreement. See Modification, ¶1. The Modification also allowed the remaining original partners to designate beneficiaries of their partnership interests in the event of their deaths, another issue which had not been addressed by the original Partnership Agreement. See Modification, ¶¶3 and 9.

The Modification also delineated the percentage vote necessary to terminate the
Partnership (Modification, ¶4); the partners' rights to assign or sell their partnership interests
(Modification, ¶¶5, 6); the voting rights of minors (Modification, ¶7); and the process for
distribution of partnership assets upon termination of the Partnership (Modification, ¶8).

Other than the modifications noted above, the Modification did not alter the Partnership
Agreement in any way. To the contrary, the Modification reaffirmed all of the other original
terms of the Partnership Agreement. See Modification, p. 4. Neither the Partnership Agreement
nor the Modification provided for an extension of the Agreement after its original 30 year term,
nor did the partners choose to renew the Partnership Agreement at any time prior to its expiration
on January 8, 1994.

By the express terms of the Partnership Agreement and the Modification, the Partnership
Agreement terminated on January 8, 1994. Nevertheless, the Partnership itself was not dissolved
at the time and, pursuant to operation of law, G.L. c. 108, §23, the Partnership continued as a
partnership at will, governed by the provisions of the Agreement and Modification.

As of August 1, 2003, the partners of the Partnership (and their respective partnership
interests) were as follows:

| | |
|---|---|
| Charlene Dorman | 36.14% |
| Bianca Dorman | 7.00% |
| Lydia Dorman | 7.00% |
| Todd Dorman | 7.00% |
| Philip L. Tropeano | 21.43% |
| Peter Tropeano | 10.715% |
| Carolyn Patten | 10.715% |

By letter dated August 21, 2003, Plaintiffs, through their then-counsel, notified
Defendants of their intent to withdraw from the Partnership, effective October 1, 2003 (the
"Withdrawal Letter"). A true and accurate copy of the Withdrawal Letter is attached to the First

Amended Complaint as Exhibit C. The Withdrawal Letter also invoked Plaintiffs' right to a distribution of partnership assets pursuant to paragraph 8 of the Modification.

The Withdrawal Letter did not insist (as it might have done) upon the liquidation of the Partnership's assets. Instead, recognizing that the remaining partners might wish to continue the business of the Partnership, the Withdrawal Letter requested only that the withdrawing partners be paid their portion of the value of the Partnership's assets (primarily, though not exclusively, the Real Estate). Included with the Withdrawal Letter was an appraisal by a Certified Appraiser of the real estate of the Partnership showing a gross value of the 96 Unit Residential Complex located in Lexington, Massachusetts of $18,800,000.00 (the "Appraisal"). A true and accurate copy of the Appraisal is attached to the First Amended Complaint as Exhibit D.

Despite Plaintiffs' right, however, to dissolve and terminate the existing partnership at will, Defendants have insisted that Plaintiffs cannot dissolve or terminate the partnership at will. Defendants also contend that they are not required to pay out to Plaintiffs the value of their respective shares of the Partnership assets, but rather that Defendants may, at their sole option, offer to pay an amount of their own choosing for such interests.

Although Plaintiffs remained partners of the Partnership from January 1, 2003 to October 1, 2003, they have not been paid their pro rata share of the Partnership's profits for that entire period of time, nor have they been provided with a detailed accounting of the Partnership's profits and expenses for the relevant time period, despite their requests for the same.

Despite Defendants' refusal to pay Plaintiffs the value of their respective shares of the Partnership assets, Defendants have also failed and refused to pay Plaintiffs their pro rata share of the Partnership's profits from October 1, 2003 to the present, nor have Plaintiffs been paid interest on the value of their claim for the relevant time period. Plaintiffs have not received a

4

detailed accounting of the profits of the Partnership for the period of October 1, 2003 to date (and continuing), despite their requests for the same.

### Argument

I.    The Partnership Agreement Expired At The End Of Its Express 30 Year Term And The Partnership Continued As A Partnership At Will.

In the present case, the Court is presented with an all too rare pairing – an unambiguous contract and an unambiguous statutory provision. The Partnership Agreement, by its express and unambiguous terms, was to exist only for a term of "thirty years from the date hereof." Pursuant to G.L. c. 108A, §23(1):

> When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will.

There can be no question, then, but that the term of the Partnership terminated on January 8, 1994. Nevertheless, because the partners continued to operate the apartment complex after the termination of the Partnership, the Partnership was converted into a partnership at will.

The hallmark of a partnership at will is the ability of any partner to end the partnership at any time and for any reason. See, e.g., Meehan v. Shaughnessy, 404 Mass. 419, 428 (1989); Hallahan v Haltom Corp. 7 Mass. App. Ct. 68, 71 (1979), Johnson v. Kennedy, 350 Mass. 294, 298 (1966); Steele v. Estabrook, 232 Mass. 432, 439 (1919). In the present case, Plaintiffs have chosen to exercise their right to terminate the Partnership and, consistent with the relevant provisions of the Uniform Partnership Act, they are permitted to do so.

Unable to directly maneuver around the precise language of the Partnership Agreement and the Uniform Partnership Act, Defendants set up, and then knock down, a number of straw man arguments, none of which should delay the Court for long. For the Court's convenience,

Plaintiffs address Defendants' arguments in the same order as presented in Defendants' Memorandum.

     A.     The Partnership Agreement Does Not Provide The Exclusive Means
             For Termination Of The Partnership.

Defendants attempt to frame the issue before the Court as a question of first impression: whether a partnership agreement may provide for methods of withdrawal and termination. With all due respect, however, the issue before the Court is neither so novel nor as loaded as Defendants would have the Court believe.

Defendants are correct when they state that the Modification provided for certain ways in which the Partnership could be terminated or the partners could otherwise assign or sell their rights in the Partnership. There is absolutely no evidence, however, that the Modification intended these to be the <u>only</u> methods for termination or withdrawal. Assuming, <u>arguendo</u>, however, that the Modification intended to provide the exclusive means of termination (or withdrawal) during the term of the Partnership Agreement, that exclusivity ended upon the expiration of the term of the Partnership Agreement. To hold otherwise, would completely eradicate the unambiguous terms of G.L. c. 108A, §32(1), which states that, after the expiration of the stated term, that the terms of the Partnership Agreement control only "so far as is consistent with a partnership at will."

The situation is precisely analogous to that of a landlord and tenant who enter into a lease for a specified term. It is well established that, at the conclusion of the specified term, if the parties do not renew the lease (but nevertheless the parties agree to the continuation of the tenancy), the tenancy is converted to a tenancy at will. <u>See</u>, <u>e.g.</u>, <u>T.W. Nickerson, Inc. v. Fleet Nat'l Bank</u>, 2004 Mass. Super. LEXIS 164, *17 (Moses, J.)(April 5, 2004)(<u>citing</u> <u>Walker Ice Co.</u>

6

v. Am. Steel & Wire Co., 185 Mass. 463, 467 (1904) and Spodek v. United States Postal Service, 35 F. Supp. 2d 160, 165-66 (D. Mass. 1999)).

It is also well established that, under such a circumstance, the terms of the lease continue to govern the parties insofar as the terms are not inconsistent with a tenancy at will. Id. (and cases cited therein). See also SEACO Ins. Co. v. Sullivan, 15 Mass. L. Rep. 660, *7 (Graham, J.)(January 3, 2003); Siletchnik v. Brookline Rent Control Bd., 1991 Mass. App. Div. 125, 126 (1991); Boudreau v. Johnson, 241 Mass. 12, 16 (1922).

Following the analogy, then, a lease agreement will typically provide for the exclusive conditions under which the lease can be terminated, for example, the tenant's failure to pay rent, or the landlord's failure to make proper repairs. And, because the lease so provides, neither the tenant nor the landlord can terminate the lease *during the lease term* unless one of the specified contingencies occurs. Upon conversion to a tenancy at will, however, either party may terminate the tenancy for any reason and at any time (with proper notice). This does not mean that the other methods of termination are no longer valid – simply that they are no longer the *exclusive* methods of termination. Similarly, the remaining lease terms remain applicable, but only insofar as they are not inconsistent with a tenancy at will. To hold otherwise would make the concept of tenancy at will meaningless.

So too here. When the term of the Partnership Agreement expired, but the partners continued to operate the Partnership's apartment complex, the Partnership was converted to a partnership at will. As such, the terms of the Partnership control unless they are inconsistent with a partnership at will. Because the hallmark of a partnership at will is the ability to terminate the partnership for any reason and at any time, terms which prohibit such termination are inconsistent with a partnership at will and are, therefore, without effect.

Because the clear language of the Partnership Agreement and the Uniform Partnership Act require a legal conclusion directly contrary to that urged by Defendants, Defendants' motion should be denied and Plaintiffs' Motion should be allowed.

B.    The Partnership At Will Having Been Terminated, The Modification Dictates That The Partnership's Assets Be Liquidated.

Defendants next argue that, because there has been no termination, the only method for valuing the Plaintiff's interests in the Partnership are the "buy out" provisions of Sections 5 and 6 of the Modification. As is detailed above, however, Defendants' argument is built on a faulty premise. Plaintiffs can – and have – terminated the Partnership at will. With that in mind, however, Defendants are partially correct – the terms of the Modification *should* control – they simply cite the wrong section. The Partnership having been dissolved, the Trustees should be required, under Section 8 of the Modification, to liquidate all partnership assets and distribute them accordingly to the partners. The Trustees have refused to abide by this obligation and, accordingly, the Court should order the liquidation and distribution of all partnership assets. In the alternative, and at a minimum, Plaintiffs are entitled to receive from the Partnership an amount equal to that which they would receive if the partnership assets were liquidated and distributed.

Defendants then cite to Gertz v. Fontecchio, 49 N.W.2d 121, 124 (1951) for the proposition that, where a partnership agreement provides for partnership assets to be valued by the market, resort to a judicial proceeding is inappropriate. The argument is ironic on a number of fronts. First, Defendants make this argument in furtherance of their contradictory assertion that Plaintiffs' partnership interests may be valued only under the "buy out" provisions in

Sections 5 and 6.[1] As is noted above, however, Defendants' argument on this front fails because there has been an effective termination of the partnership. The logical conclusion of Defendants' own argument is that the *liquidation* of the partnership's assets should not have necessitated court intervention. Plaintiffs agree. It is because Defendants have failed to abide by their obligation to liquidate the partnership's assets, however, that court intervention has been required.

The paradox of Defendants' reliance on <u>Gertz</u> is furthered by the fact that the <u>Gertz</u> Court provided exactly the type of judicial intervention sought by Plaintiffs and denounced by Defendants in this matter. In <u>Gertz</u>, it was the *Court* which ultimately valued the partners' interests in the partnership, despite a clause in the partnership agreement which would have suggested that the market would be the appropriate valuation vehicle. The Court there specifically held that: "determination of values, on the basis of competent proofs, is a judicial function constantly exercised by the courts and properly so in the absence of an express agreement for a different method of determination." <u>Id.</u> at 124.

Once again, because the clear language of the Partnership Agreement, the UPA, and the cited case law require a legal conclusion directly contrary to that urged by Defendants, Defendants' motion should be denied and Plaintiffs' motion should be allowed.

C.    The Alternative Remedy of Retirement and Valuation Is Open To Plaintiffs.

Defendants next argue that Plaintiffs are not entitled to their statutory rights under G.L. c. 108A, §42, because they have "otherwise agreed" to a method of valuation of their partnership

---

[1] Defendants' strategy in making this argument is obvious; to leave Plaintiffs' with the unenviable choice of giving away their interest to a close family member (can it really be said that Plaintiff's respective spouses, children and grandchildren constitute a "market" for purposes of valuing Plaintiff's partnership interests) or to arrange to sell to some third-party at a substantial "minority discount" which would, of course, become available to Defendants through their right of first refusal. <u>See</u> Modification, ¶ 6. Unfortunately for Defendants, Plaintiffs are entitled to their respective shares of the market value of the Partnership's assets, not just the market value of their respective shares of the Partnership.

interests. On the clear language of the Modification, however, Plaintiffs have done no such

thing. Section 42 of chapter 108A provides that:

> When any partner retires or dies, and the business is continued under any of the
> conditions set forth in section forty-one (1) (2) (3) (5) (6), or section thirty-eight (2 b),
> without any settlement of accounts as between him or his estate and the person or
> partnership continuing the business, unless otherwise agreed, he or his legal
> representative as against such persons or partnership may have the value of his interest at
> the date of dissolution ascertained, and shall receive as an ordinary creditor an amount
> equal to the value of his interest in the dissolved partnership with interest, or, at his
> option or at the option of his legal representative, in lieu of interest, the profits
> attributable to the use of his right in the property of the dissolved partnership...

Once again, however, to even reach their argument on this point, Defendants are required

to begin with the premise that the Partnership was not a partnership at will. If Defendants' are

wrong on this preliminary question, their argument fails altogether because prohibiting a partner

from withdrawal would be inconsistent with a partnership at will for all the reasons outlined

above.[2] For this reason alone, Defendants' motion must be denied.

Even if the Partnership were not a partnership at will, however, Defendants' argument

would have to fail because the Partnership Agreement did not provide for an alternative method

of valuation for withdrawing partners. Defendants, however, argue that the valuation remedy

provided for in Section 42 is somehow precluded by Sections 5 and 6 of the Modification. It is

clear on the face of these two sections, however, that no conflict exists.

Section 5, for example, addresses only a partner's unconditional right to assign or sell his

or her partnership interest to certain family members. Clearly, this section is wholly unrelated to

a valuation of a withdrawing or retiring partner's interests. Similarly, Section 6 of the

Agreement provides only that any partner may assign or sell his or her partnership interest to any

---

[2] In short, if the Partnership is a partnership at will, then any partner may voluntarily withdraw or retire just as any
partner may terminate the Partnership. To argue to the contrary would require Defendants to assert that they
(Defendants) have no option but to cease operations and liquidate their assets. Although it is certainly Plaintiffs'
right to require such liquidation, they may also alternatively invoke their rights under G.L. c. 108A, §42 to instead
have their interests valued (and paid).

third party (someone other than a family member as defined in Section 5), but conditions such a sale on (1) the agreement of the remaining partners (which shall not be unreasonably withheld), and (2) the offering of a right of first refusal to the remaining partners. Once again, the plain language of this section does not address in any manner how to value the partnership interest of a retiring or withdrawing partner.

In support of their proposition, however, Defendants cite to a number of cases for the general proposition that, where a provision in a partnership agreement dealing with the rights of withdrawing partners directly contradicts a provision of the Uniform Partnership Act, the terms of the partnership agreement should control. This proposition of law is fine, as far as it goes – it simply does not go far enough to be useful in this instance. Although it is certainly true that a partnership agreement which specifically provides for a remedy will "trump" a contrary provision in the UPA, it is equally true that, where a partnership agreement is silent on a particular situation, the UPA is designed to "fill in the blanks." Warnick v. Warnick, 76 P.3d 316, 320 (Wyo. 2003). Indeed, the UPA "is largely a series of 'default rules' that govern the relations among partners in situations they have not addressed in a partnership agreement." Id. (citations omitted).

Two other cases also decided under the UPA are instructive. In Zucker v. Rubin, 218 Cal. App. 3d 1198 (1990), the Court addressed a situation in which a partnership agreement specifically provided for a detailed method of valuing a deceased partner's partnership interest, which conflicted with Section 42 of the UPA. The Court first affirmed the general proposition that, to the extent the partnership agreement's method of valuation conflicted with the UPA, the partnership agreement should control. The partnership agreement was silent, however, on the question of whether or not the deceased partner's estate was entitled to an award of interest on

11

the value of the deceased partner's share. The trial court held that, given the partnership agreement's detailed provisions for the method of valuation, that section 42 was inapplicable. The appeals court rejected this holding, however, finding that, "while the partners otherwise agreed to how the partnership was to be valued, they did not otherwise agree interest or future profits were not recoverable." Id. at 1204. In short, the Court rejected precisely the notion advanced by Defendants here – that the Court should infer by negative implication the exclusion of certain remedies by virtue of the inclusion of other remedies.

The Court reached a similar result in Chapman v. Dunnegan, 665 S.W.2d 643 (Mo. App. 1984). In Chapman, the partnership agreement provided that a deceased partner's interest should be valued by the agreed upon value which had been set by the partners at the close of the most recent fiscal year. If the partners had failed to agree upon a value at the close of the fiscal year, the prior year's agreed upon value was to be used. Unfortunately, however, the partners in Chapman had never been able to agree upon a value, a circumstance unforeseen by the partnership agreement. Plaintiffs there argued for the use of "fair market" value while Defendants advocated for "book value." Given the absence of a provision governing this particular contingency, the Court found section 42 of the UPA to be applicable to the dispute and ordered the deceased partner's interests to be valued at fair market value.

In the present case, then, because the Partnership Agreement is silent with respect to the method of valuing a retiring or withdrawing partner's partnership interests, the Court should apply Section 42's formula for valuation and determine the fair market value of Plaintiffs' interests as of the date of their withdrawal from the partnership. Accordingly, Defendants' motion should be denied and Plaintiffs' Motion should be allowed.

12

D.    Plaintiffs Were Entitled to Withdraw Or Retire From The Partnership.

Defendants' next argument is that Plaintiffs were precluded from withdrawing or retiring

from the partnership at all. In support of this contention, Defendants again insist that the Court

should read into the Modification's silence an affirmative desire not to have retirement or

withdrawal as an option available to the partners. As a starting point, of course, the partners

were certainly free to use language which explicitly limited a partner's right to withdraw or

retire, but they chose not to do so. Instead, Defendants cite to Sections 4, 5, and 6 of the

Modification in support of their theory that the Court should infer, by negative implication, that

the partners intended to preclude a partner from withdrawing or retiring. Under any accepted

analysis, however, Defendants' contentions simply make no sense.

First, as has been stated numerous times above, if the Court were to find that the

Partnership was a partnership at will, Defendants' arguments would be moot. It would make

little sense that any partner could force the termination of the partnership (and the resulting

liquidation of assets), but that the partner could not instead exercise an option which would allow

the remaining partners to continue to operate the Partnership's business after settling the account

of the withdrawing or retiring partner.[3]

Even if the partnership were not a partnership at will, however, Defendants' arguments

would fail on the clear language of the Agreement and the UPA.

Section 4 of the Modification does no more than require a 60 percent vote in order to

*terminate* the partnership and force liquidation of its assets. The section does not, however,

address the withdrawal or retirement of a partner. It is, of course, understandable that the

partners would want to establish a high threshold for a full termination of the partnership given

---

[3] Of course, if Defendants insist that this is the only remedy available, then the Court should order the immediate
termination of the partnership and liquidation of assets.

that, upon termination, the Agreement provides only for the liquidation of the partnership assets. As Section 42 of the UPA makes clear, though, dissolution and liquidation are not the only options available to a partner.

Section 5 of the Modification provides only that a partner may assign his or her partnership interests to certain family members without the need for partnership approval and Section 6 provides for a right of first refusal for a partner who wishes to sell his or her partnership interests. None of these sections, however, address the rights of a retiring or withdrawing partner. Defendants cleverly argue that the existence of these three methods "for opting out of the" Partnership evidence a desire to preclude all other methods of withdrawal.

By the same token, however, the Court in <u>Zucker</u>, <u>supra</u>, *could* have concluded that the partnership agreement's detailed provisions regarding how a departing partner's interests were to be valued precluded an award of interest because the agreement was silent as to an entitlement to interest. Similarly, in <u>Warnick v. Warnick</u>, <u>supra</u>, it was "entirely foreseeable" at the time the partnership was formed "that additional cash would be needed" to meet the partnership's ongoing obligations. In addition, the partnership agreement itself contemplated that additional capital contributions might be required from the partners. Nevertheless, because the agreement did not specifically address "how cash advances or payments on behalf of the business are to be treated," the Court looked to the UPA to decide if the advances should be considered loans or capital contributions.

On its face, the Modification is entirely silent as to the rights of withdrawing or retiring partners and, as such, the relevant provisions of the UPA should control. At worst, if the Court were to conclude that the Modification was ambiguous on this point, the Court would have to undertake to determine the intent of the parties and summary judgment would, therefore, be

14

inappropriate.[4]  However, given that the Modification and the UPA appear to be unambiguous on their face, Defendants' motion should be denied and Plaintiffs' motion should be allowed.

      E.     The Partnership Agreement Clearly Terminated On January 8, 1994.

      Defendants' next argument – that the Partnership did not terminate on January 8, 1994 despite the express term providing for such termination – simply cannot be taken seriously. Defendants' apparent argument is that, upon the death of the original partner, Joseph Tropeano, that the original partnership agreement was terminated and that the surviving partners subsequently entered into a new partnership (the Modification) which did not include the original 30 year term.  Defendants' argument only has merit, however, if one is willing to ignore (1) the explicit language of the Modification; (2) the explicit language of the Uniform Partnership Act; and (3) all relevant case law.

      The Modification begins by declaring that "the partnership agreement dated January 8, 1964, was not dissolved or terminated by the surviving partners when Joseph C. Tropeano died, has been and is in full force with exception of Joseph's interest." Modification, §1.  Even if one were to assume, <u>arguendo</u>, that the surviving partners were legally incorrect in this assertion, it is undisputed that the surviving partners ratified and agreed to the original terms of the Partnership Agreement, except insofar as those terms were altered by the Modification.  Indeed, the Modification concludes by stating that "except as herein modified, the said partnership is hereby affirmed...."

---

[4] For example, it is just as reasonable to conclude that the Modification – which was enacted in response to the death of one of the original partners – was simply designed to preserve and protect the nature of the Partnership as a family entity.  Section 5 acknowledges that family members should always be able to transfer their interests to other direct family members, whereas Section 6 protects the remaining partners (i.e. family members) from being required to take on a non-family member as a partner.  In this respect, Sections 5 and 6 could be seen as addressing limitations on who comes *into* the partnership, not how someone *leaves* the partnership.

Defendants' next attempt to argue that the 30 year term was somehow – by necessity – replaced by the requirement that the Partnership literally continue forever unless terminated by a 60 percent vote of the partners. This is simply absurd. There is no reason whatsoever why an agreement for a term of years could not also contain a provision whereby the partnership could be terminated before the expiration of the term, if the partners so chose.[5]

Even if the Court were willing to follow Defendants through the looking glass and down the rabbit hole of this particular argument, however, it would gain Defendants nothing. If the Court were to disregard the clear language of the Partnership Agreement and the Modification and proclaim the Partnership Agreement to be one of indefinite term – it would still be a partnership at will, terminable by any partner for any reason. G.L. c. 108A, §31(1)(b). In an attempt to avoid this section of the UPA, however, Defendants cite a case for the proposition that, in general, a failure to include a precise term does not convert a contract to an at-will contract so long as the agreement provides for some method of termination. G.M. Abodeely Ins. Agency v. Commerce Ins. Agency Co., 41 Mass. App. Ct. 274, 276 (1996), *rev. denied* 423 Mass. 1112 (1996).

Although Defendants accurately represent the holding of the Abodeely case, they fail to mention that it is not a partnership case. Defendants' reluctance to cite to partnership cases is understandable. With respect to *partnership agreements*, it is well settled that a partnership agreement without a specified term is a partnership at will, terminable by any partner and for any reason. See, e.g., Meehan v. Shaughnessy, 404 Mass. 419, 421 (1989)("Where a partnership agreement provides that the partnership is to continue indefinitely... the partnership is therefore

---

[5] Indeed, even a specific limitation on a partner's ability to dissolve a partnership is ineffectual and void. Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 665-70 (1st Cir. 1984)(" Even when by the partnership articles, they have covenanted with each other that the partnership shall continue for a certain period, the partnership may be dissolved at any time, at the will of any partner....")

'at will'…"); Johnson v. Kennedy, 350 Mass. 294, 298 (1966)(where the partnership agreement "did not specify the life of the agency, the partnership was at the will of the partners"); Steele v. Estabrook, 232 Mass. 432, 439 (1919)("In the agreement of partnership between Hervey and Steele there was no provision as to the time during which the partnership was to continue. Under these circumstances either party had a right to terminate the partnership at will"); Wiggins v. Brand, 202 Mass. 141, 147 (1909)("there having been no definite agreement… as to the time that it was to continue, the partnership should be treated as being strictly at will and as dissolved from the date of the filing of the bill); Fletcher v. Reed, 131 Mass. 312, 313 (1881)("A partnership for an indefinite period is in law a partnership at the will of the partners, and either partner may withdraw when he pleases, and dissolve the partnership…."); Georg v. Tzavos, 4 Mass. L. Rep. 391 (Mass. Super. Ct., September 20, 1995)(because the partnership agreement lacked "any specific mutual agreement with respect to the duration of the partnership," the partnership "was therefore a partnership at will, which, under c. 108A, 31, could be dissolved at any time by either party.")

Under any analysis, then, the Partnership was a partnership at will – either because it terminated on January 8, 1994 pursuant to its explicit terms – or because it was a partnership agreement without a specified term. Either way, however, Plaintiffs were entitled to terminate the Partnership for any reason and at any time. For these reasons, Defendants' motion should be denied and Plaintiffs' motion should be allowed.

F.    The Terms Of The Partnership And Modification Control, But Only Insofar As They Are Not Inconsistent With A Partnership At Will.

Defendants' next point to the continued operation of the Partnership as evidence that the Partnership continued to exist after the expiration of its term in 1994 and as evidence that the Partnership Agreement and Modification continued to govern the operation of the Partnership.

From there, Defendants jump to the conclusion that the Partnership could only be terminated by a 60 percent vote, as provided for in Section 4 of the Agreement, arguing that Plaintiffs "cannot pick and choose which provisions of the Amended Partnership Agreement they wish to adhere to…" Defendants' Memo, p. 16. Defendants' conclusion, however, demonstrates either a profound misunderstanding or deliberate ignorance of the plain terms of G.L. c. 108A, §23(1):

> When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will.

As is noted above, this is not a unique concept in the law. A tenant who continues his tenancy after the expiration of his lease continues to be governed by the terms of the lease, but only insofar as those terms are consistent with a tenancy at will. After the expiration of the Partnership's term, the partners here continued to be governed by the terms of the Partnership Agreement, but only insofar as those terms are consistent with a partnership at will. Certainly the Partnership can still be terminated by a 60 percent vote,[6] but, as a partnership at will, it can also be terminated by any partner at any time and for any reason. Because the clear language of the UPA, the Partnership Agreement, and the Modification compel a conclusion (1) that the Partnership term ended on January 8, 1994, and (2) that the Partnership nevertheless continued to operate under the terms of the Agreement and Modification, insofar as those terms were not inconsistent with a partnership at will, Defendants' motion should be denied and Plaintiffs' motion should be allowed.

---

[6] Defendants point to a letter from Plaintiffs' predecessor counsel suggesting that a 60 percent vote of the partnership was still required to terminate the partnership. There are two responses to this position. First, it appears that predecessor counsel was attempting, albeit somewhat imprecisely, to allow Defendants the option to continue the partnership business, something which would not be possible if there was a full termination, which requires a liquidation of partnership assets. To the extent, however, that predecessor counsel was suggesting that the partnership could only be terminated by a 60 percent vote of the partnership, the simple answer is that predecessor counsel was mistaken. An attorney's misstatement of the law, however, does not alter the applicable law.

18

G.    Plaintiffs Are Entitled To An Accounting.

Finally, Defendants make the conclusory assertion that Plaintiffs are not entitled to an accounting. Although Defendants acknowledge that the UPA controls the Plainttiffs' right to an accounting, they then conclude -- without argument -- that Plaintiffs have no right to an accounting under G.L. c. 108A, §22. Preliminarily, Defendants err by limiting their scope of inquiry to section 22 of the UPA. Sections 42 and 43 also provide, respectively, for a right to an accounting for (1) a retiring partner or (2) upon dissolution of the partnership. See G.L. c. 108A, §§42, 43; Diranian v. Diranian, 55 Mass. App. Ct. 605, 609 (2002)(discussing right to an accounting under §42); DiCarlo v. Lattuca, 60 Mass. App. Ct. 344, 347 (2004), rev. denied 441 Mass. 1106 (2004)(discussing right to an accounting under §43).

Even under section 22, however, an accounting would be appropriate. Section 22(d) provides that a partner may demand a full accounting "whenever other circumstances render it just and reasonable." See Doiron v. Castonguay, 401 Mass. 705 (1988)(court found accounting necessary upon termination of agreement, whether agreement was a partnership or a joint venture). In the present case, an accounting is just and reasonable because Plaintiffs have withdrawn from the Partnership at will and/or because the partnership assets must now be liquidated.[7] Because Plaintiffs are entitled to an accounting under the UPA, Defendants' motion should be denied and Plaintiffs' motion should be allowed.

---

[7] Even under Defendants' theory, however, an accounting would be appropriate. Assuming, arguendo, that Sections 5 and 6 of the Modification are the exclusive means for Plaintiffs to transfer their partnership interests, a full and complete accounting is the only way for Plaintiffs to assess the value of their respective interests to accomplish such a transfer.

## **Conclusion**

For the reasons stated herein, Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, should be denied and Plaintiffs' Cross-Motion for Partial Summary Judgment should be allowed.

Respectfully submitted,

PHILIP L. TROPEANO, PETER
TROPEANO, and CAROLYN PATTON

By their attorney,

Thomas Ciampa (BBO # 566898)
Ciampa & Associates
33 Mount Vernon Street
Boston, MA 02108
(617) 742-5955

Dated: June 22, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2004, a copy of the foregoing Plaintiffs' Consolidated (1) Opposition to Defendants' Motion to Dismiss and (2) Memorandum in Support of Cross-Motion for Partial Summary Judgment was served by hand upon counsel for the defendants.

*Thomas Ciampa*
Thomas Ciampa