UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILIP L. TROPEANO, PETER TROPEANO, CAROLYN PATTON,
Plaintiffs

v.

CHARLENE DORMAN, BIANCA DORMAN, LYDIA DORMAN, TODD DORMAN, T&N REALTY TRUST AND CAPTAIN PARKER ARMS PARTNERSHIP,
Defendants

CIVIL ACTION
CASE NO. 03CV12231 (RGS)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Charlene Dorman, Bianca Dorman, Lydia Dorman, Todd Dorman, T&N Realty Trust and Captain Parker Arms Partnership (collectively "the defendants") hereby file this memorandum in response to the plaintiffs' cross-motion for partial summary judgment. In support of their cross-motion for partial summary judgment, plaintiffs have filed a memorandum entitled "Plaintiffs' Consolidated (1) Opposition to Defendants' Motion To Dismiss and (2) Memorandum in Support of Cross-Motion for Partial Summary Judgment." (hereinafter “Plaintiffs’ Memo of Law”) The conflation of two separate pleadings into one joint document creates confusion: It is not clear which of plaintiffs' arguments serve which purpose. This confusion, however, is consistent with the plaintiffs' continually revolving and evolving theory of the case. For the sake of clarity and so that the Court need not flip back and forth among competing filings, the Defendants will err on the side of being over-inclusive in this Opposition and regret any repetitiveness that may result.

Additionally, Plaintiffs allege that certain facts are established and without support in the record, contrary to reality. For instance, the Plaintiffs argue that they "have not been paid their pro rata share for the Partnership's profits for [the period January 1, 2003, to October 1, 2003], nor have they been provided with a detailed accounting for the relevant time period, despite their requests for the same. Plaintiffs' Memo of Law, Page 4. Defendants dispute these assertions and point out that there is no support in the record for them.[1]

## I. FACTS

The plaintiffs Phillip L. Tropeano, Peter Tropeano and Carolyn Tropeano are partners in the Captain Parker Arms Partnership (the "Partnership," First Amended Complaint at ¶ 30). Collectively, the plaintiffs' interest was 42.86% of the Partnership. (Id.) The defendants, Charlene Dorman, Bianca Dorman, Lydia Dorman and Todd Dorman are the remaining partners in the Partnership with a 57.14% interest. (Id.)

The Partnership was created by agreement dated January 8, 1964 (the "1964 Partnership Agreement," attached hereto as Exhibit A," First Amended Complaint at ¶11). Section 1 of the 1964 Partnership Agreement provides that the purpose of the Partnership is for the partners to "become and remain partners in the business of acquiring the title to the land situated at the intersection of Waltham Street and Worthen Road, in said Lexington, and to construct apartments on said land, for the term of thirty years from the date hereof." (Exhibit A, at p.1)

During the thirty-year term of the 1964 Partnership Agreement it was amended by a modification dated March 11, 1987 (the "Amended Partnership Agreement," attached hereto as

---

[1] Similarly, the following claim, that "...Defendants have also failed and refused to pay plaintiffs their pro rata share of the Partnership's profits from October 1, 2003 to the present, not have plaintiffs been paid interest or the value of their claim for the relevant time period." plaintiffs; Memo of Law, P. 4. There is no support for the assertions in the record. Further, as plaintiffs' purport to have "retire[d]" from the partnership effective October 1, 2003, plaintiffs have no entitlement to such "profits."

Exhibit B). The Amended Partnership Agreement provides, in pertinent part, several new sections governing the operation of the partnership:

> 4. Termination.
> The partnership can be terminated by a vote of not less that 60% interest of 100% and upon such vote the partners shall so notify the Trustee to liquidate the assets and distribute the net principal and accumulated income as provided by number 8 hereunder.
>
> 5. Partner's Rights to Assign or Sell to Certain Individuals.
> Any partner shall have the right to assign or sell any portion of his interest to his wife or his children or grandchildren, without the consent of the other partners, who may take title in their own name or a separate entity in which they will be the sole beneficiary.
>
> 6. Partners [sic] Right to Assign or Sell to Others.
> Prior to any assignment or sale of any partner's interest or those having his interest to others than the aforesaid, the assigning or selling partner shall offer the same in writing with a certified copy of the terms offered to him by the proposed assignee or purchaser. The partners shall have thirty (30) business days to accept or reject the offer. If they do not accept the offer, the assignment or sale to the third party shall only be made with the consent of the other partners and those claiming through them which consent will not be unreasonably withheld.
>
> 8. Distribution on Termination.
> In the event of the dissolution and termination of the partnership, the Trustees[2] shall be instructed to proceed to the liquidation of the partnership and the proceeds of the liquidation shall be applied and distributed in the following order of priority:
> (a) Debts. To the payment of the debts and liabilities of the partnership (other than any loans or advances that may have been made by the partners to the partnership) and the expenses of liquidation
> (b) Reserves. To the setting up of any reserves which the partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligation of the partnership arising out of or in connection with the operation and liquidation of the partnership. Any reserves shall be held by the Trustees as "Escrowee", to be held by then for the purpose of disbursing the reserves in payment of any of the contingencies, and, at the

[2] For purposes of the Partnership, the Trustees are defined as the trustees of the T&N Realty Trust, which is the entity that holds the real estate in trust for the benefit of the Partnership. (Complaint at ¶ 9)

> expiration of the period the partners shall deem advisable and have so instructed the Trustees to disburse the balance thereafter remaining to the partners.
>
> (c) Partner loans. To the repayment of any loans or advances that may have been made by any of the partners to the partnership, but if the amount available for such repayment shall be insufficient, then pro rata on account thereof.
>
> (d) Balance. Any balance remaining shall be distributed among all partners as follows according to their percentage holdings:
>
> (aa) Cash. In the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership.

(Exhibit B, at pp. 2-4.)

Immediately upon the execution of the Amended Partnership Agreement, on March 11, 1987, several of the then living partners took advantage of the modification to the 1964 Partnership Agreement by assigning their interest in the partnership upon their death to named family members. A copy of the assignments is attached hereto as Exhibit C. Plaintiffs Peter Tropeano and Carolyn Patton acquired their interests in the amended partnership by the terms of an assignment made on August 10, 1992. Attached hereto as Exhibit D.

The remaining plaintiff, Philip L. Tropeano, assigned his interest in the partnership upon his death with certain qualifications to his wife in 1992. A copy of that assignment is attached hereto as Exhibit E. Additionally, plaintiff Carolyn Patton assigned her interest in the partnership subject to her death on April 11, 2000. A copy of that assignment is attached hereto as Exhibit F. As a consequence, each of the plaintiffs has specifically taken advantage of the new provisions governing the partnership relationship contained within the Amended Partnership Agreement.

Each of these assignments was accomplished by resorting to Paragraph 5 of the Amended Partnership Agreement. Exhibit B.

Additionally, review of the Amended Partnership Agreement establishes that there is no express provision calling for an accounting. As such, entitlement to an accounting is governed by Massachusetts General Laws, Chapter 108A, Section 22.

## II. PROCEDURAL BACKGROUND

In the original Complaint, plaintiffs pursuant to M.G.L. ch. 108A, § 29, sought to "retire" from the Partnership. The Complaint describes the Partnership as a "Massachusetts Partnership created by written instrument dated January 8, 1964 [the "1964 Partnership Agreement"], as amended," by modification dated March 11, 1987, (the "Amended Partnership Agreement"). Complaint, at ¶ 10.a. The Complaint contains no assertion that the written Amended Partnership Agreement ceased to be in effect.

Defendants moved to dismiss the Complaint on the grounds that, *inter alia*, the Amended Partnership Agreement clearly and unambiguously states the three exclusive ways in which a partner may disassociate himself or herself from the Partnership. "Retirement" pursuant to M.G.L. ch. 108A, §29 is not among them.

Plaintiffs Opposition argued that the Amended Partnership Agreement specifically incorporated by reference Massachusetts General Laws Chapter 108A including the right to retire under Section 29. Again, there was no mention of the allegation that the Partnership Agreement had terminated.

Defendants' Reply Memorandum articulated the fatal flaws in plaintiffs argument: the plain terms of the Amended Partnership Agreement preclude "retirement" as an option for partners who wish to withdraw from the Partnership and under the Uniform Partnership Agreement this express agreement among the Partners trumps the general application of M.G.L. ch. 108A, § 29.

In the First Amended Complaint, Plaintiffs advanced a new theory of the case: the Amended Partnership Agreement terminated in 1994 on the thirty-year anniversary of its creation, at which time the First Amended Partnership was automatically converted into a partnership at will pursuant to M.G.L. ch. 108A, §23. First Amended Complaint, ¶ 29. For the reasons set forth below, Plaintiffs are wrong as a matter of law and the Court should deny the Cross-Motion For Partial Summary Judgment.

## III. ARGUMENT

### A. The Amended Partnership Agreement Did not Expire in 1994.

The 1964 Partnership Agreement provided that the Partners "will become and remain partners... for the term of thirty years from the date hereof." 1964 Partnership Agreement, ¶ 1, Exhibit A to First Amended Complaint. Clearly, the death of one of the original partners, Joseph P. Tropeano, prior to the end of thirty years, made it impossible for all of the named original partners to "remain partners." Accordingly, the surviving partners -- Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano and Phillip Tropeano -- executed the Amended Partnership Agreement on March 11, 1987. First Amended Complaint, ¶ 22 and Exhibit B thereto.

The Amended Partnership Agreement expressly affirmed the existence of the Partnership among the surviving partners and it also expressly stated the new way in which the Partnership could be terminated. Rather than termination occurring automatically after a term of years, termination would now occur only upon a 60% vote of the Partners. Paragraph 4, Amended Partnership Agreement.[3]

---

[3] While termination occurs only upon a 60% vote, the partners are free to withdraw from the Partnership at any time, provided they do so as provided in the Amended Partnership Agreement. Under the express terms of the Agreement, there are two ways in which partners can withdraw from the Partnership absent termination: (1) a Partner can assign or sell his or her rights to a family member pursuant to Paragraph 5 of the Agreement; or (2) a partner can assign or sell his

Quite simply, the Amended Partnership Agreement's provision for termination by a 60% vote supersedes the 1964 Partnership Agreement's provision for termination by the end of a 30-year term.

It is clear as a matter of Massachusetts law that a contract will not be deemed terminable-at-will merely because it contains no precise expiration date, if the contract delineates circumstances in which the parties may cease to be obligated to perform it." G.M. Abodeely Insurance Agency, Inc. v. Commerce Insurance Company, 41 Mass. App. Ct. 274, 276, 669 N.E. 2d 787, 789 (1996), quoting Kirkley v. F.H. Roberts Co., 268 Mass. 246, 252, 167 N.E. 289 (1929). Since the Amended Partnership Agreement specifies the sole circumstance in which the partners can terminate the Partnership – a 60% vote of the partners – the Amended Partnership Agreement is not terminable-at-will. To conclude otherwise would render the 1987 amendment meaningless.[4]

In fact, the plaintiffs' attempt to render the Partnership terminable-at-will would involve a wholesale re-writing of the Amended Partnership Agreement's express and unambiguous terms governing termination. This the court cannot do. Berman v. B.C. Associates, 219 F. 3d 48, 51 (2000) ("We enforce the contract as written, and are not free to revise or change it."). Absent a 60% vote of the partners, the Partnership continues under the terms of the Amended Partnership Agreement. Accordingly, in order to withdraw from the Partnership a partner may do so only in the manner specified in the Amended Partnership Agreement, and not otherwise.

Even if the partnership were considered a partnership at will, plaintiffs are wrong in asserting that they "have chosen to exercise their right to terminate the partnership and, consistent

---

or her interest to a third party pursuant to Paragraph 6 of the Agreement subject to a thirty day right of first refusal held by the other partners.

with the relevant provisions of the Uniform Partnership Act, they are permitted to do so." (Memorandum in Support of Cross-Motion for Partial Summary Judgment, at p.5). As the plaintiffs themselves have already recognized, the existing Partnership (whether at will or not) is governed by the terms of the Amended Partnership Agreement:

> By the express terms of the Partnership Agreement and the modification, the Partnership Agreement terminated on January 8, 1994. Nevertheless, the Partnership itself was not dissolved at that time and, pursuant to operation of law, G.L. c.108, §23, the Partnership continued as a partnership at will, governed by the provisions of the Agreement and Modification.

Id. at p.3, emphasis added. There is nothing in the Amended Partnership Agreement that precludes plaintiffs from disassociating themselves from the Partnership. Rather, the Amended Partnership Agreement sets forth the parties' agreement how to do so. Plaintiffs cannot pick and choose which provisions of the Amended Partnership Agreement they wish to follow, and those they wish to ignore.

The plaintiffs also focus too narrowly on the fact that the original Partnership Agreement contains a term expressed as a specific number of years. As is the case in the Amended Partnership Agreement, the term of the Partnership can also be expressed as concluding upon the occurrence of a certain event. The Amended Partnership Agreement expressly states that the Partnership is to remain in effect until 60% of the partners vote otherwise. Since no such vote has occurred, the Partnership – as governed by the Amended Partnership Agreement – is still in effect.

In Osborne v. Workman, 621 S.W.2d 478, 273 Ark. 538 (1981), the Supreme Court of Arkansas upheld a similar provision in a partnership agreement. In Osborne, the agreement at issue provided for its continuation until "dissolved mutually or by law." The Court squarely

---

[4] The fact that Abodeely does not involve a partnership agreement is immaterial. The Amended Partnership Agreement

rejected plaintiffs' argument that the partnership was not for a definite term and thus was subject to dissolution at the will of any partner under the Uniform Partnership Act. As the Court explained:

> Appellant contends that the wording "until said partnership is dissolved mutually or by law" triggers that provision in [the Uniform Partnership Act] giving any partner the right to dissolve at will. Certainly, any partner can withdraw at will and to the extent that withdrawal is dissolution he is correct. But appellant seeks dissolution in the fullest sense, i.e., the termination of the partnership by liquidation, and we cannot agree these partners intended such a result. We think the clear intent was that dissolution by termination would occur only by mutual agreement and not by the unilateral act of a certain partner. Appellant's contention cannot be reconciled with the words "mutually dissolved," as the dissolution could be achieved by a single partner the reverse of mutual.

Id. at p. 542. So too, the Amended Partnership Agreement makes clear that the partners intended to terminate the Partnership only upon a 60% vote of the partners. The court should uphold the express terms of this express agreement as to how and when the Partnership shall be concluded. This interpretation is entirely consistent with Massachusetts law. See, M.G.L. ch. 108A §23 (distinguishing a partnership at will from one "for a fixed term or particular undertaking." (emphasis added)

B. **The Partnership Agreement Dictates the Exclusive Methods for Withdrawal, Valuation and Distribution**

In the First Amended Complaint, the plaintiffs ask this Court for various forms of declaratory and other relief to enable plaintiffs to withdraw from and ascertain the value of their interest in the Partnership.[5] The plaintiffs are not entitled to the requested relief, because the remedies they seek are contrary to the express terms of the Amended Partnership Agreement,

---

is, after all, a contract among the partners and general principles of contract law apply.

[5] Count VIII demands a partnership accounting. The partnership routinely provides such an accounting to partners and will routinely do so again.

which contains provisions governing the manner in which a partner may withdraw from the Partnership and how a partner's interest may be ascertained, transferred and distributed.[6]

This case raises what appears to be a novel issue of law in the Commonwealth of Massachusetts: whether provisions in a partnership agreement dictating how a partner can withdraw and have his or her interests valued and distributed is enforceable. But, the issue has been addressed in other jurisdictions. As set forth below, this Court should deny plaintiffs' Cross Motion for Partial Summary Judgment, grant defendants' motion for summary judgment and uphold the Amended Partnership Agreement as to the withdrawal from, valuation of and compensation for a partner's interest.

The Amended Partnership Agreement expressly provides a mechanism for how partners may value and divest themselves of their interest in the Partnership. Such a valuation and divestiture may happen in one of three ways: (1) by *termination* of the Partnership and liquidation and distribution of the assets pursuant to Paragraphs 4 and 8; (2) by *assignment or sale* of the partner's interest to a family member without the consent of the other partners, pursuant to Paragraph 5; and (3) by assignment or sale to other third parties with consent of the other partners (not to be unreasonably withheld), pursuant to Paragraph 6.

1. Termination of the Partnership

As discussed above, the Partnership may be terminated by a vote of 60% or more of the Partnership interests. Exhibit B, at Section 4. Upon termination of the Partnership, valuation and distribution of partnership interests proceed under Section 8 of the Amended Partnership Agreement. Here, in the event of termination the Partnership Agreement provides for liquidation

---

[6] It is important to note that it is not the position of the defendants that the plaintiffs are bound forever to the partnership. Rather, it is the defendants' position that plaintiffs must separate themselves from the partnership in accordance with its express terms and without resort at this juncture to the courts.

of the assets and distribution of cash proceeds, if any, to the partners after payment of other debts of the partnership. Section 8 states that, upon termination and "in the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership" (Exhibit B, at Section 8(d)(aa))

2. Sale/Assignment to Certain Related Parties

Absent termination, a partner may divest of and obtain compensation for his or her partnership interest by assigning or selling the interest to a certain class of family members, pursuant to Section 5 of the Amended Partnership Agreement. Exhibit B. In this event, the other partners have no contractual rights or recourse as to the assignment or sale. Here, the value of the partnership interest is determined by what the family member is willing to pay for the assignment or sale of the partnership interest.

3. Sale/Assignment to Others

In the alternative, also absent termination, a partner may divest of and obtain compensation for his or her partnership interest by assigning or selling that interest to an unrelated third party under Section 6 of the Amended Partnership Agreement. Exhibit B. In this event, the other partners have a right of first refusal and a right of approval (subject to the limitation of reasonableness) of the assignment or sale. Here, the value of the partnership interest is determined by what a willing third party or a willing partner would pay for the assignment or sale of the partnership interest.

The Amended Partnership Agreement allows for valuation and distribution of cash to partners under Section 8, only if the Partnership has been terminated by a vote of sixty percent of the interest in the Partnership and the assets have been liquidated. Such a vote has not been taken. The Plaintiffs do not allege that the Partnership has been terminated and, in fact, by letter

dated August 21, 2003 (attached hereto as Exhibit G) the plaintiffs, acting through their attorney, expressly acknowledge that the Partnership is not terminated. The letter provides, at page 2, that the plaintiffs "recognize that in order to terminate the partnership, a vote of 60% of the partners is required. In the absence of this 60% vote, you will of course continue the partnership as the sole partners and we will be the general creditors of the partnership for our partnership interest." Accordingly, the plaintiffs cannot avail themselves of Sections 4 or 8 of the Amended Partnership Agreement and their claims for judicial dissolution and valuation must fail.

Contrary to plaintiffs' assertion, the situation is not precisely analogous to that of a landlord and tenant who enter into a lease for a specified term. Plaintiffs' misstate applicable landlord-tenant case law. At the end of a lease term, the relationship between a landlord and holdover tenant does not convert automatically into a tenancy at will:

> Under Massachusetts law, a tenant who holds over at the end of a written lease is a tenant at sufferance. The tenancy at sufferance changes into a tenancy at will when the lessee pays, and the landlord accepts, a rental fee for the leased premises.

T. W. Nickerson, Inc. v. Fleet National Bank, 2004 WL 1195310 (Mass. Super.) (citations omitted). There is simply no analogue in a partnership for concepts like partner-at-sufferance nor is there a mechanism like the payment of rent that would convert the relationship into a partnership at will. Further, to the extent landlord-tenant law is similar, the Nickerson court makes abundantly clear that even a tenant at will holds the premises "according to the terms of the written lease, in the absence of a new agreement." Id.,( citations omitted).

Further, in Spodek v. United States Postal Service, 35 F.Supp.2d 160, the Court found that even the payment of rent did not convert a tenancy at sufferance into a tenancy at will.

Despite the fact that the hold-over Postal Service had paid rent to its landlord after expiration of the lease term, the Court found that

> the Postal Service became a tenant at sufferance when it held over. Since nothing in the Complaint indicates that the parties have reached an express or implied agreement which would convert the tenancy into a tenancy at will, the Postal Service remains a tenant at sufferance . . . under Massachusetts law, the landlord-tenant relationship during the holdover period continues to be governed by the original lease (except as to those terms which are disputed during the holdover period . . . .

Id. at 165-166, (citations omitted). It is clear from the Amended Partnership Agreement and the post 1994 conduct of the parties that the Amended Partnership Agreement is still in effect, including the provision requiring a 60% vote of the partners in order to terminate the Partnership. In his August 21, 2003 letter, the plaintiffs' then-lawyer expressly stated that, "We recognize that in order to terminate the partnership, a vote of 60% of the partners is required." See Exhibit G.

Finally, Plaintiffs' contention that the Amended Partnership Agreement provides a non-exclusive method of termination makes no sense.[7] If one partner could simply terminate the partnership, there would be no reason or need for a 60% vote. Indeed such a holding would be wholely inconsistent with the provisions of Paragraph 4. Plaintiffs' reading would render superfluous the clear terms of the Amended Partnership Agreement and the Court should not countenance such an interpretation.

### C. The Terms of the Amended Partnership Agreement Govern

When an agreement is unambiguous, its terms and scope are to be determined based upon the language of the instrument itself. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996). The unambiguous terms of the Amended Partnership Agreement make it clear

that the ownership of the Partnership is to be altered in one of three ways. As the mechanism chosen by plaintiffs in bringing this action, is inconsistent with the express terms of the agreement, the claims must be dismissed.

Without a termination of the Partnership, Section 5 and Section 6 of the Amended Partnership Agreement govern how plaintiffs must proceed in seeking to ascertain and receive value for their partnership interest. These sections do not allow the matter of valuation of a partner's interest to be ascertained by a court of law.

Courts have frequently upheld contractual provisions limiting a party's recourse to a judicial proceeding. In Gertz v. Fontecchio,[8] the Michigan Supreme Court found that a provision in a partnership agreement stating that if either of the partners desired to terminate the partnership at any time, the continuing partner could take over the partnership business at a rate at which it may be appraised and valued, was intended to provide a means for termination of the partnership without recourse to a judicial proceeding. Accordingly, one partner's desire to terminate was not permitted to defeat the other partner's rights under the partnership agreement by bringing a lawsuit.

Under Sections 5 and 6 of the Amended Partnership Agreement, value is to be assessed by the market, not by the courts. The Amended Partnership Agreement simply does not allow minority partners to commission an appraisal of some the Partnership assets and bring a court action to force majority partners to buy them out. Accordingly, the plaintiffs' claim asking this

---

[7] Plaintiffs state "Certainly the Partnership can still be terminated by a 60 percent vote, but, as a partnership at will, it can also be terminated by any partner, at any time and for any reason." (Cross-Motion, p.18.)

[8] 49 N.W.2d 121, 124, 331 Mich. 165, 169-170 (1951). Despite plaintiffs' assertion to the contrary, defendants' reliance on Gertz is sound. As plaintiffs accurately quote, "the determination of values, on the basis of competent proofs, is a judicial function constantly exercised by the courts and properly so in the absence of an express agreement for a different method of determination." Id. at 124 (emphasis supplied). Unfortunately, plaintiffs refuse to accept that the Amended Partnership Agreement constitutes such an express agreement. See also, Cominos v. Kalkanes, 37 Wash.2d

court to ascertain the value of their partnership interest contravenes the Amended Partnership Agreement and must fail.

### D. The Massachusetts Uniform Partnership Act also Requires Dismissal

The Massachusetts Uniform Partnership Act, M.G.L. c. 108A (the "UPA"), also bars the plaintiffs' claims. Section 42 of the UPA establishes the rights of withdrawing partners:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1) (2) (3) (5) (6), or section thirty-eight (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, **unless otherwise agreed**, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership...

(emphasis supplied). "It is implicit in Section 42 in the use of the words 'unless otherwise agreed' that partners may provide by agreement the amounts to be paid to retiring partners by the surviving partnership." Devlin v. Rockey, 295 F.2d 266, 269 (1961). Since, as described above, the Amended Partnership Agreement provides for valuation and compensation of a partner's interest in a different manner than that prescribed by the UPA, the Amended Partnership Agreement must prevail and the plaintiffs' claim must be dismissed.

Other courts considering this issue have consistently ruled that partnership agreements trump the UPA with respect to the rights of withdrawing partners. See e.g., Robbins v. Salem Radiology, 764 A.2d 885, 145 N.H. 415 (2000) (The UPA provisions on settling accounts between the partners after dissolution do not apply when there is an agreement to the contrary); Wood v. Gunther, 201 P.2d 874, 89 Cal. App.2d 718 (1949) (Partners may agree in their contract of co-partnership that interest of a deceased partner may be purchased by surviving partners for a stated sum or for an amount arrived at by a process or formula.); Balafas v. Balafas, 117 N.W.2d

---

843, 226 P.2d 863 (1951)(Parties entering into a partnership agreement may provide by the contract for dissolution and

20, 263 Minn. 267 (1962) (The UPA does not preclude an agreement between partners that upon the death of one the survivor should be the owner of property of the partnership, even though such agreement called for a disposition of partnership assets contrary to statutory provisions which would have been controlling in absence of such agreement.); In re Eddy's Estate, 49 N.E.2d 628, 290 NY 677 (1941) (The liquidation of a partnership dissolved by death of a member is controlled by partnership law only in the absence of a particular agreement on the subject made by the partners themselves.); Heath v. Spitzmiller, 663 S.W.2d 351 (Mo.App. S.D. 1983) (Partnership agreement superseded general law, and thus withdrawing partner's rights were to be determined by partnership agreement.)

Accordingly, under the UPA the plaintiffs are bound by Section 5 and Section 6 of the Partnership Agreement, which dictate how the plaintiffs may seek to ascertain and ultimately recover the value of their interest in the Partnership. That is, where the Partnership has not been terminated, the plaintiffs – having withdrawn form the Partnership – are free to assign or sell their partnership interest and receive fair compensation from whatever assignee or buyer receives the interest. Under the Amended Partnership Agreement, however, the plaintiffs are not free to bring this action asking the court to dissolve the Partnership and/or appoint a receiver to wind up and liquidate the Partnership.

Throughout the Cross Motion for Partial Summary Judgment, plaintiffs approach the Uniform Partnership Act as supplying cookie-cutter provisions that may either be imposed on the Partnership Agreement, despite express contractual language to the contrary or imposed wholesale on a partnership at will. Plaintiffs approach is wrong. As the Court stated in Meehan v. Shaughnessy, partners are "allowed to provide for rights at dissolution and during the wind-up

---

termination without resorting to legal methods of dissolution as provided by the UPA.)

period which are different from those provided for in the statute." As stated above, plaintiffs have conceded that the partnership (whether at-will or otherwise) is governed by the Amended Partnership Agreement. They cannot simply pick and choose which provisions of the Agreement and which provisions of the Uniform Partnership Act better serve their goals.

**E. "Retirement" Is Not Intended by the Partnership Agreement.**

The plaintiffs argue that the Amended Partnership Agreement is silent on the mechanism for "retirement" from the partnership. The simple response is that the Amended Partnership Agreement does not provide for "retirement," because such a provision is inconsistent with the provisions of the agreement and manifestly was not the intent of those who formed the agreement. In other words, there were various mechanisms created for opting out of the Captain Parker Arms Partnership: retirement was not one of them. To conclude otherwise, would be to ignore the intent of the parties as established from a reading of the clear and unambiguous language of the Amended Partnership Agreement.

It is correct, as Plaintiffs' argue, that the original Partnership Agreement as executed on "January 08, 1964 does not address termination, dissolution, withdrawal, retirement, valuation or liquidation in any way" and that it thereafter "specifically incorporate[d] Massachusetts General Laws Ch. 108A by reference in paragraph 7." Plaintiffs' Opposition Memorandum, p. 6-7. But the Plaintiffs' then conveniently ignore the implications of the Modification to the Agreement, dated March 11, 1987.

In the Modification, the partners amended the original partnership agreement by specifically providing for continuing existence of the partnership and for mechanisms for partners to extract themselves from the partnership. As an example, the Modification provided circumstances that had been omitted from the original 1964 Agreement: termination, dissolution,

valuation and liquidation. A clear reading of the Agreement, as Modified in 1987, establishes that there were newly agreed upon mechanisms for extraction from the partnership: retirement was simply not one of them.

The resulting Agreement (the Amended Partnership Agreement) contains a number of new provisions which are inconsistent with, or otherwise not contained within Ch. 108A. Specifically:

1. the partnership does not terminate on the death or withdrawal of a partner, but rather on a 60% vote of the partnership interests;
2. the partners can transfer their interest in the partnership to defined members of their family, or entities controlled by them, without any approval process; and
3. the partners can transfer their interest in the partnership to third parties, after adhering to a right of first refusal process that requires the offer of the third party to be made available to the other partners for acceptance or rejection before transfer can be made to the third party.[9]

Review of these provisions added in 1987 by the Modification makes clear the intent of the Modification and thus the intent of the Amended Partnership Agreement. The partnership was to continue indefinitely and separation of partners from the partnership was to be on only limited terms. To accept the position urged by the Plaintiffs', i.e. that partners may "retire" and thus force the remaining partners to buy out their interests, would be inconsistent with the clear terms of the Amended Partnership Agreement.

When an agreement is unambiguous, its terms and scope are to be determined based upon the language of the instrument itself. Herson v. New Boston Garden Corp., 40 Mass. App. Ct. 779, 792 (1996).

Unless there is an ambiguity in the contract, or an expressly defined term, the interpretation of contract language "presents a question of law for the court." "The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose." USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116, 546 N.E.2d 888 (1989); Rey v. Lafferty, 990 F.2d 1379 (1st Cir. 1993)

In construing a contract the Court is to "take into account not only the meaning of the individual words of the contract and their interrelation with each contract provision and the contract as a whole, but also the attendant facts and circumstances. Massachusetts Municipal Wholesale Electric Co., v. Danvers, 411 Mass. 39, 45-46 (1991).

The plaintiffs seek a construction of the contract that would permit a partner or partners to "retire" from the partnership and force the remaining partners to buy out their interests at a value to be ascertained in the context of this litigation. Such an interpretation would be inconsistent with the specific terms of the Amended Partnership Agreement and, thus, would not be a reasonable and practical construction of the contract as a whole. The Amended Partnership Agreement specifically permits a partner to (a) transfer a partnership interest to family interests without consent of the other partners (¶ 5); and (b) transfer a partnership interest to third parties in an arms length transaction at a fair market price, subject to the right of first refusal held by the other partners (¶ 6). The contract interpretation and remedy the plaintiffs seek is directly inconsistent with ¶ 6 of the Amended Partnership Agreement. This is so, because on one hand it would impose a requirement on the remaining partners to buy out a partnership interest in a transaction, that on the other hand they are specifically permitted to reject by such ¶ 6.

---

[9] In the event of rejection of the right of refusal by the partners, the partners must consent to a third party transfer, unless failure to give consent would be deemed reasonable.

### F. **<u>The Partners Intended That The Partnership Agreement Govern the Affairs of the Partnership</u>**

Plaintiffs do not dispute that the Partnership continued to be in effect after 1994, and plaintiffs have conceded that the Amended Partnership Agreement governs their partnership relationship. It is clear that the partners understood that all provisions of the Amended Partnership Agreement governed their relationship.

In construing a contract the Court is to "take into account not only the meaning of the individual words of the contract and their interrelation with each contract provision and the whole, but also the attendant facts and circumstances." <u>Massachusetts Municipal Wholesale Electric Co., v. Danvers,</u> 411 Mass.39, 45046 (1991). It is clear both from the 1987 Amendment and from the conduct of the partners since 1994 that the Amended Partnership Agreement continues to govern the affairs of the Partnership.

For example, on May 15, 1996, now-deceased partner Alfred P. Tropeano amended his Partner's schedule by using the procedure set forth in Paragraph 9 of the Amended Partnership Agreement. A copy of the Tropeano Schedule is attached hereto as Exhibit H. So too, on April 11, 2000, partner and plaintiff Carolyn M. Patten also amended her Partnership Schedule by following the procedure set forth in Paragraph 9 of the Amended Partnership Agreement. Significantly, her April 11, 2000 schedule modification is entitled "Schedule of Carolyn M. Patten, Captain Parker Arms *Partnership Agreement*." (emphasis added) A copy of the Patten Schedule is attached hereto as Exhibit I.

Moreover, even in the act of seeking to withdraw from the Partnership, the plaintiffs also affirm the authority of the Amended Partnership Agreement. By letter dated August 21, 2003 the plaintiffs, by their then-attorney Frederick J. Conroy, wrote to the individual defendants,

informing them of their "wish to retire from the Captain Parker Arms Partnership effective October 1, 2003." In the letter, then counsel for the plaintiffs also states:

> We recognize that in order to terminate the partnership, a vote of 60% of the partners is required... If you wish to terminate the partnership, we would participate in that vote in the affirmative.

Exhibit G.[10]

As recently as 2003, the Plaintiffs expressly recognize the existence and authority of the Amended Partnership Agreement to govern the affairs of the Partnership. The plaintiffs cannot pick and choose which provisions of the Amended Partnership Agreement they wish to adhere to and which provisions they wish to ignore. The entire Amended Partnership Agreement, as it provides for termination and withdrawal, must be enforced. AccuSoft Corp. v. Palo, 237 F. 3d 31, 41-42 (2001) (Court states that parties have a right to rely upon the contract and "it is far wiser for a court to honor the parties' words than to imply other and further promises out of thin air." (citations omitted) See also Rogaris v. Albert, 730 N.E. 2d 833 (2000) (It is not the role of the Court to alter the parties' contractual agreement) There is nothing in the Partnership Agreement or the conduct of the Partners that suggests that the Amended Partnership Agreement has terminated. Accordingly, the provisions of the Amended Partnership Agreement must be enforced and the Court should dismiss the First Amended Complaint.

**G. Accounting**

Finally, by Count VIII plaintiffs seek an accounting. The bare bones allegations of the First Amended Complaint are inadequate as a matter of law to entitle plaintiffs to the requested

---

[10] In footnote 6 at page 18 of the Cross-Motion for Partial Summary Judgment, plaintiffs attempt to retreat from this statement. The letter not only expresses a correct statement of applicable law, but also it constitutes an admissions under Rule 801(d)(2)(B), (C) and (D), F.R.E.V. and a reflection of the clear intent and understanding of the parties that the Amended Partnership Agreement is still in effect.

relief.[11] There is no provision for an accounting in the Amended Partnership Agreement. In the absence of such a provision, the right to an accounting is governed by the terms of M.G.L. c.108A, §22. Section 22 only provides for an accounting, where at least one of four conditions is satisfied. Plaintiffs have failed to even allege that any of the conditions established by §22, which entitle a partner to an accounting, have in fact occurred. Thus, plaintiffs have failed to adequately state a claim for an accounting

**CONCLUSION**

For the foregoing reasons the Court should reject Plaintiffs' Cross Motion for Partial Summary Judgment, leaving the plaintiffs to withdraw from the Partnership on the contractual terms already provided.

Respectfully submitted,
Charlene Dorman, Bianca Dorman, Lydia Dorman, Todd Dorman, T&N Realty Trust and Captain Parker Arms Partnership
By their Attorney,

Gary C. Crossen, BBO # 106580
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
Tel.: (617) 330-7036

Dated: July 12, 2004

[11] Again, it is not the defendants' position that plaintiffs are not entitled to an accounting. They have routinely received accountings and will be afforded further accountings. They have simply not alleged, and cannot allege, facts which entitle them to an accounting ordered by the Court.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of July, 2004, I sent a copy of the foregoing by hand delivery and by U.S. mail to Thomas M. Ciampa, Esq., 45 Bromfield Street, Suite 200, Boston, MA 02108.

Gary C. Crossen