UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-CV-12231-RGS

PHILIP L. TROPEANO, et al.

v.

CHARLENE DORMAN, et al.

<u>MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS
AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

February 22, 2005

STEARNS, D.J.

On November 21, 2003, Philip Tropeano, Peter Tropeano, and Carolyn Patton, three partners of the Captain Parker Arms Partnership (Partnership), who own a 42.86% minority interest, sued the Partnership, its nominee trust, T&N Realty, and the majority partners, Charlene Dorman, Bianca Dorman, Lydia Dorman, and Todd Dorman. Plaintiffs are seeking to retire from the Partnership pursuant to the provisions of the Massachusetts Uniform Partnership Act (UPA), G.L. c. 108A, § 42. Defendants resist the invocation of the UPA, arguing that the terms of the Partnership Agreement (as modified), provide the only avenue by which a partner may withdraw.

On January 21, 2004, defendants moved to dismiss the Complaint.[1] On April 1, 2004, plaintiffs sought leave to amend the Complaint. On April 13, 2004, the court allowed

---

[1] On February 18, 2004, defendants moved to disqualify (then) plaintiffs' counsel on the grounds that he had previously represented the Partnership. On March 17, 2004, the court allowed the motion. Successor counsel has since appeared for the plaintiffs.

1

the motion, thereby mooting the motion to dismiss. On June 2, 2004, defendants moved to dismiss the Amended Complaint. In response, plaintiffs filed a cross-motion for summary judgment. On December 2, 2004, the court heard oral argument on the motions.

The parties agree, with one exception, that the facts are not in dispute.[2] On January 8, 1964, Alfred Tropeano, Louis Tropeano, Joseph Tropeano, Philip Tropeano, and Wilbur Nylander entered into a two page Agreement creating the Captain Parker Arms Partnership. The partners undertook to "become and remain partners in the business of acquiring the title [to a certain piece of land in Lexington] . . . to construct apartments on said land, for the term of thirty years from the date hereof." To accomplish that end, the T&N Realty Trust was created to hold the real estate for the partners' benefit. The Agreement provided that "[a]ll applicable provisions and sections of General Laws Chapter 108A of the Commonwealth of Massachusetts are herein incorporated by reference and made a part hereof."

Sometime thereafter, Joseph Tropeano died. On March 11, 1987, the remaining partners modified the Agreement to reflect his passing. The Modification in relevant part stated as follows.

> Whereas, Joseph C. Tropeano is now deceased.
>
> Now, therefore, this Modification and affirmation of the Partnership by the surviving partners[,] Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano and Philip Tropeano agree:
> . . . .
>
> 1. Co-Partners.   That the partnership agreement dated January 8, 1964,

---

[2]The exception involves a dispute over partnership distributions and an accounting which is not immediately relevant to the issue at hand.

was not dissolved or terminated by the surviving partners when Joseph C. Tropeano died, has been and is in full force with exception of Joseph's interest.

. . . .

4. Termination.   The partnership can be terminated by a vote of not less than 60% interest of 100% and upon such vote the partners shall so notify the Trustees to liquidate the assets and distribute the net principal and accumulated income as provided by number 8 hereunder.

5. Partner's Rights to Assign or Sell to Certain Individuals.   Any partner shall have the right to assign or to sell any portion of his interest to his wife or his children or grandchildren, without the consent of the other partners. . . .

6. Partners Right to Assign or Sell to Others.   Prior to any assignment or sale of any partner's interest or those having his interest to others than the aforesaid, the assigning or selling partner shall offer the same in writing with a certified copy of the terms offered to him by the proposed assignee or purchaser.  The partners shall have thirty (30) business days to accept or reject the offer.  If they do not accept the offer, the assignment or sale to the third party shall only be made with the consent of the other partners and those claiming through them which consent will not be unreasonably withheld.

. . . .

8.   Distribution on Termination.   In the event of the dissolution and termination of the partnership, the Trustees shall be instructed to proceed to the liquidation of the partnership and the proceeds of the liquidation shall be applied and distributed in the following order of priority:

>   (a)   Debts.  To the payment of the debts and liabilities of the partnership. . . .
>
>   (b)   Reserves.  To the setting up of any reserves which the partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the partnership. . . .
>
>   (c)   Partner loans.  To the repayment of any loans or advances that may have been made by any of the partners to the partnership. . . .
>
>   (d)   Balance.  Any balance remaining shall be distributed among

>     all partners as follows according to their percentage holding.
> 
>     . . .

The parties agree that the Modification provided three new means by which a partner could terminate or transfer his or her interest in the Partnership. Under ¶ 4, a vote of a 60% interest in the Partnership triggers a liquidation and a distribution of the Partnership assets under ¶ 8. Under ¶ 5, a partner can assign his or her interest in the Partnership to an immediate family member without the consent of the remaining partners. And finally, under ¶ 6, a partner can assign his or her interest to a third party so long as the remaining partners are given a thirty day right of first refusal.

Several of the partners took advantage of ¶ 5 and transferred their interests to family members, including most of the present plaintiffs and defendants. After the Modification, the partners continued to operate under the terms of the Agreement without taking any apparent notice of the passage of the 30 year anniversary of the Partnership's inception.[3] However, on August 21, 2003, Philip Tropeano, Peter Tropeano, and Carolyn Patton served written notice on the defendants that they intended to retire effective October 1, 2003, according to the terms of G.L. c. 108A, § 42. The notice stated as follows.

> Please be informed that we, Philip Tropeano, Peter Tropeano and Carolyn Patton wish to retire from the Captain Parker Arms Partnership effective October 1, 2003.
> 
> Pursuant to the provisions of M.G.L. Ch. 108A, Sec. 29, the change in our

---

[3]Not only did the Partnership continue to mange its rental property without interruption after the 30 year term expired, but many of the plaintiffs and defendants acceded to their interest in the Partnership through assignments made after the expiration date pursuant to ¶ 5 of the Modification.

> relationship effected by our retirement from the partnership is to be treated as dissolution of the partnership.
>
> Pursuant to the provisions of Chapter 108A, Section 42, as retiring partners we wish to have the value of our interests ascertained as of the date of dissolution (that is, October 1, 2003).
>
> There is enclosed herewith an Appraisal by Eric Reenstierna Associates showing the value of the land and buildings of $18,800,000.00. The partnership accountants, using generally recognized accounting principals, can determine the value of our partnership shares based upon all assets less all liabilities of the partnership as of that date. We have selected the date of the first of the month for easier calculation of the various accounts of the partnership.
>
> As of October 1, 2003 Philip Tropeano, Peter Tropean[o] and Mary C. Tropeano will submit resignations as Trustees of T & N Realty Trust, the entity holding title to the real estate of the partnership for the benefit of the partners.
>
> We recognize that in order to terminate the partnership, a vote of 60% of the partners is required. In the absence of this 60% vote, you will of course continue the partnership as the sole partners and we will be general creditors of the partnership for our partnership interest. In this respect, your attention is invited to the provisions of Chapter 108A, Section 42 for the rights of a retired partner (that is, when any partner retires, and the business is continued, unless otherwise agreed, he or she may have the value of his or her interest ascertained as of the date of dissolution and shall receive as an ordinary creditor an amount equal to the value of his or her interest in the dissolved partnership with interest, or at his or her option, in lieu of interest, the profits attributable to the use of his or her rights in the property of the dissolved partnership). We desire of course to be paid in full.
>
> If you wish to vote to terminate the partnership, we would participate in that vote in the affirmative. In that event, there would be a winding up of the affairs of the Partnership.

Plaintiffs valued their collective interest in the Partnership's $18.8 million in appraised assets at $6,600,000.[4] On September 15, 2004, defendants replied to plaintiffs' notice,

---

[4] I do not understand defendants to materially dispute the $18.8 million figure.

stating that in their estimation, the plaintiffs' interest amounted to at most $2,750,000.[5]

Unable to compromise the difference, the partners chose to pursue this litigation.

## DISCUSSION

Plaintiffs contend that the formal Partnership terminated on January 8, 1994, when the 30 year term of the original Agreement expired. Plaintiffs argue that upon expiration of the 30 year term, the Partnership was transformed into one at will by operation of G.L. c. 108A, § 23(1). The statute states:

> [w]hen a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will.

If plaintiffs are correct, while the Agreement as modified continued to serve after the expiration of the 30 year term as the charter for the conduct of Partnership affairs, its terms are not binding to the extent that they are inconsistent with those of a partnership at will.[6] There is one material instance in which an arguable material inconsistency exists. In a partnership at will, a partner may unilaterally terminate his or her interest in the partnership

---

[5] As will be seen, the difference in valuations lies in the fact that in defendants' view the plaintiffs interest can only be liquidated under ¶ 6 of the Modification and therefore is subject to a significant minority share discount.

[6] Plaintiffs analogize the transformation of the Partnership from one governed by the original Partnership Agreement to a partnership at will to the conversion of a leasehold into a tenancy at will. Defendants maintain that the more apt analogy is to a tenancy at sufferage. Why this is true is not clear to me as Partnership funds were distributed and accepted at least until October of 2003. While the common law analogy is interesting, I am not certain it is all that relevant, as the dispute here is between the terms of a written contract and those of a statute (the UPA).

at any time for any reason.  Meehan v. Shaughnessy, 404 Mass. 419, 428 (1989).  This would mean that ¶¶ 4, 5, and 6 of the Modification would have no restrictive significance in determining the means by which a partner can withdraw from the Partnership and force an accounting of his or interest.  Instead, plaintiffs argue that ¶¶ 4, 5, and 6 of the Modification provide three ways in which a partner may withdraw, but not at the exclusion of a fourth.  If § 23 of the UPA, by converting the Partnership to one at will, permits a partner to unilaterally withdraw, then the withdrawal triggers an accounting under § 42 of the UPA.  This section states in relevant part:

> [w]hen any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1)(2)(3)(5)(6), or section thirty-eight (2b), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest.

Plaintiffs argue that the August 21, 2003 notice effectively terminated their at will interest in the Partnership as of October 1, 2003, and under § 42 of the UPA their interest should be valued as of that date.

    Defendants' counter argument gives far more importance to the Modification to the Agreement than plaintiffs are willing to concede.  According to defendants, the adoption of the Modification, by introducing in ¶ 4 a mechanism for liquidating the Partnership by a 60% vote of the partners, supplanted the 30 year term with an agreement to continue the Partnership indefinitely unless or until a 60% liquidation vote was achieved.  Thus, the 30 year anniversary of the Partnership is of no legal significance and the Partnership was

never transformed into a partnership at will. There are good arguments for and against the defendants' interpretation of the Modification. On the one hand, the provision for inter-generational transfers of partnership interests would seem strong circumstantial evidence that the drafters of the Modification intended to extend the life of what by all accounts was a very successful joint venture. On the other hand, the Modification expressly stated that the "partnership agreement dated January 8, 1964, was not dissolved or terminated by the surviving partners when Joseph C. Tropeano died, [and] has been and is *in full force* with exception of Joseph's interest." (Emphasis added.) A reasonable interpretation of the plain language of the emphasized clause suggests that the contracting partners intended to reaffirm the terms of the original Agreement, including its 30 year duration. Defendants by way of rebuttal offer what I consider a clever but strained argument. They maintain that because the original Agreement declared as its purpose that all signatories were to "become and remain partners . . . for the term of thirty years," the death of Joseph Tropeano frustrated that purpose. Thus, the Modification, by implication, substituted a new purpose – maintaining the property under the Agreement until a dissolution occurred under ¶ 4. Putting aside the reluctance of courts to resort to implication in interpreting a contract, the Modification stated its own purpose, which was to continue the original Agreement in "full force with exception of Joseph's interest."[7]

---

[7]Defendants also argue that plaintiffs by their conduct have shown that they understood that the Modification was intended to replace the 30 year term of the original Agreement. Defendants point to the statement in the August 21, 2003 retirement notice that "[w]e recognize that in order to terminate the partnership, a vote of 60% of the partners is required." In context, the statement is not inconsistent with plaintiffs' position that the three methods of terminating a partner's interest under the Modification are nonexclusive.

8

This does not, however, conclude the matter, as defendants offer a more plausible alternative argument. They contend that even if the Partnership Agreement expired on January 8, 1994, and even if the Partnership became a partnership at will, § 42 of the UPA does not apply. According to § 42 "[w]hen any partner retires or dies, and the business is continued . . . without any settlement of accounts . . . *unless otherwise agreed*, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest . . . ." (Emphasis added). Defendants argue that because the Modification to the Partnership Agreement did, in fact, otherwise agree on a manner by which to settle a partner's accounts (through ¶¶ 4, 5, or 6), § 42 does not apply. Defendants argue that to hold otherwise would make the 60% vote requirement of ¶ 4 meaningless.

Plaintiffs complain that defendants' argument presupposes that a provision specifying the conditions for a partner's retirement should be given the same weight as a provision granting the right to force the liquidation of a partnership. While the provisions are not identical, the argument ignores the fact that the Modification in ¶ 6 provides a mechanism for a partner to terminate his or her individual interest.[8] In doing so, ¶ 6 also provided a method for valuing the surrendered partnership interest, albeit one not favorable to a withdrawing minority partner, but one not unfamiliar in a business context. Consequently, § 42 does not apply and plaintiffs are restricted in terminating their interest

---

[8]Paragraph 6 is not inconsistent with a partnership at will because it allows a partner to terminate his or her interest in the Partnership for any reason at any time, albeit subject to conditions.

9

in the Partnership to the three methods set out in the Modification.

This is admittedly a close case. The easy thing for the court to do would be to pronounce an ambiguity in the intent of the original partners in crafting the Modification and proceed to a trial. The practical problem is that there is no disinterested person living who could shed light on the partners' intent in modifying the Agreement. Over time, the success of the investment gave the beneficiaries of the Partnership little incentive to closely examine its terms, and as the court has observed, the decision to permit inter-generational transfers strongly supports the inference that the intent of the partners was to encourage the continuation of the original Partnership until a super-majority was persuaded that it was no longer in their personal interest. Given the falling out between families that underlies the dispute, a firm resolution of the case is to everyone's immediate benefit. It remains open to the parties to come to a parting of the ways on mutually agreed reasonable terms, or by invoking ¶ 5 of the Agreement, to defer the ultimate issue to another generation.

## ORDER

For the foregoing reasons, plaintiffs' motion for summary judgment is <u>DENIED</u>. Defendants' motion to dismiss is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE