UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILIP L. TROPEANO, PETER TROPEANO )
and CAROLYN PATTON, )
)
Plaintiffs, )
v. )
) DOCKET NO.
) 03-CV-12231-RGS
CHARLENE DORMAN, BIANCA DORMAN, )
LYDIA DORMAN, AND TODD DORMAN, )
INDIVIDUALLY AND AS THEY ARE )
TRUSTEES OF THE T&N REALTY TRUST )
AND PARTNERS OF THE CAPTAIN )
PARKER ARMS PARTNERSHIP, )
)
Defendants. )

**PLAINTIFFS' REPLY BRIEF TO DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Philip Tropeano, Peter Tropeano and Carolyn Patton (collectively, "Plaintiffs") hereby submit the following brief reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment. In further support of their Cross-Motion, Plaintiffs state as follows.

I.    The "Tenancy At Will" Analogy Remains Apt.

Defendants argue that Plaintiffs' analogy between a partnership at will and a tenancy at will is not precisely accurate because, under Massachusetts law, a holdover tenant first becomes a tenant at sufferance. In addition to being a distinction without any relevance to an analysis of the issues at bar, Defendants' point is somewhat misleading. It is not the case that a tenancy at sufferance necessarily occurs when a tenant continues his occupancy beyond the specified term of the written lease. Spodek v. United States Postal Service, 35 F. Supp.2d 160, 165 (D. Mass.

1999)("Under Massachusetts landlord-tenant law, when a tenant holds over after the expiration of the lease term, either a tenancy at will or a tenancy at sufferance results"); Corcoran Management Co. v. Withers, 24 Mass. App. Ct. 736, 742 (1987)("The continued occupation by a tenant after the expiration of his term with the knowledge and consent of his landlord and the payment and receipt of rent ... is evidence sufficient to show an agreement for a tenancy at will") quoting Benton v. Williams, 202 Mass 189, 192-193 (1909)(internal quotations omitted). Instead, it is only in such instances where a tenant unlawfully holds over without the agreement of the landlord that a tenancy at sufferance arises. Spodek, 35 F. Supp.2d at 165 ("A tenancy at sufferance occurs where a tenant 'merely continues to hold possession of the premises ... and has made no contract as to the character of [his] occupancy after the expiration of the lease term.'")(internal citations omitted) quoting Ames v. Beal, 284 Mass. 56, 59 (1933); Newman v. Sussman, 239 Mass. 283, 285 (1921)(Where new landlord did not agree to continuation of tenancy "defendant became a tenant at sufferance. This implies that his possession thereof was wrongful except for such time as was necessary, or given under the statute, to remove from the premises").

Furthermore, even in an instance where a tenant continues his occupancy without the initial agreement of the landlord any subsequent action by the landlord indicating consent to the continuation of the tenancy – such as acceptance of rent – automatically converts the tenancy at sufferance into a tenancy at will. T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 2004 Mass. Super. LEXIS 164, *17 (2004). In either event, Plaintiffs' analogy to tenancies at will was merely intended to provide another useful illustration of the legal concept "at will". It was not meant to suggest, nor is it true, that tenancies must mirror partnerships in every way for Plaintiffs'

analysis to be correct. The existence of tenancies at sufferance is simply not germane to an appropriate analysis in this matter.

Moreover, even if tenancies at sufferance were relevant, their existence would contradict, not advance, Defendants' argument. One of the primary differences between a tenancy at will and a tenancy at sufferance is that a tenancy at sufferance is even *easier* to terminate (regardless of the terms of the expired lease). The Defendants cite Spodek, 35 F. Supp.2d 160 (D. Mass. 1999) for the proposition that even in a tenancy at sufferance situation, the terms of the original lease continue to govern after the tenant becomes a holdover tenant. Again, though, the Defendants miss the importance of the words that follow "except." As the Spodek court noted, "the landlord-tenant relationship during the holdover period continues to be governed by the original lease (except as to those terms which are disputed during the holdover period)...." Spodek at 165-66 (emphasis added). The other case cited by Defendants, Nickerson, supra, similarly holds that, although a tenancy at will is, in general, governed by the terms of the original lease, this rule would not apply, for example, to a right of first refusal which expires with the original lease.

Common sense requires also that there is one area in which the original lease (or original partnership agreement) *cannot* possibly control after the expiration of the lease (or partnership) term: namely, the exclusivity of ways in which the tenancy (or partnership) can be terminated. A lease will oftentimes contain provisions setting out the exclusive circumstances under which the lease may be terminated prior to the end of its term. If a party attempts to terminate the lease during the term without one of these provisions having been triggered, the terminating party is in breach of the lease. Once the tenancy is converted to a tenancy at will (or a tenancy at

sufferance), however, the triggering provisions, while still applicable, are no longer exclusive. By definition, either party may now terminate the lease at will (with proper notice).

The Uniform Partnership Act ("UPA") provides for a completely analogous situation. "When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, <u>so far as is consistent with a partnership at will</u>." G.L. c. 108A, §23(1)(emphasis added). See, e.g., <u>Pappas v. Arfaras</u>, 20 F. Supp. 2d 372, 378 (D. Conn. 1998)(holding that, where a partnership is continued after its fixed term, the terms of the previous partnership agreement continue to apply <u>except</u> that "the fixed-term provision is disregarded.") This is not, as the Defendants state time and again, an attempt to "pick and choose" the provisions of the Partnership Agreement which the Plaintiffs like, but rather it is simply recognition of the way in which the law operates.[1]

II.     <u>The "Osborne" Case is Not Controlling.</u>

Defendants cite a 23 year old decision of the Arkansas Supreme Court, <u>Osborne v. Workman</u>, 273 Ark. 538 (1981), for the proposition that a partnership agreement which provided that it could only be "dissolved mutually or by law" was not terminable at will by an individual partner. In the circumstances of the present case, the Defendants' argument, and the <u>Osborne</u> case miss the mark. In <u>Osborne</u>, the Court was faced not with a partnership which had been continued after the expiration of its specified term, but rather a partnership agreement which had always been intended to continue until "dissolved mutually or by law". As a result, the <u>Osborne</u> case was not concerned with the provision of the Uniform Partnership Act which addresses the continuation of a partnership after the expiration of its specified term (as with section 23(1) of

---

[1] To the contrary, it is Defendants who seek to "pick and choose," as they like the portions of section 23(1) which recognize the ongoing nature of the Partnership Agreement, but seek to ignore, and thereby render superfluous, the qualifying language "so far as is consistent with a partnership at will."

4

the Massachusetts statute), but rather the section of the UPA addressing the right of a partner to dissolve a partnership formed for an indefinite period (as with section 31(1)(b) of the Massachusetts statute). The Court there held that the provision in the agreement providing that the partnership could only be "dissolved mutually or by law" conflicted with – and so superceded – the provision of the UPA which allowed for a partner to dissolve a partnership formed for an indefinite period.

In reaching its decision, the Osborne Court focused on the specific circumstances of the case before it, and based its decision on the idea that partnerships amongst professionals often required agreements that "promote longevity," noting that "'the reasons for an agreement that a medical partnership should continue without disruption of the services rendered are self evident.'" Id. at 542-43 (quoting Adams v. Jarvis, 127 N.W.2d 400 (Wisc. 1964)). Such concerns are, of course, not at play in the present case.

It is also interesting to note that the Osborne case has never been cited in a published decision outside of Arkansas, and that even the few Arkansas cases to cite the decision do not seem to give it as expansive a read as do Defendants. See, e.g., Stout v. Ridgway, 9 Ark. App. 315 (1983)(citing Osborne for the proposition that, despite a partnership agreement which provided for termination of a partner's interests under two circumstances (the sale of the partnership asset or the death of a partner), the Court should look to the UPA for the provisions governing dissolution and termination).

Ultimately, however, regardless of how interesting an academic parsing of the Osborne case might prove, the simple fact is that the decades-old Arkansas case is in conflict with all of

5

the controlling Massachusetts case law.[2]

      III.    Prior Counsel's Statement is Neither As Clear Cut Or As Binding As the Defendants Suggest.

Finally, Defendants make much of a letter from Plaintiffs' prior counsel to Defendants which Defendants quote as stating:

> We recognize that in order to terminate the partnership, a 60% vote of the partners is required... If you wish to terminate the partnership, we would participate in that vote in the affirmative.

As is often the case, however, the devil is in the ellipses and the portions omitted by Defendants are significant. In full, the relevant portion of the letter reads:

> We recognize that in order to terminate the partnership, a 60% vote of the partners is required. In the absence of this 60% vote, you will of course continue the partnership as the sole partners and we will be general creditors of the partnership for our partnership interest. In this respect, your attention is invited to the provisions of Chapter 108A, Section 42 for the rights of a retired partner (that is, when any partner retires, and the business is continued, unless otherwise agreed, he or she may have the value of his or her interest ascertained as of the date of dissolution and shall receive as an ordinary creditor an amount equal to the value of his or her interest in the dissolved partnership, with interest, or at his or her option, in lieu of interest, the profits attributable to the use of his or her rights in the property of the dissolved partnership.) We desire of course to be paid in full.
>
> If you wish to terminate the partnership, we would participate in that vote in the affirmative.

See Plaintiffs' First Amended Complaint, Exhibit C. To the extent, then, that the Defendants seek to imply intent from this communication, the Plaintiffs' intent seems clear – they intended

---

[2] See, e.g., Meehan v. Shaughnessy, 404 Mass. 419, 421 (1989)("Where a partnership agreement provides that the partnership is to continue indefinitely... the partnership is therefore 'at will'..."); Johnson v. Kennedy, 350 Mass. 294, 298 (1966)(where the partnership agreement "did not specify the life of the agency, the partnership was at the will of the partners"); Steele v. Estabrook, 232 Mass. 432, 439 (1919)("In the agreement of partnership between Hervey and Steele there was no provision as to the time during which the partnership was to continue. Under these circumstances either party had a right to terminate the partnership at will"); Wiggins v. Brand, 202 Mass. 141, 147 (1909)("there having been no definite agreement... as to the time that it was to continue, the partnership should be treated as being strictly at will and as dissolved from the date of the filing of the bill"); Fletcher v. Reed, 131 Mass. 312, 313 (1881)("A partnership for an indefinite period is in law a partnership at the will of the partners, and either partner may withdraw when he pleases, and dissolve the partnership...."); Georg v. Tzavos, 4 Mass. L. Rep. 391 (Mass. Super. Ct., September 20, 1995)(because the partnership agreement lacked "any specific mutual agreement with respect to the duration of the partnership," the partnership "was therefore a partnership at will, which, under c. 108A, 31, could be dissolved at any time by either party.")

6

in one form or another to withdraw from the partnership and be paid in full for their partnership interest. Indeed, it would appear that predecessor counsel was attempting, albeit somewhat imprecisely, simply to allow the Defendants the option to continue the partnership business, something which would not be possible if there was a full termination, which requires a liquidation of partnership assets.

More to the point, though, to the extent that the Defendants seek to use predecessor counsel's statement as some sort of "gotcha" admission, the Defendants overestimate the import of the statement. Counsel cannot, simply by inadvertently misstating the law, actually *change* the law (much to the disappointment of many an attorney). To the extent that predecessor counsel's letter could be interpreted as to suggest that the partnership could only be terminated by a 60 percent vote of the partnership, the simple answer is that, as a matter of law, predecessor counsel was mistaken.

## Conclusion

For the reasons stated herein and in the Plaintiffs' Cross-Motion for Partial Summary Judgment, Defendants' Motion to Dismiss or, in the alternative, for summary judgment, should be denied and Plaintiffs' Cross-Motion for Partial Summary Judgment should be allowed.

        Respectfully submitted,

        PHILIP L. TROPEANO, PETER
        TROPEANO and CAROLYN PATTON

        By their attorney

        */s/ Thomas Ciampa*
        Thomas M. Ciampa (BBO#566898)
        Ciampa & Associates
        45 Bromfield Street, Suite 200
        Boston, MA 02108
        (617) 742-5955

Dated: July 30, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2004, a copy of the foregoing Plaintiffs' Reply Brief to Defendants' Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment was served by hand upon counsel for the defendants.

*Thomas Ciampa*
Thomas Ciampa