UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIP L. TROPEANO, PETER TROPEANO, and CAROLYN PATTON, <br><br>Plaintiffs,<br><br>v.<br><br>CHARLENE DORMAN, BIANCA DORMAN, LYDIA DORMAN, TODD DORMAN, T&N REALTY TRUST, and CAPTAIN PARKER ARMS PARTNERSHIP,<br><br>Defendants. | CIVIL ACTION<br>NO. 03-CV-12231-RGS |

## AFFIDAVIT OF CHARLENE DORMAN

I, Charlene Dorman, hereby depose and state as follows:

1. I am one of the named defendants in the above-entitled litigation. I live in Menlo Park, California. My children, Bianca Dorman Humphries, Lydia Dorman Smith and Todd Dorman, are also defendants in this litigation. Each of us are partners in the Captain Parker Arms Partnership (the "Partnership"). We are also Trustees of the T&N Realty Trust (the "Realty Trust"), also a defendant.

2. I make this Affidavit in opposition to Plaintiffs' Motion for Real Estate Attachment. I have personal knowledge of the matters set forth herein and would be competent to testify thereto.

3.  The Plaintiffs in this litigation are my uncle, Philip L, Tropeano, and my cousins Peter Tropeano and Carolyn Patton. Each have been partners of the Partnership. Philip, Peter and my cousin Mary Carol Tropeano are also Trustees of the T&N Realty Trust.

4.  The Realty Trust was created in 1962 by my father, Alfred P. Tropeano, and his original partner, Wilbur Nylander (hence the name of the Trust – T&N Realty Trust). T&N Realty Trust owns the real estate called Captain Parker Arms, an apartment complex in Lexington, Massachusetts. The Partnership has operated the apartment complex as an income-generating vehicle for the partners since it was first developed by my father. Since mid-2003, Captain Parker Arms has been professionally managed by The Dolben Company, Inc., for the benefit of the partners of the Captain Parker Arms Partnership.

5.  My children and I acquired our interests in the Partnership based upon the provisions of the will of my father, who died in 1997. With this inheritance, the Dorman family became the largest interest holders of the Partnership, holding the 57.13% interest in the Partnership previously held by my father.

6.  I was raised in Lexington, Massachusetts and most of my relatives, including my brother, aunts, uncles and cousins, continue to live in and around the Lexington area. Although I moved away when my husband, who was also raised in Massachusetts, accepted his present position at Stanford University in California, I continue to think of Lexington as my home and have strong personal and emotional ties to the area. For that reason, I make several trips a year to Lexington, for the 19th of April Celebrations, Christmas and summer holidays in order to visit with family and share my hometown with my children and grandchildren. For the last several years, I have maintained an apartment at Captain Parker Arms, and after my husband's retirement in 2 or 3 years, we are considering living in that apartment for much longer periods of

time. Captain Parker Arms is my sole inheritance, whereas Plaintiffs own other land in Lexington. Maintaining my link to Lexington and my family living there is one of the reasons why I would not agree to sell Captain Parker Arms at the time of the events which led to this law suit. The Dorman family Defendants and I did not wish to sell then, and do not wish to sell now. We wish to keep Captain Parker Arms as an income-producing vehicle for the partners, just as it has been since it was created by my father.

7. On a number of occasions prior to his death, my father strongly advised me to keep Captain Parker Arms as an income generating property for myself and my children. My father expressed his belief that the property's best use was to assure a steady income for my family. I promised my father that I would make every effort to adhere to his advice, which had always and continues to serve my family well. Because of this promise, the Dorman family Defendants and I did not wish to sell Captain Parker Arms in 2003, and we do not wish to sell it now.

8. I have been advised that the capital gains and resulting income tax liability from a sale of Captain Parker Arms would be substantial and that comparable investment opportunities which might then be available for us to reinvest sale proceeds are limited and unlikely to provide a higher yield for me and my children. Because the income tax ramifications of a sale would be crushing, the Dorman family Defendants and I did not wish to sell Captain Parker Arms in 2003, and we do not wish to sell it now.

9. There are first and second mortgages on the Realty Trust's property, both of which must be paid in full or refinanced by January 2008. When Plaintiffs made their Motion for Real Estate Attachment, we were exploring a refinancing of those loans and planning to borrow additional funds to permit us to make needed improvements to Captain Parker Arms. If

the Court grants an attachment to Plaintiffs, and particularly if the attachment is large, that will impede our ability to obtain new financing for these purposes.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of December, 2006.

_/s/ Charlene Dorman_
Charlene Dorman

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system pursuant to Local Rule 5.4 will be sent electronically to all other parties.

_/s/ Christine M. O'Connor_