UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIP L. TROPEANO, <br> PETER TROPEANO, and <br> CAROLYN PATTON, <br><br> Plaintiffs, <br><br> v. <br><br> CHARLENE DORMAN, <br> BIANCA DORMAN, <br> LYDIA DORMAN, <br> TODD DORMAN, <br> T&N REALTY TRUST, and <br> CAPTAIN PARKER ARMS PARTNERSHIP, <br><br> Defendants. | CIVIL ACTION <br> NO. 03-CV-12231-RGS |

**AFFIDAVIT OF NICHOLAS P. SCHMALZ**

I, Nicholas P. Schmalz, hereby depose and state as follows:

1. I am a Regional Property Manager for The Dolben Company, Inc. and have served in that capacity since before Dolben became the property manager for Captain Parker Arms in 2003. I am responsible for the oversight of the management of CPA. As such, I have personal knowledge of the matters set forth in this Affidavit.

2. I make this Affidavit at the request of the Defendants, in connection with their opposition to Plaintiffs' Motion for Real Estate Attachment. I have personal knowledge of the matters set forth herein and would be competent to testify thereto.

- 2 -

3. Since August 2003, Dolben has served as the property manager of CPA. CPA is an apartment community in Lexington, Massachusetts. CPA is comprised of eleven, two- to three-story buildings and has 94 residential units.

4. In addition to providing property management services to apartment communities, Dolben provides similar services to condominium complexes. Dolben also has converted or been involved in the conversion of apartment communities similar to CPA into condominium complexes.

5. As of October 2003 and currently, none of the buildings, units or common areas of CPA accommodated persons with disabilities as described in 521 CMR 1.0, *et seq.*

6. When Dolben first took over the management of the property, we discovered that the property had not been properly managed by the preceding property manager, plaintiff Peter Tropeano, and that repairs that had been made were of poor and unacceptable workmanship, often resulting in safety hazards.

7. By way of example, some of the problems we discovered and had to correct include the following:

a) all building entrance doors had odd sized and mismatched hinges, causing damage to the doors and door frames, including cracked jambs and door warping;

b) repairs to the wiring in the hallways and apartments were not done to code and caused the breakers to trip often and lights to burn out prematurely;

c) drain pipes in apartment kitchens and bathrooms were improperly sealed, causing the pipes to rot and split;

    d)    bathroom exhaust fan/heater/light fixtures were obsolete and burnt wiring was found in many of the units which should have been replaced;

    e)    drain trays in apartment HVAC units were not sealed after a coil unit repair causing water damage to hardwood floors and ceilings in many apartments;

    f)    due to lack of regular service, filters were dirty and clogged leading to increased humidity levels causing hardwood and tiled floors to expand and pop up;

    g)    circulator pumps on the heating systems were not maintained and oiled, requiring replacement and many were the type that cannot be oiled; and

    h)    boilers which required annual servicing had either not been serviced properly or had not been serviced at all, resulting in rotting manifolds, damaged fire chambers, inefficient operation.

    8.    Additionally, in the three years since Dolben took over the property management the following major maintenance projects had to be addressed due to disrepair and safety requirements:

    a)    replacement of 5 boilers;

    b)    repavement of a section of driveway and driveway patches and replacement of some berm throughout the community;

    c)    purchase of 12 HVAC coil units;

    d)    mold remediation due to leaking HVAC units; and

    e)    poor drainage has caused the sinking of several buildings and flooding of basements of 2 buildings requiring immediate temporary repairs and the undertaking of a long-term project to provide proper drainage throughout the property.

9. The total cost of the repairs and major maintenance projects described above and others, including the estimated costs of the ongoing projects, will exceed $612,000. If Captain Parker Arms had been properly managed and maintained prior to August 2003, these repairs and projects would not have been necessary.

10. If, in October 2003, an attempt to convert CPA to condominiums had been undertaken, the kitchens, bathrooms and electrical of nearly all units would have needed to be completely renovated in order to offer units with kitchens and baths that were comparable to those offered by other condominium complexes in the greater Boston area. Even if it were determined that these renovations were to provide only basic kitchens and baths, the cost of the renovations would have been approximately $20,000 per unit, based upon an estimate Dolben obtained in early 2004.

11. As of October 2003 and currently, all of the units are on a common metering system for gas and water, and thus heat and hot water are included in the rental fee. In the event of a condominium conversion, the gas and water supply to each unit would have been converted to separate metering, and the cost of doing so would have been approximately $1,000 per unit.

12. As of October 2003 and currently, none of the units had laundry facilities. Instead, each building has a coin-operated washer and dryer in the unfinished, common-area basements. Condominium complexes of comparable size typically have laundry facilities to each unit. Dolben estimates that the minimum cost to add laundry facilities in each unit would have been $1000 per unit.

13. As of October 2003 and currently, only six one-bedroom units have private entrances. All other units are accessed from common-area vestibules and hallways. None of the units are townhouses, and thus none provide multi-level living accommodations.

14. CPA does not have a security system or security service for the community except for building door intercoms, and none of the units are provided with security systems or services, features often provided in condominium complexes of comparable size.

15. CPA does not have a fitness center, swimming pool, tennis courts or clubhouse facility, features often provided in condominium complexes of comparable size.

16. The Captain Parker Arms Financial Statement for September 2003, attached as Exhibit B to the Affidavit of Peter Tropeano, was incomplete and incorrect because not all financial information concerning CPA had been transferred to Dolben at the time of that report. The transfer of all financial data to Dolben was not completed until the end of the year and the first Monthly Financial Statement issued by Dolben to reflect complete and accurate data was for the month of December 2003. Dolben sent each of the plaintiffs a copy of the Monthly Financial Statements, as each was issued, from September 2003 through August 2006, and thus accurate information concerning the finances of CPA was made available to Plaintiffs before they made their Motion for Real Estate Attachment.

Subscribed and sworn to under the pains and penalties of perjury this 8th day of December, 2006.

_____
Nicholas P. Schmalz

- 6 -

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system pursuant to Local Rule 5.4 will be sent electronically to all other parties.

                  _____/s/ Christine M. O'Connor_____