UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

———————————————————————
                                                      )
PHILIP L. TROPEANO,                                   )
PETER TROPEANO, and                                   )
CAROLYN PATTON,                                       )
                                                      )
                        Plaintiffs,                   )
                                                      )
            v.                                        )  CIVIL ACTION
                                                      )  NO.  03-CV-12231-RGS
CHARLENE DORMAN,                                      )
BIANCA DORMAN,                                        )
LYDIA DORMAN,                                         )
TODD DORMAN,                                          )
T&N REALTY TRUST, and                                 )
CAPTAIN PARKER ARMS PARTNERSHIP,                      )
                                                      )
                        Defendants.                   )
———————————————————————)

## ANSWER AND COUNTERCLAIM

The Defendants, Charlene Dorman, Bianca Dorman (now known as Bianca Dorman

Humphries), Lydia Dorman (now known as Lydia Dorman Smith), Todd Dorman, T&N Realty

Trust and Captain Parker Arms Partnership (collectively, "Defendants"), hereby respond to the

First Amended Complaint and assert their affirmative defenses and Counterclaims as set forth

below.

> [Paragraphs 1 through 73 correspond and are in answer to the identically
> numbered paragraphs of the First Amended Complaint.  Paragraphs 74 through 79
> set forth Defendants' affirmative defenses.  Paragraphs 80 through 119 set forth
> Defendants' Counterclaims.]

Nature of Action.  This paragraph purports to set forth the "Nature of Action" and does

not contain allegations of fact to which a response is required.  To the extent a response may be

necessary or appropriate, Defendants admit that Plaintiffs seek the relief described in this

paragraph, and acknowledge that they are bound by the law of the case as established by the First Circuit Court of Appeals.

## Parties

1.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph ("Lack of Knowledge"), except that the Defendants believe that Plaintiff Phillip L. Tropeano resides in Massachusetts.

2.      Lack of Knowledge, except that the Defendants believe that Plaintiff Peter Tropeano resides in Massachusetts.

3.      Lack of Knowledge, except that the Defendants believe that Plaintiff Carolyn Patten resides in Massachusetts.

4.      Admitted.

5.      Bianca Dorman is now known as Bianca Dorman Humphries.  Defendants deny the allegations of the first sentence and admit the allegations of the second sentence.

6.      Lydia Dorman is now known as Lydia Dorman Smith.  Defendants deny the allegations of the first sentence and admit the allegations of the second sentence.

7.      Admitted.

8.      Defendants deny that Defendant T&N Realty Trust is a nominee trust.  Pursuant to Trust Article IV, the "Trustees shall have no power to act as agent for beneficiaries hereunder . . ."  Except as so answered, the allegations set forth in this paragraph are admitted.

9.      Defendants admit that the Dorman Defendants are each trustees of the T&N Realty Trust, but deny that they are the only trustees thereof.  Plaintiffs are also trustees of the T&N Realty Trust.

10.     Denied.

11.     Admitted, except that Defendant Captain Parker Arms Partnership, described in the written co-partnership agreement dated January 8, 1964, is the successor to a partnership organized in January 1955.

12.     Defendants admit that the Dorman Defendants are partners of Defendant Captain Parker Arms Partnership.  The doctrine of law of the case as established by the First Circuit Court of Appeals identifies the partners of the Partnership.

## Jurisdiction and Venue

13.     Defendants admit that the amount in controversy exceeds $75,000, and deny all other allegations set forth in this paragraph.  Defendants specifically deny that citizenship of the parties is completely diverse and that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

14.     Defendants deny that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

(a)     The doctrine of law of the case as established by the First Circuit Court of Appeals identifies the partners of the Partnership.  Defendants admit that the only business of the Captain Parker Arms Partnership is to operate a 94 unit residential apartment complex in Lexington, Massachusetts.  Except as so answered, the allegations set forth in this subparagraph are denied.

(b)     Defendants admit that the Dorman Defendants are each trustees of the T&N Realty Trust, but deny that they are the only trustees thereof.  Defendants admit that the T&N Realty Trust owns the apartment complex located in Lexington, Massachusetts known as Captain Parker Arms.  Except as so answered, the allegations set forth in this subparagraph are denied.

(c)     Defendants admit that the only business of the Captain Parker Arms Partnership, a Massachusetts partnership, is to operate a 94 unit residential apartment complex in Lexington, Massachusetts, and that all partnership assets are located within Massachusetts.  Except as so answered, the allegations set forth in this subparagraph are denied.

(d)     Defendants admit that the T&N Realty Trust owns the apartment complex located in Lexington, Massachusetts known as Captain Parker Arms.  Except as so answered, the allegations set forth in this subparagraph are denied.  Defendants specifically deny that Defendant T&N Realty Trust is a nominee trust and that the only purpose of the T&N Realty Trust is to hold "bare" legal title to land and buildings as alleged.

15.     Defendants deny that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332, and therefore deny that the venue provisions of 28 U.S.C. §1391(a)(2) are applicable.

## Alleged Facts Common to All Counts

16.     Defendants admit that the written instrument attached to the First Amended Complaint as Exhibit A described the partnership known as Captain Parker Arms.  As set forth therein, such instrument replaced a January 1955 written partnership agreement and renamed the partnership upon the buyout of the interest of former partner Torsten H. Reenstierna.  Except as so answered, the allegations set forth in this paragraph are denied.  Defendants specifically deny that that the document attached to the First Amended Complaint as Exhibit A is a complete copy of the Captain Parker Arms partnership agreement.

17.     Exhibit A to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

18.     Exhibit A to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

19.     Defendants admit that the T&N Realty Trust owns the apartment complex located in Lexington, Massachusetts known as Captain Parker Arms, and that pursuant to amended Trust Article III, the beneficiaries of the T&N Realty Trust are "the successors to a partnership organized January 8 [sic.], 1955 . . . referred to in a written co-partnership agreement dated January 8, 1964, named "Captain Parker Arms".  Except as so answered, the allegations set forth in this paragraph are denied.

20.     Exhibit A to the First Amended Complaint speaks for itself.  Further answering, Defendant Captain Parker Arms Partnership continues to operate the residential apartment complex in Lexington, Massachusetts known as Captain Parker Arms.  Except as so answered, the allegations set forth in this paragraph are denied.

21.     Exhibit A to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

22.     Defendants admit that the written instrument attached to the First Amended Complaint as Exhibit B modified the Captain Parker Arms partnership agreement following the death of former partner Joseph C. Tropeano.  Except as so answered, the allegations set forth in this paragraph are denied.  Defendants specifically deny that that the document attached to the First Amended Complaint as Exhibit B is the only modification of the Captain Parker Arms partnership agreement.

23.     Exhibit B to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

24.     Exhibits A and B to the First Amended Complaint speak for themselves.  Except as so answered, the allegations set forth in this paragraph are denied.

25.     Exhibits A and B to the First Amended Complaint speak for themselves.  Except as so answered, the allegations set forth in this paragraph are denied.

26.     Exhibit B to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

27.     Exhibits A and B to the First Amended Complaint speak for themselves.  Except as so answered, the allegations set forth in this paragraph are denied.

28.     Exhibits A and B to the First Amended Complaint speak for themselves.  Further answering, Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Except as so answered, the allegations set forth in this paragraph are denied.

29.     Exhibits A and B to the First Amended Complaint speak for themselves.  Defendants admit that the Captain Parker Arms Partnership continues to operate to the present day.  Further answering, Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Except as so answered, the allegations set forth in this paragraph are denied.

30.     Admitted.

31.     Defendants admit that they or their representatives received Exhibit C to the First Amended Complaint in or about late August, 2003.  Exhibit C to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

32.     Exhibit C to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

33.    Exhibit C to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.  Further answering, Defendants deny that the Captain Parker Arms Partnership owns any real estate, and deny that Plaintiffs had or have a legal right to insist that the assets of the Captain Parker Arms Partnership be liquidated.

34.    Defendants admit that Exhibit D to the First Amended Complaint was enclosed with the August 21, 2003 letter which is Exhibit C to the First Amended Complaint.  Exhibit D to the First Amended Complaint speaks for itself.  Except as so answered, the allegations set forth in this paragraph are denied.

35.    Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Except as so answered, the allegations set forth in this paragraph are denied.  Defendants specifically deny that the Plaintiffs' interests are to be valued by assuming a sale of all assets of the Captain Parker Arms Partnership to a third party.

36.    Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Except as so answered, the allegations set forth in this paragraph are denied.  Defendants specifically deny that the Plaintiffs' interests are to be valued by assuming a sale of all assets of the Captain Parker Arms Partnership to a third party.

37.    Denied.

38.    Defendants admit that Plaintiffs have not yet been paid the value of their former partnership interests.  Such value is disputed and is one of the issues to be resolved in this litigation.  The amount of interest to which Plaintiffs are entitled thereon is in dispute and is

another of the issues to be resolved in this litigation.  Except as so answered, the allegations set forth in this paragraph are denied.

39.    Denied.

## Count I – Declaratory Judgment (Partnership at Will)

Defendants believe that the decision of the First Circuit Court of Appeals resolved all issues asserted in this Count, and that this Count is no longer before the Court. Accordingly, no response to the allegations contained in this paragraph is required.  To the extent that a response to the allegations contained in this paragraph is necessary or appropriate, the Defendants respond as follows:

40.    Defendants repeat their responses to paragraphs 1 through 39, above.

41.    Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Further answering, the partners continued to operate the Captain Parker Arms Partnership after January 8, 1994, and as Plaintiffs recognized in their resignation letter, Exhibit C to the First Amended Complaint, the Dorman Defendants are continuing to operate the business of the Captain Parker Arms Partnership.  Except as so answered, the allegations set forth in this paragraph are denied.

42.    Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

43.    Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

## Count II – Declaratory Judgment (Right to Dissolution)

Defendants believe that the decision of the First Circuit Court of Appeals resolved all issues asserted in this Count, and that this Count is no longer before the Court. Accordingly, no response to the allegations contained in this paragraph is required.  To the extent that a response to the allegations contained in this paragraph is necessary or appropriate, the Defendants respond as follows:

44.    Defendants repeat their responses to paragraphs 1 through 43, above.

    BOS111_12033509_3.DOC/COCONNOR

45.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Further answering, as Plaintiffs recognized in their resignation letter, Exhibit C to the First Amended Complaint, the Dorman Defendants are continuing to operate the business of the Captain Parker Arms Partnership.

46.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

### Count III – Declaratory Judgment (Liquidation of Partnership Assets)

47.     Defendants repeat their responses to paragraphs 1 through 46, above.

48.     Admitted.  Further answering, as Plaintiffs recognized in their resignation letter, Exhibit C to the First Amended Complaint, the Dorman Defendants are continuing to operate the business of the Captain Parker Arms Partnership, as is their right.  Defendants specifically deny that they are required to liquidate all assets of the partnership, and specifically deny that Plaintiffs' interests are to be valued by assuming a sale of all assets of the Captain Parker Arms Partnership to a third party.

49.     Admitted.

### Count IV – Declaratory Judgment (Right to Withdraw and Retire)

Defendants believe that the decision of the First Circuit Court of Appeals resolved all issues asserted in this Count, and that this Count is no longer before the Court. Accordingly, no response to the allegations contained in this paragraph is required.  To the extent that a response to the allegations contained in this paragraph is necessary or appropriate, the Defendants respond as follows:

50.     Defendants repeat their responses to paragraphs 1 through 49, above.

51.     Defendants admit that Plaintiffs have made the assertions described in this paragraph.  To the extent Plaintiffs intend such assertions to be factual allegations, Defendants

admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

52.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

53.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

## Count V – Decree of Dissolution

Defendants believe that the decision of the First Circuit Court of Appeals resolved all issues asserted in this Count, and that this Count is no longer before the Court. Accordingly, no response to the allegations contained in this paragraph is required. To the extent that a response to the allegations contained in this paragraph is necessary or appropriate, the Defendants respond as follows:

54.     Defendants repeat their responses to paragraphs 1 through 53, above

55.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

56.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

57.     Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

58.      Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

## Count VI – Winding up/Liquidations of Assets

59.     Defendants repeat their responses to paragraphs 1 through 58, above.

60.     Mass. G.L.c. 108A, §§29, 30 and 37 speak for themselves.

61.    Exhibit B to the First Amended Complaint speaks for itself.  Defendants deny that the Captain Parker Arms Partnership has been terminated.  As Plaintiffs recognized in their resignation letter, Exhibit C to the First Amended Complaint, the Dorman Defendants are continuing to operate the business of the Captain Parker Arms Partnership, as is their right.  Except as so answered, the allegations set forth in this paragraph are denied.  Defendants specifically deny that they are required to liquidate all assets of the partnership, and specifically deny that Plaintiffs' interests are to be valued by assuming a sale of all assets of the Captain Parker Arms Partnership to a third party.

62.    Defendants admit that Plaintiffs have not yet been paid the value of their former partnership interests.  Such value is disputed and is one of the issues to be resolved in this litigation.  The amount of interest to which Plaintiffs are entitled thereon is in dispute and is another of the issues to be resolved in this litigation.  Further answering, as Plaintiffs recognized in their resignation letter, Exhibit C to the First Amended Complaint, the Dorman Defendants are continuing to operate the business of the Captain Parker Arms Partnership, as is their right.  Except as so answered, the allegations set forth in this paragraph are denied.  Defendants specifically deny that they are required to liquidate all assets of the partnership, and specifically deny that Plaintiffs' interests are to be valued by assuming a sale of all assets of the Captain Parker Arms Partnership to a third party.

### Count VII – Valuation of Interests/Treatment as Creditors

63.    Defendants repeat their responses to paragraphs 1 through 62, above.

64.    Notwithstanding their earlier contentions herein, the Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.

BOS111_12033509_3.DOC/COCONNOR

65.    Defendants admit that Plaintiffs have not yet been paid the value of their former partnership interests.  Such value is disputed and is one of the issues to be resolved in this litigation.  The amount of interest to which Plaintiffs are entitled thereon is in dispute and is another of the issues to be resolved in this litigation.

66.    As Plaintiffs recognized in their resignation letter, Exhibit C to the First Amended Complaint, the Dorman Defendants are continuing to operate the business of the Captain Parker Arms Partnership, as is their right.  The value of Plaintiffs' former partnership interests in the Captain Parker Arms Partnership is disputed and is one of the issues to be resolved in this litigation.  Except as so answered, the allegations set forth in this paragraph are denied. Defendants specifically deny that they are required to liquidate all assets of the partnership, and specifically deny that Plaintiffs' interests are to be valued by assuming a sale of all assets of the Captain Parker Arms Partnership to a third party.

67.    Denied.

68.    Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Mass. G.L.c. 108A, §42 speaks for itself.  The value of Plaintiffs' former partnership interests in the Captain Parker Arms Partnership is disputed and is one of the issues to be resolved in this litigation.  Except as so answered, the allegations set forth in this paragraph are denied.

69.    Defendants admit that they are bound by the law of the case as established by the First Circuit Court of Appeals.  Mass. G.L.c. 108A, §42 speaks for itself.  The amount of interest to which Plaintiffs are entitled is disputed and is one of the issues to be resolved in this litigation. Except as so answered, the allegations set forth in this paragraph are denied.

## Count VIII – Accounting

Defendants believe that the decision of the First Circuit Court of Appeals resolved all issues asserted in this Count, and that this Count is no longer before the Court. Accordingly, no response to the allegations contained in this paragraph is required. To the extent that a response to the allegations contained in this paragraph is necessary or appropriate, the Defendants respond as follows:

70.     Defendants repeat their responses to paragraphs 1 through 69, above.

71.     Denied.

72.     Denied.

73.     Denied.

## First Affirmative Defense

74.     This Court lacks subject matter jurisdiction because the citizenship of the parties is not diverse as required by 28 U.S.C. §1332.

## Second Affirmative Defense

75.     Based upon the decision of the First Circuit Court of Appeals, which is the law of the case, the only portion of Plaintiffs' claims which remains to be determined herein is the value of Plaintiffs' interests in the Captain Parker Arms Partnership as of October 1, 2003.

## Third Affirmative Defense

76.     Upon their withdrawal from the Captain Parker Arms Partnership, the value of Plaintiffs' former partnership interests is to be determined based upon the value of the profits generated by the partnership and not based upon the liquidation or sale value of the partnership's assets.

## Fourth Affirmative Defense

77.     Upon their withdrawal from the Captain Parker Arms Partnership, Plaintiffs are required to pay to the partnership the amount of their negative capital accounts.

BOS111_12033509_3.DOC/COCONNOR

## Fifth Affirmative Defense

78.     Defendants are entitled to set off against any amounts to be paid to the Plaintiffs the amounts which the Defendants owe to the Captain Parker Arms Partnership or its partners.

## Sixth Affirmative Defense

79.     The statutory interest on any amounts to be paid to the Plaintiffs is to be calculated at the rate of 6% per annum.  G.L.c. 107, §3.

WHEREFORE, the Defendants pray that this action be dismissed for lack of subject matter jurisdiction.  If this action is not dismissed, the Defendants pray that the value of Plaintiffs' partnership interests in the Captain Parker Arms Partnership be determined based upon the value of the profits generated by the partnership and not based upon the liquidation or sale value of the partnership's assets, that such amount be reduced by the Plaintiffs' negative capital accounts and such other amounts as they owe to the Captain Parker Arms Partnership or its partners, and that Plaintiffs' receive interest on the amount to be paid them at the rate of 6 per annum as required by Mass. G.L.c. 107, §3.

## COUNTERCLAIMS

Plaintiffs-in-Counterclaim Charlene Dorman, Bianca Dorman Humphries, Lydia Dorman Smith and Todd Dorman (the "Dormans") allege as follows:

## Parties

80.     Plaintiff-in-Counterclaim Charlene Dorman is a resident of Menlo Park, California and is a partner of Captain Parker Arms Partnership.

81.     Plaintiff-in-Counterclaim Bianca Dorman Humphries is a resident of Vancouver, British Columbia, Canada and is a partner of Captain Parker Arms Partnership.

82.     Plaintiff-in-Counterclaim Lydia Dorman Smith is a resident of Ann Arbor, Michigan and is a partner of Captain Parker Arms Partnership.

83.     Plaintiff-in-Counterclaim Todd Dorman is a resident of New York, New York and is a partner of Captain Parker Arms Partnership.

84.     On information and belief, Defendants-in-Counterclaim Philip L. Tropeano, Peter Tropeano and Carolyn Patten are each residents of Massachusetts.

85.     This Court has jurisdiction over this counterclaim because it is compulsory within the meaning of Fed. R. Civ. P. 13(a).

### Facts Common to All Counts

86.     Captain Parker Arms Partnership ("Captain Parker Arms") is a Massachusetts partnership described in a written agreement dated January 8, 1964, and subsequently amended, and is the successor to a partnership organized in January 1955.  The principal place of business of Captain Parker Arms Partnership is in Lexington, Massachusetts.

87.     During the times relevant hereto, Defendants-in-Counterclaim Philip L. Tropeano, Peter Tropeano and Carolyn Patten (collectively, "the Tropeanos") and the Dormans have all been partners of Captain Parker Arms.

88.     Defendant-in-Counterclaim Philip L. Tropeano became a partner of Captain Parker Arms on or before March 11, 1987 and continued to be a partner of Captain Parker Arms until at least September 30, 2003.  As of September 30, 2003, Philip L. Tropeano held a 21.43% interest in Captain Parker Arms.

89.     Defendant-in-Counterclaim Peter Tropeano became a partner of Captain Parker Arms on or before March 11, 1987 and continued to be a partner of Captain Parker Arms until at

least September 30, 2003. As of September 30, 2003, Peter Tropeano held a 10.715% interest in Captain Parker Arms.

90.     Defendant-in-Counterclaim Carolyn Patten became a partner of Captain Parker Arms on or before March 11, 1987 and continued to be a partner of Captain Parker Arms until at least September 30, 2003. As of September 30, 2003, Ms. Patten held a 10.715% interest in Captain Parker Arms.

91.     As of September 30, 2003, the Dormans each were partners of Captain Parker Arms and collectively held a 57.14% interest in Captain Parker Arms.

92.     T&N Realty Trust is a Massachusetts trust created by written instrument dated June 26, 1962, and subsequently amended, filed in the Massachusetts Land Registration Office of the Middlesex South Registry of Deeds as Document No. 401177 (the "Trust"). The principal place of business of the Trust is in Lexington, Massachusetts.

93.     The Tropeanos and the Dormans are the trustees of the Trust.

94.     The beneficiaries of the Trust are the partners of Captain Parker Arms.

## COUNTERCLAIM COUNT I – BREACH OF FIDUCIARY DUTIES
### (vs. Defendant-in-Counterclaim Peter Tropeano)

95.     The Dormans repeat the allegations set forth in Counterclaim paragraphs 80 through 94, above.

96.     In or about 1999, Defendant-in-Counterclaim Peter Tropeano was appointed property manager of the real property owned by the Trust and the equipment and other property owned either by Captain Parker Arms or the Trust. As property manager, he was responsible for the upkeep and maintenance of the property, contracting for and approval of work performed on the property, and fulfilling the property improvement objectives approved by the Trustees of the Trust.

97.    Peter Tropeano was the property manager until the summer of 2003.  As property manager, Peter Tropeano was paid a minimum of $35,000 per year.

98.    As property manager, Peter Tropeano hired his wife, Jean Tropeano, as the leasing agent for the Captain Parker Arms apartments.  Jean Tropeano received a commission for each new lease executed.

99.    Since August 2003, The Dolben Company, Inc. ("Dolben") has served as the property manager, replacing Peter Tropeano.

100.    Dolben has discovered that the property had not been properly managed by the prior property manager, and that repairs that had been made were of poor and unacceptable workmanship, often resulting in safety hazards.

101.    Among the property mismanagement issues discovered by Dolben were the following:

(a)    all building entrance doors had odd sized and mismatched hinges, causing damage to the doors and door frames, including cracked jambs and door warping;

(b)    repairs to the wiring in the hallways and apartments were not done to code and caused the breakers to trip often and lights to burn out prematurely;

(c)    drain pipes in apartment kitchens and bathrooms were improperly sealed, causing the pipes to rot and split;

(d)    bathroom exhaust fan/heater/light fixtures were obsolete and burnt wiring was found in many of the units which should have been replaced;

(e)    drain trays in apartment HVAC units were not sealed after a coil unit repair, causing water damage to hardwood floors and ceilings in many apartments;

(f)    due to lack of regular service, filters were dirty and clogged leading to increased humidity levels, causing hardwood and tiled floors to expand and pop up;

(g)    circulator pumps on the heating systems were not maintained and oiled, requiring replacement and many were the type that cannot be oiled; and

(h)    boilers which required annual servicing had either not been serviced properly or had not been serviced at all, resulting in rotting manifolds, damaged fire chambers, inefficient operation and the need to replace several units;

(i)    the building interior common areas, including entrances, hallways, laundry rooms and storage areas, were overrun with cobwebs, dust and grime and were in need of extensive professional cleaning;

(j)    newly-hired heating contractors reported that poor workmanship done by prior contractor caused problems reported by tenants and created additional problems; and

(k)    the HVAC company engaged by Peter Tropeano worked for nearly a year repairing the AC chiller unit in building 7 without success yet invoicing the property for each attempt – the new HVAC company hired by Dolben was able to repair the problem in one day.

102.    The cost of addressing the above-listed problems caused by Peter Tropeano's mismanagement of the property during his tenure as property manager exceeded $400,000.

103.    During Peter Tropeano's tenure as property manager, the Trustees of the Trust determined that the units should all be upgraded with central air conditioning.  Peter Tropeano, however, refused to undertake the project.  Only after the other Trustees independently acted to have one building renovated, did Peter Tropeano finally agree to renovate the remaining buildings.  This delay caused by Peter Tropeano's conduct added to the overall cost of the central air conditioning project.

104.    Similarly, during Peter Tropeano's tenure as property manager, the Trustees of the Trust determined that the windows in all of the buildings should be replaced.  Peter Tropeano, however, decided to replace the windows on a schedule of one building per year.  When the other Trustees discovered that windows had been replaced in only one building, the Trustees concluded that Peter Tropeano had to be removed as property manager.  The piecemeal

approach to the window replacement adopted by Peter Tropeano increased the overall cost of the project.

105.    As both a Trustee to the Trust, and as agent/property manager, Peter Tropeano had a fiduciary duty to act in the best interest of the beneficiaries of the Trust.

106.    Peter Tropeano's mismanagement of the property and his unilateral decisions not to perform renovations directed by the Trustees as a whole was contrary to the interests of the Trust beneficiaries.

107.    By his conduct, Peter Tropeano breached his fiduciary duties to the Trust and its beneficiaries, causing substantial financial harm.

### COUNTERCLAIM COUNT II –REPAYMENT OF NEGATIVE CAPITAL ACCOUNTS <br> (vs. All Defendants-in-Counterclaim)

108.    The Dormans repeat the allegations set forth in Counterclaim paragraphs 80 through 107, above.

109.    Each partner of Captain Parker Arms has a capital account from which capital funds may be withdrawn by the account-holding partner.  The status of their capital accounts are set forth on Schedule K-1 filed with the Internal Revenue Service each year.

110.    While they were partners of Captain Parker Arms, the Defendants-in-Counterclaim withdrew more money than they had in their capital accounts, causing them to owe money to Captain Parker Arms.

111.    As reported on the partnership's income tax returns, Schedule K-1, filed with the Internal Revenue Service for 2003, the capital accounts of the Defendants-in-Counterclaim were as follows:

>    (a)    Philip L. Tropeano's capital account reflected a negative balance of $203,105.

BOS111_12033509_3.DOC/COCONNOR

    (b)      Peter Tropeano's capital account reflected a negative balance of $109,056.

    (c)      Carolyn Patten's capital account reflected a negative balance of $109,051.

112.    The Defendants-in-Counterclaim have given notice of their withdrawal as partners of Captain Parker Arms as of October 1, 2003.  Despite the fact that more than three years have elapsed since the Tropeanos gave such notice, they have failed and refused to repay their negative capital accounts resulting from their excess capital withdrawals.

113.    Upon withdrawing from the partnership, the Tropeanos must repay to the partnership their excess capital withdrawals.

### COUNTERCLAIM COUNT III – TRUSTEE RESIGNATION OF THE TROPEANOS
### (vs. All Defendants-in-Counterclaim)

114.    The Dormans repeat the allegations set forth in Counterclaim paragraphs 80 through 113, above.

115.    When the Tropeanos gave notice of their withdrawal as partners of Captain Parker Arms as of October 1, 2003, and promised to promptly resign as Trustees of the Trust (see Exhibit C to the First Amended Complaint, at p. 2).

116.    The Trust documents and the Captain Parker Arms Partnership Agreement contemplate that the Trustees of the Trust would be partners of Captain Parker Arms.

117.    More than three years after the Tropeanos gave notice of their withdrawal as partners of Captain Parker Arms, they have still failed and refused to resign their positions as Trustees of the Trust.

118.    The Tropeanos failure to resign as Trustees of the Trust inhibits the ability of the remaining Trustees to act in the best interest of the Trust beneficiaries.

119.    The Tropeanos should be compelled to resign their positions as Trustees of the Trust forthwith.

WHEREFORE, the Dormans demand that this Court:

(a)    enter judgment in favor of the Dormans on all Counts of their Counterclaim;

(b)    award damages to the Dormans in an amount to be determined at trial; and

(c)    compel the Tropeanos to resign their positions as Trustees of the T&N Realty Trust; and

(d)    order such other relief as is equitable and just.


_____/s/ Christine M. O'Connor_____
Sander A. Rikleen – BBO# 420280
srikleen@eapdlaw.com
Christine M. O'Connor – BBO# 647535
coconnor@eapdlaw.com
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Ph:  617·239·0100
Fx:  617·227·4420
Dated:  December 14, 2006        Attorneys for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system pursuant to Local Rule 5.4 will be sent electronically to all other parties.

_____/s/ Christine M. O'Connor_____