UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIP L. TROPEANO, PETER ) <br> TROPEANO and CAROLYN PATTON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CHARLENE DORMAN, BIANCA DORMAN, ) <br> LYDIA DORMAN, TODD DORMAN, ) <br> T&N REALTY TRUST and CAPTAIN ) <br> PARKER ARMS PARTNERSHIP, ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> NO. 03CV12231 (RGS) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO EXTEND DISCOVERY FOR 90 DAYS AND CONTINUE TRIAL**

Having determined that Plaintiffs did possess, at the time of their withdrawal, an absolute right to retire from or terminate the Captain Parker Arms Partnership (the "Partnership"), this case has moved into its second phase during which the Court must determine the value of the Partnership's primary asset -- a 94-unit, multi-million dollar apartment complex -- as of October 1, 2003. Before this can occur, however, a multitude of complicated legal issues and factual disputes must be resolved, specifically including: (1) the most appropriate method(s) for valuing the apartment complex (income capitalization, sales comparison, and/or condominium approach), (2) the defendants' attempt to force Plaintiffs to accept a minority and marketability discount on the value of their former interests, (3) the Court's interpretation of various architectural barriers (accessibility) and fire suppression regulations, and (4) determination of what interest rate the Court should apply pursuant to Mass. Gen. Laws ch. 108A, § 42. In

addition, within the past year, the individual defendants filed a three-count counterclaim raising entirely new claims for the first time.

To date, the parties have identified ten (10) expert witnesses who have collectively produced seven (7) expert reports.  Original expert reports were exchanged just two months ago (and rebuttals just two *weeks* ago), with the defendants' three original reports and one rebuttal report totaling more than 350 pages.  Not a single expert deposition has yet been taken and, as recently as last week, both parties were still serving written discovery requests.  The defendants have recently filed with the Court a Motion in Limine addressed to the "interest rate" issue, and Plaintiffs anticipate filing at least two additional motions in limine (or motions for partial summary judgment) concerning the legal issues described above at (2) and (3).

As if this case alone did not present a sufficient challenge, the undersigned, a solo practitioner, is also counsel to certain defendants in a second matter before this Court entitled Encompass Insurance Company of Massachusetts v. Joseph Giampa, et al., Case No. 05-11693-RCL, a complex civil RICO and insurance fraud matter in which the plaintiff has noticed or otherwise communicated an intent to conduct between fifteen (15) and twenty (20) additional depositions on or before January 31, 2008, eight (8) of which are currently scheduled for dates between October 16, 2007 and November 7, 2007.

Clearly, this is a case that would not only greatly benefit from a short extension of discovery, but in which fundamental fairness to Plaintiffs requires such an extension.

Accordingly, Plaintiffs Philip L. Tropeano, Peter Tropeano, and Carolyn Patten (collectively, "Plaintiffs") hereby request that this Honorable Court extend discovery in this matter until and including February 7, 2008 and continue the trial -- currently scheduled to commence on December 17, 2007-- until some date in March 2008 convenient for the Court.

2

As further grounds for this motion, Plaintiffs state as follows:

**<u>Background</u>**

1.      Though filed during the latter part of 2003, this case has spent most of the time since in "litigation limbo".

2.      Plaintiffs filed this action on November 12, 2003 through their predecessor counsel, Frederick and Matthew Conroy. In the following months, predecessor counsel for the defendants, Gary Crossen, filed both a motion to dismiss Plaintiffs' complaint and a motion to disqualify Frederick and Matthew Conroy as counsel for Plaintiffs. In response to the defendants' motion to disqualify, ultimately granted by the Court, Frederick and Matthew Conroy withdrew as counsel for Plaintiffs and the undersigned entered his appearance on March 8, 2004.

3.      On April 1, 2004, Plaintiffs filed a motion to amend their original complaint (as a matter of right), which motion the Court allowed on April 13, 2004.

4.      On June 2, 2004, the defendants moved to dismiss the amended complaint in its entirety. On June 22, 2004, Plaintiffs opposed this motion and cross-moved for partial summary judgment. The Court heard oral argument from the parties on December 2, 2004, and took the matter under advisement.

5.      On February 22, 2005, the Court entered an order and memorandum granting the defendants' motion and dismissing Plaintiffs' case in its entirety. Plaintiffs appealed and the case was subsequently remanded to the Court on April 19, 2006.

6.      Plaintiffs filed a motion requesting a scheduling conference on June 29, 2006. The following day, the Court denied Plaintiffs' motion, and instead authorized a ninety (90) day period "in which to determine the liquidation value of the partnership assets." (Docket #45.)

7. Approximately three weeks later, on or about July 19, 2006, Edwards Angell Palmer & Dodge entered its appearance, succeeding Attorney Crossen as counsel for the defendants.

8. On December 14, 2006, the defendants filed an answer to Plaintiffs' Amended Complaint and the individual defendants filed a three-count counterclaim in which they alleged, for the first time, among other things, that Peter Tropeano breached his fiduciary duty to T&N Realty Trust and its beneficiaries by mismanaging the physical plant of the Captain Parker Arms Apartments while serving as its property manager.

9. The following day, on December 15, 2006, the Court heard oral argument on Plaintiffs' Motion for a Real Estate Attachment, following which the Court instructed the parties to propose a pretrial schedule for completion of all pretrial activities. The parties filed such a proposed schedule on December 22, 2006.

10. The Court subsequently approved a modified proposed schedule on March 27, 2007 and, on May 10, 2007 entered a procedural order scheduling trial to commence on December 17, 2007.

11. The parties exchanged expert reports on August 10, 2007 and rebuttal reports on October 1, 2007. Notwithstanding the fact that the sole issue remaining for trial distills down to the "liquidation value of the partnership assets," the parties' expert reports make clear that such a determination by the Court will require a multitude of subsidiary legal findings that cannot possibly be properly addressed in the time between now and the scheduled trial. Moreover, now that the relevant factual issues have been laid out by the parties' expert reports (particularly the defendants'), it is clear that the bulk of necessary fact discovery, in the form of numerous lengthy depositions, remains to be taken.

**Major Legal Issues**

Issue of Minority and Marketability Discount

12. By far the most impactful legal determination remaining for the Court involves the status of the defendants' claim that both minority and marketability discounts should apply to any valuation of the Plaintiffs' former partnership interest. In furtherance of this argument, Defendants have submitted an expert report expressing a legal opinion that both minority and marketability discounts apply, and opining as to the amount of the discounts that should obtain.

13. The parties will no doubt address whether such a legal opinion is the appropriate province for a testimonial expert as part of pre-trial motion practice. More to the point, however, is the fact that this disagreement between the parties on the issue of whether any discount should apply accounts for the most significant gap in the parties' positions; roughly $1.5 million (according to the lowest real estate appraisal) and roughly $2.4 million (according to the highest real estate appraisal). As would be expected, this unresolved legal issue has effectively prevented any meaningful discussion between the parties regarding settlement.

14. Plaintiffs, for their part, feel that both the First Circuit and this Court have, albeit implicitly, made it clear that no discount should apply to a valuation of Plaintiffs' former interest. Indeed, in introducing the analysis by which it ruled in favor of Plaintiffs, the First Circuit clearly stated that:

> The question now on appeal is whether, under Mass. Gen. Laws ch. 108A, § 42, each of the plaintiffs is entitled to receive the <u>full value of his or her share in the partnership as determined upon liquidation</u>, or rather must accept the much-reduced value offered by the remaining partners ….

<u>Tropeano v. Dorman</u>, 441 F.3d 69, 75 (1st Cir. 2006)(emphasis added). Plaintiffs' understanding in this regard appears to be mirrored in the Court's order, dated June 30, 2006, in which it

authorized "a ninety (90) day period in which discovery to determine the liquidation value of the partnership assets may be undertaken by the parties in conformity with the Local Rules and the Federal Rules of Civil Procedure". (Docket #45.) See also Johnson v. Kennedy, 350 Mass. 294, 298 (1966)(where minority partner dissolved at-will partnership in unseemly but lawful manner -- by absconding with partnership assets days before partners were scheduled to execute a 25-year written partnership agreement -- the Court ruled that "[w]hen, as here, the dissolution was not wrongful, the partners are entitled to an equal share of the firm's assets").

15. Defendants disagree, and have continued to press their claim that both minority and marketability discounts should apply by, among other things, serving an expert report regarding such discounts. In an effort to avoid the unnecessary cost of deposing this expert (who hails from Pennsylvania) and addressing his opinions at trial, Plaintiffs expect to file a motion in limine directed at this issue later in the week.

Application of Code of Massachusetts Regulations

16. Likely the most complicated legal issue requiring resolution in this matter is how various Massachusetts architectural barriers (accessibility) regulations, 521 CMR §§ 1.00, et seq., and the fire suppression regulations, 780 CMR § 904.7, are implicated in a valuation of the Partnership assets, if at all. Defendants have served an extensive expert report on these issues, and Plaintiffs have, in turn, served an expert rebuttal report.

17. However, a determination regarding whether and how these regulations apply is purely a matter of law, to be made by the Court without any regard for one expert or another's understanding of or experience with such regulations. Aponte Melendez v. Ortiz Otero, 964 F.2d 1225, 1227 n.4 (1st Cir. 1992)("the interpretation of an administrative memorandum, like an administrative regulation, presents a question of law for the court); Hernandez Flecha v. Quiros,

567 F.2d 1154, 1157 (1st Cir. 1977), cert. denied, 436 U.S. 945 (1978)(meaning of regulations is a question of law)[1].

18.     While the parties' expert reports provide a useful roadmap regarding what sections of the architectural barriers (accessibility) and fire suppression regulations might warrant the Court's attention, the opinions contained in those reports concerning interpretation or application of the regulations (whether and how they would apply to the Partnership property) are clearly inadmissible.  As a result, the parties cannot efficiently or effectively present factual evidence regarding the actual or expected costs of additions, alterations, or repairs (in order to determine whether such costs would have triggered regulatory compliance) before the Court first issues a number of legal rulings -- pursuant to a motion in limine or for partial summary judgment -- interpreting the architectural barriers (accessibility) and fire suppression regulations so as to determine which alleged costs should be included in the analysis.  Once made, these legal determinations alone could potentially resolve valuation disputes between the parties totaling more than $1 million.

Determination of Applicable Interest Rate

19.     G.L. c. 108A, § 42 provides that a withdrawing partner shall receive, in addition to the value of his interest at the date of dissolution "interest, or, at his option …, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership."  Section 42 is silent, however, as to what rate of interest applies should Plaintiffs

---

[1] See also Toubiana v. Priestly, 402 Mass. 84, 90 (1988)(opinion of expert witness not probative on issue of whether elevator ceiling violated Massachusetts regulations); Perry v. Medeiros, 369 Mass. 836, 842 (1976) (concluding that in a negligence case, the testimony of the building inspector interpreting the building code and opining that it had been violated was properly excluded); Davis v. Bredvic, 1998 Mass. Super. LEXIS 675, *11 (Mass. Super. Ct. 1998)("Neither engineers' common understanding about the application of the [Architectural Access Board] regulations nor Remmer's 'expert' opinion concerning the proper application of those regulations is relevant to this Court's legal analysis").

7

elect interest, and the parties are divided on the issue. Plaintiffs believe that a rate of twelve percent (12%) should apply, while the defendants argue in favor of a rate of six percent (6%).

20. The uncertainty surrounding this issue has prevented Plaintiffs from making an informed election between interest and profits[2] and has presented the parties with an additional barrier to any meaningful discussion of settlement. Recognizing the prohibitive effect of this uncertainty on the possibility of settlement, the defendants recently filed Defendants' Motion in Limine to Establish Interest Rate. (See Docket #72.) In their Motion in Limine, dated October 11, 2007, the defendants correctly note that a determination of the purely legal issue raised by that motion "would inform and might assist the parties in discussions aimed at non-judicial resolution of the case." Defendants' Motion in Limine, p. 2. The same holds true of the additional legal issues that will be raised in Plaintiffs' forthcoming motions.

21. Obviously, there is tremendous advantage to both the parties and the Court if these issues are resolved before trial instead of during. Indeed, the resolution of these issues might avoid the need for a trial altogether or, at the very least, significantly limit the scope of evidence the parties must present. As a result, the interest of the parties and judicial economy both weigh heavily in favor of extending discovery and continuing the trial to afford time for the parties to brief, and for the Court to decide, these issues of law.

**Scheduling Issues**

22. Even were it not so obviously beneficial to all parties involved, Plaintiffs would still be required to seek this extension of time due to the severe scheduling conflicts faced by their counsel.

---

[2] While the defendants' recently-filed Motion in Limine indicates that Plaintiffs have made their election, this is not the case.

23.     Plaintiffs' counsel is a solo practitioner who also represents certain defendants in the matter before this Court entitled <u>Encompass Insurance Company of Massachusetts v. Joseph Giampa, et al.</u>, Case No. 05-11693-RCL (the "Encompass Litigation"). Commenced in August of 2005, the first fifteen (15) months of the Encompass Litigation were consumed with Rule 9(b) motions to dismiss and successively amended complaints. As a result, no scheduling conference was held until January 11, 2007, and no schedule adopted until January 16, 2007.

24.     Fact discovery was originally scheduled to close in the Encompass Litigation on November 13, 2007, but was recently extended until January 31, 2008 based upon a request made by the undersigned to the Court citing scheduling conflicts with this case. Even so, the combined discovery commitments of the two cases present (and have presented for some time) a highly untenable situation.

25.     The Encompass Litigation is a factually and legally complex, labor intensive civil Rico and insurance fraud matter, the Second Amended Complaint in which is 153 pages and 804 paragraphs. The plaintiff in the Encompass Litigation has already conducted close to twenty depositions, and has noticed or communicated an intent to conduct between fifteen and twenty more between now and January 31, 2008, the majority of which the undersigned counsel will need to attend. Moreover, the defendants in the Encompass Litigation have yet to begin conducting their own depositions. If a trial of this matter goes forward as scheduled on December 17, 2007, the undersigned would be required to take, defend, or attend, between now and that date, no less than twenty depositions in addition to all of the other pre-trial work that would be required to appropriately represent Plaintiffs' interests.

26.     Plaintiffs' counsel has made every effort to meet the commitments of this case so as to be ready for trial on December 17, 2007. Such efforts have included a prolonged period of

9

working extended days and weekends, turning away new work[3], and actively attempting to hire an associate lawyer.  In addition, counsel for the defendants has been extremely cooperative and courteous in helping Plaintiffs' counsel navigate his scheduling conflicts.  Unfortunately, these combined efforts have mostly allowed a more orderly but no more tenable schedule of filing, preparation, and deposition commitments.

27.     As such, the undersigned would be remiss in failing to report to the Court that this confluence of events has rendered the current trial date impractical and entirely unfair to Plaintiffs.  No party would be unduly burdened by an extension of discovery or the continuance of trial.  Indeed, all parties and the Court stand to benefit much.  Although the defendants have expressed their intent to oppose this motion, they have been unable to cite any reason other than their own desire to borrow, as part of a refinancing of certain Partnership debt scheduled for early 2008, sufficient additional funds to pay the judgment in this case.  The convenience of the defendants in not having to consummate two bank loans simply cannot be controlling.[4]

28.     Plaintiffs, after withdrawing from the partnership on October 1, 2003, have waited four years for a resolution of this matter.  They have done so without the benefit of receiving any amounts to compensate them for their former partnership interests, and without the benefit of receiving any partnership distributions, all the while having to fund this litigation.  If anyone has an interest in this case resolving sooner rather than later, it is Plaintiffs, who respectfully request that the Court grant this motion.

---

[3] Despite this turning away of new work, the undersigned's caseload does include certain other long-standing litigation matters in addition to this case and the Encompass Litigation.

[4] The defendants' apparent plan to pay the judgment in this matter with a bank loan secured by the Partnership property presumes the Court's application of minority and marketability discounts.  If such discounts are not applied, Plaintiffs' former interest in even the defendants' argued valuation of the Partnership property will exceed the practical limitations of possible financing.

**CONCLUSION**

For all of the reasons described above, Plaintiffs respectfully request that this Honorable Court extend discovery in this matter until and including February 7, 2008 and continue the trial -- currently scheduled to commence on December 17, 2007-- until some date in March 2008 convenient for the Court.

Respectfully submitted,

PHILIP L. TROPEANO, PETER TROPEANO and CAROLYN PATTEN

By their attorney,

 /s/   Thomas M. Ciampa

Thomas M. Ciampa (BBO# 566898)
Ciampa & Associates
20 Park Plaza, Suite 804
Boston, MA 02108
(617) 742-5955

Dated:  October 15, 2007

**Certificate of Service**

I, Thomas M. Ciampa, hereby certify that on this 15th day of October, 2007, this document was filed through the CM/ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

___/s/ Thomas M. Ciampa____