UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PHILIP L. TROPEANO,<br>PETER TROPEANO, and<br>CAROLYN PATTON,<br><br>                Plaintiffs,<br><br>v.<br><br>CHARLENE DORMAN,<br>BIANCA DORMAN,<br>LYDIA DORMAN,<br>TODD DORMAN,<br>T&N REALTY TRUST, and<br>CAPTAIN PARKER ARMS PARTNERSHIP,<br><br>                Defendants. | CIVIL ACTION<br>NO. 03-CV-12231-RGS |

**AFFIDAVIT OF ATTORNEY CHRISTINE O'CONNOR**

I, Christine O'Connor, hereby depose and state as follows:

1.  I am an attorney at Edwards Angell Palmer & Dodge LLP and serve as co-counsel to the Defendants in this action. I make this Affidavit in opposition to Plaintiffs' Motion to Extend Discovery for 90 Days and Continue Trial. I have personal knowledge of the matters set forth herein and would be competent to testify thereto.

2.  By letter dated August 21, 2003, Plaintiffs notified Defendants of their intent to withdraw from the Captain Parker Arms Partnership (the "Partnership") as of October 1, 2003. A true copy of such letter is Exhibit C to the Amended Complaint herein. For the Court's convenience, another copy of such letter is attached hereto as <u>Exhibit A</u>. Enclosed with the

August 21, 2003 letter was an "Appraisal by Eric Reenstierna Associates" purporting to value the real estate on which the Partnership operates its business ("CPA").

3.      By letter dated July 19, 2006, Defendants brought to Plaintiffs' attention that (1) their appraiser, Reenstierna, admittedly failed to consider the costs of complying with accessibility statutes in valuing CPA using a condominium conversion approach, and (2) the applicable interest rate to be applied to the final value for Plaintiffs' partnership interests is controlled by Mass. Gen. Laws ch. 107, § 3.  Attached as <u>Exhibit B</u> is a true copy of that letter, redacted to provide pertinent parts and remove non-pertinent settlement discussions.

4.      At the Court's request, on December 22, 2006, the parties submitted to the Court a proposed Scheduling Order.  In their proposed Scheduling Order, the parties jointly suggested that the trial be scheduled for any date convenient for the Court after August 27, 2007.  The Court's Scheduling Order, issued on May 10, 2007, scheduled the trial for December 17, 2007.

5.      As Plaintiffs contemplated when they gave notice of their withdrawal from the Partnership (<u>see</u> Ex. A at 2), the individual Defendants have continued to run the Partnership business.  The apartment complex run by the Partnership is subject to two mortgages loans, taken out before Plaintiffs withdrew as partners, which will mature during January 2008 and will need to be refinanced.  As of the end of September 2007, the outstanding balances owed on those mortgages totaled in excess of $2.5 million.  In addition, the individual Defendants have indicated their intention to raise the money needed to pay Plaintiffs for their former partnership interests by refinancing such real estate.

6.      The Standstill Order approved by this Court on December 20, 2006, was recorded with the Massachusetts Land Registration Office of the Middlesex South Registry of Deeds on December 22, 2006.  A true copy of the recorded Standstill Order is attached hereto as <u>Exhibit C</u>.

7.      In reliance on the December 17, 2007 trial date and in recognition of the Standstill Order, Defendants are negotiating with the current mortgage lender for a six-month extension of the existing mortgages. Defendants have reasoned that if the trial is conducted in December 2007, there is a strong likelihood that within the six-month mortgage extension period they will learn from the Court its conclusions as to the amount due Plaintiffs. Defendants can then refinance the Captain Parker Arms property in a single transaction, including in the refinancing the additional amount due Plaintiffs. Defendants would thereby avoid the unnecessary financing expenses that would be incurred if they had to refinance the property once in January, when the existing mortgages come due, and then refinance the property a second time only a few months later when the Court's decision as to the amount due Plaintiffs is issued.

8.      On or around June 22, 2007, Thomas Ciampa, counsel for the Plaintiffs, and I discussed a modification to the Court's May 10, 2007 Scheduling Order to allow the parties additional time to complete and exchange their expert witness reports. As part of that discussion, Attorney Ciampa and I agreed that we would seek a modification of the Scheduling Order that did not impact the December 17, 2007 trial date. Accordingly, I drafted the Joint Motion to Modify the Scheduling Order, and the Proposed Revised Scheduling Order, which were submitted to the Court on June 26, 2007 (docket entry #69) and endorsed by the Court on June 28, 2007 (docket entry #70). The Revised Scheduling Order did not change the December 17, 2007 trial date.

9.      On or about July 27, 2007, Attorney Ciampa and I informally agreed to extend by one week the date for the mutual exchange of the parties' initial expert reports. During our telephone conference about this informal extension, I sought, and Attorney Ciampa provided,

assurance that Plaintiffs would not seek a delay of the trial because the parties mutually agreed to adjust the exchange date for expert reports.

10. On or about September 7, 2007, I conferred with Attorney Ciampa about potential conflict issues within the firm employing his then recently disclosed rebuttal expert. During this conference, Attorney Ciampa informed me that he did not plan to retain an expert to rebut Defendants' business valuation expert, who opined that minority and marketability discounts are applicable in determining the value of Plaintiffs' former partnership interests, unless and until the Court determined that such discounts would be applied. The issue of minority and marketability discounts had been raised by Defendants' predecessor counsel in a letter dated October 2, 2003, before this action was commenced (see Exhibit D hereto, which has been redacted to remove settlement discussions). In our September 7, 2007 telephone conversation, Mr. Ciampa indicated that he planned to file a motion seeking a ruling on this issue. I told Mr. Ciampa that Defendants continue to believe that the discounts are applicable and would oppose his motion. Mr. Ciampa also indicated that if the Court ruled against Plaintiffs, he would seek leave to then search for and retain a rebuttal expert. I advised Mr. Ciampa that Defendants would oppose any motion that would delay the December 17, 2007 trial. Plaintiffs have yet to file any motion relating to minority or marketability discounts.

11. On September 11, 2007, Attorney Ciampa requested additional time to complete Plaintiffs' rebuttal expert reports. Defendants agreed, again on the condition that the extension would not effect the December 17, 2007 trial date. Attached as Exhibit E is a true copy of the email correspondence between Attorney Ciampa and myself concerning the extension of the deadline for exchange of rebuttal expert reports, the condition that Plaintiffs confirm that they

were "prepared to stay on track with respect to the trial date", and a discussion of the prejudicial effect of further delay on Defendants.

12. On October 10, 2007, Attorney Ciampa and I conferred several times about the subject matter of Plaintiffs' Motion to Extend Discovery for 90 Days and Continue Trial. In an effort to ease the demands upon Mr. Ciampa's schedule, I agreed to allow discovery in this case to continue through the end of November, even though Defendants also need to use that time to prepare for the December 17, 2007 trial. During one of our telephone conferences on October 10, Attorney Ciampa advised me that the Court Clerk had indicated that if the trial in this case is rescheduled, the earliest the trial would be held would be during March 2008.

13. Defendants have produced in excess of 3500 pages in response to Plaintiffs' second request for production of documents, which propounded an additional 60 requests, nearly all of which concerned the condition of the property at or around the date of Partnership dissolution (October 1, 2003). All of the documents concerning the condition of the property that were relied upon by Defendants' experts were produced in advance of the exchange of expert reports. Moreover, on at least two occasions, May 23, 2007 and August 28, 2007, Plaintiffs' counsel, accompanied by Plaintiff Peter Tropeano and one of Plaintiffs' expert appraisers, conducted an on-site inspection of CPA with the stated purpose, at least in part, of examining the property defects and deferred maintenance items raised by Defendants.

14. For the first time during my firm's involvement as defense counsel, Plaintiffs served notices of deposition on October 5, 2007, just seventy-three (73) days before trial. On October 5, 2007, Plaintiffs served subpoenas duces tecum and notices of deposition for The Dolben Company, the CPA property management company, and three of its employees, Pamela Diotalevi, Nicholas Schmalz and Greg Williams. Although there are some as yet unresolved

disputes about the documents requested, the parties have been working cooperatively to schedule these depositions and to stipulate to authenticity of documents, thus removing the need to go forward with the deposition of The Dolben Company.

15. Also on October 5, 2007, Plaintiffs served notices of deposition for two Defendants, Charlene and Todd Dorman. Plaintiffs had not previously attempted to depose any of the Defendants.

16. On October 9, 2007, Plaintiffs served subpoenas duces tecum and notices of deposition for two of the three experts who submitted reports on behalf of Defendants on August 10, 2007 (those subpoenas and notices of deposition are attached hereto as Exhibits F and G). Although there are unresolved disputes about the documents which Plaintiffs seek (e.g., they specifically seek protected work product; see Schedule A, Instruction 12), the parties have been working cooperatively to schedule these expert depositions.

17. On October 10, 2007, Plaintiffs served their Second Set of Interrogatories to Defendants (Exhibit H hereto). This Second Set of Interrogatories seeks responses from each Defendant to seven (7) additional interrogatories, two of which include five (5) subparts each. Plaintiffs' First Set of Interrogatories sought responses from each Defendant to eight (8) interrogatories, one of which had fifteen (15) subparts. Defendants answered all of Plaintiffs' First Set of Interrogatories, and thus Plaintiffs' new interrogatories exceed the number permitted under Fed. R. Civ. P. 33(a) (number of interrogatories, including all discrete subparts, limited to 25); Local Rule 26.1(C) (number of interrogatories for each side limited to 25).

18. In the same timeframe, Defendants have noticed only three depositions: the depositions of two third-party companies that were involved in Plaintiff Peter Tropeano's 2004 attempt to solicit an offer to purchase CPA which was, in turn, relied upon by Plaintiffs' rebuttal

expert; and the deposition of Peter Tropeano, who was identified by Plaintiffs on October 1, 2007 as a witness who may offer opinion testimony. Because Plaintiffs' original appraisal expert and their rebuttal appraisal expert disagree with one another, Defendants also served two sets of interrogatories, comprising a total of only five (5) questions, seeking clarification as to what expert testimony Plaintiffs anticipate presenting at trial. Defendants have not sought the deposition of any of Plaintiffs' experts.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of October, 2007.

_____
Christine M. O'Connor

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system pursuant to Local Rule 5.4 will be sent electronically to all other parties.

_____/s/ Christine M. O'Connor_____