UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILIP L. TROPEANO, PETER TROPEANO, )
and CAROLYN PATTON, )
)
Plaintiffs, )
v. )
) DOCKET NO.
CHARLENE DORMAN, BIANCA DORMAN, ) 03-CV-12231-RGS
LYDIA DORMAN, TODD DORMAN, )
T&N REALTY TRUST and CAPTAIN )
PARKER ARMS PARTNERSHIP, )
)
Defendants. )

## **OPPOSITION TO DEFENDANTS' MOTION IN LIMINE**

Plaintiffs Philip L. Tropeano, Peter Tropeano, and Carolyn Patten (collectively, Plaintiffs") hereby oppose the defendants' Motion in Limine to Establish Interest Rate insofar as it seeks a ruling that Plaintiffs are entitled to prejudgment interest only at the rate of 6% per annum on the value of their respective former partnership interests. Plaintiffs contend, and the law of the Commonwealth of Massachusetts clearly requires, that the applicable rate of prejudgment interest is 12% per annum pursuant to either M.G.L. c. 231, § 6C or § 6H.

### **Background**

Plaintiffs, former partners in the Captain Parker Arms Partnership ("CPA"), lawfully withdrew from CPA effective October 1, 2003. In response to Plaintiffs' lawful withdrawal, the defendants took the position that Plaintiffs were not allowed to withdraw, and expressly refused to wind up CPA or to determine and pay to Plaintiffs the value of Plaintiffs' respective partnership interests. Plaintiffs filed this suit on November 17,

2003, and, on April 19, 2006, the Court entered its judgment that the defendants had wrongfully denied Plaintiffs their respective rights as lawfully withdrawing partners.

Remaining for determination in this matter is the value of Plaintiffs' respective former interests in CPA (as of October 1, 2003) and the rate of interest that has and will accrue on such amounts until paid.

## Argument

A. The Defendants Have a Contractual Obligation Under the Partnership Agreement to Pay Plaintiffs In Accordance With the Formula Described in M.G.L. 108A, § 42.

The debate during the liability portion of this matter focused so intently upon how to interpret the language of M.G.L. c. 108A, § 42 in the context of the partnership agreement that the defendants appear to have forgotten that the language of Section 42 is actually incorporated by reference into the partnership agreement. Indeed, Paragraph 7 of the original partnership agreement specifically states that "All applicable provisions and sections of General Laws Chapter 108A of the Commonwealth of Massachusetts are herein incorporated by reference and made a part hereof."[1] Nothing in the subsequent modification of the original partnership agreement altered the effect of this incorporation by reference. In fact, the closing paragraph of the modification clearly states that "Except as herein modified, the partnership is hereby affirmed, dated this 11 day of March, 1987."[2]

As a result, the integrated partnership agreement must be read to expressly provide that Plaintiffs were each entitled, upon their withdrawal, to "receive … an amount equal to the value of [their respective] interest in the dissolved partnership."

---

[1] A true and accurate copy of the original partnership agreement is attached hereto as Exhibit A.
[2] A true and accurate copy of the modification is attached hereto as Exhibit B.

2

See M.G.L. c. 108A, § 42.  This entitlement of Plaintiffs is a contractual obligation of the defendants, an obligation that the defendants clearly breached when they not only failed to make payment, but denied Plaintiffs' entitlement altogether, requiring Plaintiffs to seek a declaration of their rights by the Court.

In any event, the case at bar is clearly a contractual dispute in that its primary purpose was to interpret the partnership agreement to determine whether or not the partners had "otherwise agreed" on the method for valuing the interest of a partner withdrawing from CPA.  The fact that Plaintiffs chose to style their Amended Complaint as one seeking declaratory judgment does not make this matter any less of a contract dispute.  See Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 775 (1st Cir. 1994)("As explained in detail above, the declaratory device is a remedy by which the parties may seek a declaration as to their substantive rights.  A declaratory judgment is not a theory of recovery.  It is clear that, in this case, the underlying substantive theory is contractual").

The Court having determined that Plaintiffs did lawfully withdraw and, as a natural consequence, that the defendants did breach their obligation under the partnership agreement by refusing to acknowledge this withdrawal and pay Plaintiffs the value of their respective interests, the interest rate that must apply to Plaintiffs' recovery is the rate provided for contractual disputes under M.G.L. c. 231, § 6C.[3]

---

[3] See Perkins School for the Blind v. Rate Setting Commission, 383 Mass. 825, 835 (1981)("Implicitly, [M.G.L. c. 231, § 6C] is designed to compensate a damaged party for the loss of use or unlawful detention of money, and not to establish a legal rate for the use of money.  Being a 'provision of law for a different rate' (within the meaning of M.G.L. c. 107, § 3), M.G.L. c. 231, § 6C supplants M.G.L. c. 107, § 3, as it was previously applied for this purpose"); Commercial Union Ins. Co. v. Walbrook Ins. Co., 1994 U.S. Dist. LEXIS 4367, *2 (D. Mass. 1994)("Although Weaver urges application of a six percent rate pursuant to Mass. Gen. Laws c. 107, § 3, this section is trumped by Mass. Gen. Laws c. 231, § 6C").

B.  The Massachusetts Uniform Partnership Act Requires the Application of M.G.L. c. 231, § 6C or, in the alternative, M.G.L. c. 231, § 6H.

Even if the language of Section 42 had not been expressly incorporated by reference into the partnership agreement, the Massachusetts Uniform Partnership Act ("MUPA") nonetheless requires the application of M.G.L. c. 231, § 6C to payments required under M.G.L. c. 108A, § 42. Generally, the MUPA is intended to provide supplemental contract terms where relevant matters are not otherwise addressed by the partnership agreement. See Meehan v. Shaughnessy, 404 Mass. 419, 431 n.7 (1989)("Chapter 108A is intended to be a type of 'form contract'"); Currier v. Studley, 159 Mass. 17, 20 (1893)("It is clear that, if this had been a suit to obtain the proceeds of this seat through an account and a settlement of the partnership affairs, it would have been barred at the expiration of six years from the termination of the partnership"); DiCarlo v. Lattuca, 60 Mass. App. Ct. 344, 346 (Mass. App. Ct. 2004)("Because partnerships can only arise through an express or implied contract, the six-year statute of limitations consistently has been applied to actions for partnership accounting"). Accordingly, Massachusetts courts generally consider an action pursuant to the MUPA for an accounting and a settlement of partnership affairs to be an action in contract.

That the obligation specifically arising under Section 42 is contractual is firmly reinforced by Section 42's express terms. According to Section 42, a retiring partner "may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest." As of the date of dissolution, October 1, 2003, Plaintiffs became ordinary creditors of the defendants in the amount of their respective partnership interests. As part of their withdrawal, Plaintiffs made demand for the immediate payment

4

of this debt.[4] When the defendants denied the existence of the debt, this action ensued and the parties spent approximately two and one-half years litigating whether the defendants owed Plaintiffs any debt at all. Under the circumstances, it is difficult to conceive how this action could be considered anything but a contract claim to recover an unpaid and unacknowledged debt. See Tropeano v. Dorman, 441 F.3d 69 (1st Cir. 2006)(Ruling that the partnership was "at will" and that the partners had not, in the integrated partnership agreement, "otherwise agreed" on the method of valuing a withdrawing partner's interest).

However, even if the Court determines that Plaintiffs' theory of recovery is not contractual, such determination will have no effect on the rate of interest that must apply. Under these circumstances, prejudgment interest would necessarily be determined in accordance with M.G.L. c. 231, § 6H, which provides that:

> In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B[5] to be determined from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law.

Having been forced to commence a civil action to compel the defendants' recognition and payment of their debt, clearly what Plaintiffs seek, and what the Court will provide, is an award of "damages." See Turcotte v. De Witt, 333 Mass. 389, 392 (1955)("'Damages' is the word which expresses in dollars and cents the injury sustained by a plaintiff. It includes both the original debt or damage and whatever interest ought to

---

[4] A true and accurate copy of Plaintiffs' withdrawal letter is attached hereto as Exhibit C.
[5] Because the applicable rate of interest under M.G.L. c. 231, § 6B is 12% per annum, it is also the applicable rate under § 6H.

5

be added to make a just verdict")(emphasis added). As a result, if the Court deems Plaintiffs' claims to be other than contractual, Section 6H must apply.

Consequently, regardless of whether Plaintiffs' suit to compel the defendants to acknowledge and pay their debt sounds in contract or some other theory of liability, what Plaintiffs seek is damages (the defendants' original debt plus interest), which must accrue prejudgment interest at a rate of 12% per annum whether pursuant to M.G.L. c. 231, § 6C or § 6H.

### C. The Cases Cited By Defendants are Entirely Distinguishable.

The defendants contend that Plaintiffs are relegated in their award of prejudgment interest to the rate described in M.G.L. c. 107, § 3. In relevant part, Section 3 provides that "If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of six dollars on each hundred for a year …." While defendants seek to create in their memorandum the impression that Section 3 is the default rate for all statutory entitlements to interest, this is clearly not the case.

Indeed, in advancing their argument that Section 3 should apply, the defendants cite only two cases. Both MacCuish v. Volkswagenwerk, A.G., 22 Mass. App. Ct. 380 (1986) and Sharpe v. Springfield Bus Terminal Corp., 406 Mass. 62 (1989) were wrongful death cases. M.G.L. c. 229, § 11 governs the assessment of prejudgment interest in wrongful death cases. Because this wrongful death statute did not, at the time, specify a rate of interest, the Court applied the rate under Chapter 107, § 3. Interestingly, in 1988, the legislature amended Section 11 to specifically provide for a rate of prejudgment interest that is "the same rate of interest per annum as provided in section

6

six B of chapter two hundred and thirty one." See M.G.L. ch. 107, § 3 (amended by St. 1988, c. 223, § 1).

In the case at bar, Plaintiffs seek to recover the principal due them since October 1, 2003, and the appropriate interest that has accrued on that amount. According to the Supreme Judicial Court, such a circumstance requires application of M.G.L. c. 231, § 6C as opposed to M.G.L. ch. 107, § 3. Specifically, in Perkins School for the Blind v. Rate Setting Commission, the SJC stated that:

> If interest is due on a contractual obligation, but the contract fails to provide a rate, G.L. c. 107, § 3, establishes the proper rate. In an action to recover principal and interest under the contract, the amount of interest due is folded into the judgment. Interest at the G.L. c. 231, § 6C, rate is then applied to the entire judgment – i.e., to both principal and interest – as compensation for wrongful detention and loss of use of money. That is, the judgment creditor has been deprived of the use of both principal and interest due under the contract.

383 Mass. 825, 836 (1981)(emphasis).

The ruling in Perkins provides additional guidance in that the obligation at issue was not a conventional written or oral contract between the parties, but instead a "contract which arose under the statutory scheme." The defendants' obligation to Plaintiffs would, at the very least, appear to be just such a contract.

Even in those instances where Courts have found a debt absent a contract, they have rejected the use of M.G.L. c. 107, § 3 in favor of M.G.L. c. 231, § 6H. See Joseph v. J.P. Yachts, LLC, 436 F. Supp 2d 254, 267, 274 (D. Mass. 2006)(because admiralty salvage award is a creature of common law and not a contractual obligation, Court applied prejudgment interest rate set by M.G.L. c. 231, § 6H); Gaulin v. Commissioner of Public Welfare, 23 Mass. App. Ct. 744, 747 n.6 (Mass. App. Ct. 1987)(acknowledging as

7

appropriate application of prejudgment interest rate specified in M.G.L. c. 231, § 6H on award of attorneys' fees under 42 U.S.C. § 1988).

      D.      Section 42 of the MUPA Can Not Be Reasonably Interpreted as Providing for Interest at a Rate of Only Six Percent.

"Interest is awarded by law so that a person wrongfully deprived of the use of money should be made whole for his loss." Perkins, 383 Mass. at 835. This purpose would clearly be frustrated if the language of Section 42 was interpreted as providing for interest at only 6%.

Plaintiffs lawfully withdrew from CPA effective October 1, 2003. It is now more than four years later, and Plaintiffs have not received from the defendants any payment for their former interest in the Partnership. The majority of this undue delay was caused solely by the defendants' wrongful conduct in refusing to recognize Plaintiffs' respective rights to withdraw, which precipitated this action and consumed it for approximately two and one-half years. During that time, and the approximately eighteen months since judgment on liability entered in favor of Plaintiffs, the defendants have enjoyed an interest free loan in an amount (though disputed between the parties) that they could never have secured from a bank at 6% or at any comparable rate, if at all.

A finding that the language of Section 42 requires nothing more than the assessment of 6% interest until whenever the continuing partners ultimately decide to make payment would encourage unreasonable delays in payment[6] and force partners in at will partnerships to significantly favor termination over withdrawal so as to protect their rights to timely receive the value of their interest. This would no doubt result in far more

---

[6] See Perkins, 383 Mass. at 836 ("Thus, interest may be allowed against the Commonwealth for any 'detention of money beyond the reasonable time which the statute requiring payment to Perkins fairly should be interpreted as contemplating'").

8

partnership terminations, even if the most efficient use of the partnership assets was by a continuation of the partnership business.  Plainly, this could not have been the intent of the thoughtful minds behind the Uniform Partnership Act.

### Conclusion

For all of the reasons set forth above, the Court should deny the defendants' Motion in Limine insofar as it seeks a ruling that Plaintiffs are entitled to prejudgment interest only at the rate of 6% per annum on the value of their former partnership interests, and instead rule that Plaintiffs are entitled to prejudgment interest at the rate of 12% per annum as provided by either M.G.L. c. 231, § 6C or § 6H.

Respectfully submitted,

PHILIP L. TROPEANO, PETER TROPEANO and CAROLYN PATTON

By their attorney,

/s/ Thomas M. Ciampa

Thomas M. Ciampa (BBO#566898)
Ciampa & Associates
45 Bromfield Street, Suite 200
Boston, MA 02108
(617) 742-5955

Dated: November 5, 2007

### Certificate of Service

I, Thomas M. Ciampa, hereby certify that on this 5th day of November, 2007, this document was filed through the CM/ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

___/s/ Thomas M. Ciampa____