## MODIFICATION

WHEREAS, Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano, Joseph C. Tropeano (now deceased), and Philip Tropeano entered into a Partnership Agreement dated January 8, 1964, a copy of which is hereto attached; and

WHEREAS, Joseph C. Tropeano is now deceased.

NOW, THEREFORE, this Modification and affirmation of the Partnership by the surviving partners.

Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano and Philip Tropeano agree:

Definitions -

    Partner:  Shall be the named partner and if he assigns or sells to his wife, children or grandchildren, the said successors as their interest may appear.

    Trustee:  The Trustees of the T & N Realty Trust, title holder of the partnership assets.

1. Co-Partners.

That the partnership agreement dated January 8, 1964, was not dissolved or terminated by the surviving partners when Joseph C. Tropeano died, has been and is in full force with exception of Joseph's interest.

2. Rights of Deceased Former Partner.

The 15% interest of the late Joseph C. Tropeano is to be paid or distributed as provided in his will allowed for probate.

3. Death of an Existing Partner.

The death of an existing partner shall not terminate the partnership and his interest will be held by the persons or entities set forth on the deceased partner's schedule attached and made a part hereof which bears his signature and they shall have all the rights of the deceased partner. Said person or entities shall be to those set forth in 5 hereunder.

Upon the death of a partner, the partners herein agree and so instruct the Trustees to execute whatever documents may be necessary to permit said representative to borrow money to pay estate taxes.

If there is sufficient cash held by the Trustees, the partners agree that the Trustees may loan monies to the representative of the deceased partner who have or will file Federal and State Estate Tax forms bearing interest at the then prime interest rate of Shawmut Boston plus 1%. Said loan shall be paid back to the Trust or deducted from the distributive share of said deceased partner.

4. Termination.

The partnership can be terminated by a vote of not less than 60% interest of 100% and upon such vote the partners shall so notify the Trustees to liquidate the assets and distribute the net principal and accumulated income as provided by number 8 hereunder.

5. Partner's Rights to Assign or Sell to Certain Individuals.

Any partner shall have the right to assign or to sell any portion of his interest to his wife or his children or grandchildren, without the consent of the other partners, who may take title in their own name or a separate entity in which they will be the sole beneficiary.

6. Partners Right to Assign or Sell to Others.

Prior to any assignment or sale of any partner's interest or those having his interest to others than the aforesaid, the assigning or selling partner shall offer the same in writing with a certified copy of the terms offered to him by the proposed assignee or purchaser. The partners shall have thirty (30) business days to accept or reject the offer. If they do not accept the offer, the assignment or sale to the third party shall only be made with the consent of the other partners and those claiming through them which consent will not be unreasonably withheld.

C -2-

7. Voting Minors Interest.

If any holder of an interest in the partnership is a minor, his interest during minority shall be voted by his father and if no father, by his mother and if no mother, by his legal guardian.

8. Distribution on Termination.

In the event of the dissolution and termination of the partnership, the Trustees shall be instructed to proceed to the liquidation of the partnership and the proceeds of the liquidation shall be applied and distributed in the following order of priority:

(a) Debts. To the payment of the debts and liabilities of the partnership (other than any loans or advances that may have been made by the partners to the partnership) and the expenses of liquidation.

(b) Reserves. To the setting up of any reserves which the partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the partnership arising out of or in connection with the operation and liquidation of the partnership. Any reserves shall be held by the Trustees as "Escrowee", to be held by them for the purpose of disbursing the reserves in payment of any of the contingencies, and, at the expiration of the period the partners shall deem advisable and have so instructed the Trustees to disburse the balance thereafter remaining to the partners.

(c) Partner loans. To the repayment of any loans or advances that may have been made by any of the partners to the partnership, but if the amount available for such repayment shall be insufficient, then pro rata on account thereof.

C  -3-

(d) Balance. Any balance remaining shall be distributed among all partners as follows according to their percentage holding:

(aa) Cash. In the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership.

(bb) The percentage of distribution as to each partner is as follows:

| | |
|---|---|
| Alfred P. Tropeano | 40% |
| Wilbur C. Nylander | 15% |
| Louis Tropeano | 15% |
| Philip Tropeano | 15% |

In addition, distribution to the holders of Joseph C. Tropeano interest: 15%

9. Modification of Partners Schedule.

Any partner or successor as set forth in his schedule, may modify or amend his "Schedule" referred to in 3 above and hereto attached, by delivering a signed copy to the other partners, but said modification shall be limited to the category of individuals or entitles referred to in 5 above.

Except as herein modified, the said partnership is hereby affirmed, dated this ___11___ day of March, 1987.

_____
Alfred P. Tropeano

_____
Wilbur C. Nylander

_____
Louis Tropeano

_____
Philip Tropeano

C-4-