# EXHIBIT A

NO. 05-1435

## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

PHILIP L. TROPEANO, PETER TROPEANO
and CAROLYN PATTON,

Plaintiffs-Appellants,

v.

CHARLENE DORMAN, BIANCA DORMAN,
LYDIA DORMAN, TODD DORMAN, T&N REALTY TRUST and
CAPTAIN PARKER ARMS PARTNERSHIP,

Defendants-Appellees.

ON APPEAL FROM AN ORDER ENTERED BY THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

BRIEF FOR THE PLAINTIFFS-APPELLANTS
PHILIP L. TROPEANO, PETER TROPEANO and CAROLYN PATTON

Thomas M. Ciampa
CIAMPA & ASSOCIATES
45 Bromfield Street, Suite 200
Boston, MA 02108
(617) 742-5955

Attorney for Plaintiffs-Appellants
PHILIP L. TROPEANO, PETER
TROPEANO and CAROLYN
PATTON

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION ...................................................................................................1

STATEMENT OF THE ISSUES ON APPEAL .........................................................2

STATEMENT OF THE CASE...................................................................................3

STATEMENT OF FACTS .........................................................................................5

SUMMARY OF THE ARGUMENT .........................................................................9

SCOPE OF REVIEW.............................................................................................. 10

ARGUMENT ........................................................................................................... 11

1.    The District Court erred in not granting Plaintiffs' motion for partial
    summary judgment (and in granting Defendants' motion to dismiss) where
    the Partnership was at will and Plaintiffs lawfully terminated the
    Partnership...............................................................................................11

A.    The modified Partnership Agreement must be read to give effect to
    both the thirty-year term and Paragraph 4 ...................................................... 12

B.    Even If Paragraph 4 had replaced the thirty-year term, the Partnership
    Agreement would still be an at will partnership............................................. 16

2.    The District Court erred in concluding as a matter of law that the
    Modification was intended to provide the sole and exclusive means by
    which a partner could withdraw or retire from the Partnership.. .................. 19

3.    Defendants were not entitled to dismissal of Plaintiffs' amended
    complaint because the District Court clearly found there to be an
    ambiguity in the intent of the partners who executed the Modification. ...... 25

CONCLUSION........................................................................................................ 28

CERTIFICATE OF SERVICE ................................................................................ 29

ADDENDUM ......................................................................................................... 30

## TABLE OF AUTHORITIES

### CASES

Bercovitch v. Baldwin School, Inc., 133 F.3d 141 (1st Cir. 1998)...............…...10

Blanchard v. Peerless Ins. Co., 958 F.2d 483 (1st Cir. 1992)…...................25, 27

Bosse v. Litton Unit Handling Sys., Div. of Litton Sys., Inc., 646
F.2d 689 (1st Cir. 1981)………………………………………………………….14

Boston Five Cents Sav. Bank v. Department of Housing & Urban Dev., 768
F.2d 5 (1st Cir. 1985)……………………………………………………………25-26

Canter's Pharmacy v. Westbrook Pharmacy and Surgical Supply,
396 Pa. Super. 505, 578 A.2d 1326 (1990)…………………………………...18

Chandler Medical Bldg. Partners v. Chandler Dental Group, 175
Ariz. 273, 855 P.2d 787 (Ariz. Ct. App. 1993)………………………….…...13, 18

Chapman v. Dunnegan, 665 S.W.2d 643 (Mo. App. 1984)………………...24-25

Cohen v. Steve's Franchise Co., 927 F.2d 26 (1st Cir. 1991)…..……………...14

Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076 (1st Cir. 1989) ………......13

Fletcher v. Reed, 131 Mass. 312 (1881)………………………………………17

Georg v. Tzavos, 4 Mass. L. Rep. 391 (Mass. Super. Ct.,
September 20, 1995)………………………………………………………………17

Hallahan v Haltom Corp. 7 Mass. App. Ct. 68, 385 N.E.2d 1033
(1979)………………………………………………………………………………15

ITT Corp. v. LTX Corp., 929 F.2d 1258 (1st Cir. 1991)…………………….........13

ii

Jimenez v. Peninsular & Oriental Steam Navigation Co.,
    974 F.2d 221 (1st Cir. 1992)……………………………………………………..14

Johnson v. Kennedy, 350 Mass. 294, 214 N.E.2d 276, 278 (1966)……….15, 17

Jordan v. Bowman Apple Products Co., Inc., 728 F. Supp. 409
    (W.D. Va. 1990)……………………………………………………………………18

Meehan v. Shaughnessy, 404 Mass. 419, 535 N.E.2d 1255 (1989)……….15, 17

Miami Subs Corp. v. Murray Family Trust, 142 N.H. 501,
    703 A.2d 1366 (1997)……..………………………………………………….18

Scolastic, Inc. v. Harris, 259 F.3d 73 (2d Cir. 2001)…..………………….....14, 18

Steele v. Estabrook, 232 Mass. 432, 122 N.E. 562 (1919)………………...15, 17

Warnick v. Warnick, 76 P.3d 316 (Wyo. 2003)…………………………………23

Wiggins v. Brand, 202 Mass. 141, 88 N.E. 840 (1909)……………….............17

Zucker v. Rubin, 218 Cal. App. 3d 1198 (1990)……………………………….24

## STATUTES

Mass. Gen. Laws c. 108A, § 23(1) ......................................................................15

Mass. Gen. Laws c. 108A, § 42..........................................................................19

28 U.S.C. § 1332 ...................................................................................................1

28 U.S.C. §1291......................................................................................................1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Plaintiffs, all partners of Captain Parker Arms Partnership (the "Partnership"), filed this action with the District Court seeking, inter alia, a declaratory judgment of their rights to terminate the Partnership, a declaratory judgment of their rights to retire from the Partnership pursuant to G.L. c. 108A, § 42, and a partnership accounting. The District Court had subject matter jurisdiction of this matter pursuant to 28 U.S.C §1332, which governs diversity jurisdiction. The citizenship of the parties is completely diverse and there is more than seventy-five thousand dollars in controversy. All of the individual defendants are partners of the defendant Partnership, which is a Massachusetts partnership whose only business is to own and operate a 96 unit residential complex in Lexington, Massachusetts. All of the individual defendants are also trustees of defendant T&N Realty Trust (the "Trust"), a Massachusetts nominee trust whose only asset is the 96 unit residential complex operated by the Partnership.

On February 24, 2005, the District Court issued a final order dismissing Plaintiffs action. Plaintiffs filed a timely notice of appeal on March 15, 2005. This Court has appellate jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES ON APPEAL

1.    Did the District Court commit reversible error by granting Defendants' motion to dismiss and denying Plaintiffs' cross-motion for partial summary judgment when it failed to decide whether the Partnership was a partnership at will, which could be terminated by any partner at any time, and instead focused solely on the question of the applicability of G.L. c. 108A, § 42, a question which would be moot if the Partnership was indeed a partnership at will.

2.    Did the District Court commit reversible error when it concluded that a modification to the Partnership Agreement demonstrated a clear and unambiguous intent to preclude – by negative implication – all other means by which a partner could withdraw or retire from the Partnership, including the statutory mechanism created by G. L. c. 108A, §42.

3.    Did the District Court engage in impermissible fact finding at the motion to dismiss stage when it selected one contractual interpretation over another – despite having specifically found an ambiguity in the intent of the parties – based upon the belief that the only witness with first-hand information regarding the parties' true intent has an interest in the outcome of the litigation.

## STATEMENT OF THE CASE

Plaintiffs commenced an action in the United States District Court for the District of Massachusetts (the "District Court") in November 2003. In their original complaint, Plaintiffs, all partners of the Partnership, sought to enforce their rights to withdraw or retire from the Partnership pursuant to G.L. c. 108A, § 42 and for a partnership accounting. Defendants filed a motion to dismiss Plaintiffs' original complaint, and Plaintiffs filed an opposition. Defendants subsequently filed a reply brief. Defendants' also filed a motion to disqualify Plaintiffs' original counsel based upon the fact that counsel had previously represented the Partnership. The District Court granted Defendants' motion to disqualify, and Plaintiffs engaged new counsel.

Shortly after changing counsel, Plaintiffs amended their complaint as a matter of right. In addition to the relief sought by Plaintiffs in their original complaint, Plaintiffs' amended complaint sought, inter alia, declaratory judgments that: (1) the Partnership was a partnership at will and therefore terminable by any partner, at any time, for any reason, (2) the Plaintiffs had lawfully terminated the Partnership, and (3) Plaintiffs' termination of the Partnership required the winding up of the Partnership's business, the liquidation of the Partnership's assets, and the distribution of the liquidation proceeds to the partners according to their respective partnership interests.

Defendants moved to dismiss Plaintiffs' amended complaint, or, in the alternative, for summary judgment. Plaintiffs filed a consolidated pleading opposing Defendants' motion to dismiss and cross-moving for partial summary judgment on Counts I-VI and VIII of the amended complaint. Plaintiffs' cross-motion for partial summary judgment sought declaratory judgments: (1) that the Partnership was a partnership at will, and that Plaintiffs had therefore terminated the Partnership (making them entitled to a winding up of the Partnership business, a liquidation of the Partnership assets, and a distribution of the liquidation proceeds); (2) that the Plaintiffs had withdrawn from the Partnership pursuant to G.L. c. 108A, § 42 regardless of whether it was an at will partnership, and (3) that Plaintiffs were, in either event, entitled to a partnership accounting. Defendants opposed Plaintiff's cross-motion, and Plaintiffs filed a reply brief.[1] The District Court held oral argument on December 2, 2004.

On February 25, 2005, the District Court (Stearns, J.) issued its Memorandum and Order on Defendants' Motions to Dismiss and Plaintiffs' Motion for Summary Judgment in which it granted Defendants' motion to dismiss and denied Plaintiffs' motion for partial summary judgment.

---

[1] Plaintiffs discovered shortly before the deadline for filing this brief that their reply brief was inadvertently omitted from the docket by the District Court. Plaintiffs have brought this omission to the attention of the District Court, and the District Court intends to add Plaintiffs reply brief to the docket and to forward a copy to this Court to supplement the existing record.

Judgment entered on February 24, 2005 dismissing Plaintiffs' action in its entirety. Plaintiffs filed their notice of appeal on March 15, 2005.

## STATEMENT OF FACTS

The Partnership was formed by its original partners pursuant to a two-page partnership agreement dated January 8, 1964 (the Partnership Agreement). APP-17 (Agreement). Pursuant to the express terms of the Partnership Agreement, the undertaking of the Partnership was to acquire a certain parcel of land in Lexington, Massachusetts (the "Real Estate") and to "construct apartments on said land." APP-17 (Agreement). The Partnership Agreement provided that a nominee trust (the Trust), would take title to the Real Estate and would hold the Real Estate in trust for the sole benefit of the Partnership. APP-17-18 (Agreement, ¶4). The Real Estate remains an asset of the Trust, and the Partnership remains the Trust's sole beneficiary.

The Partnership Agreement expressly states the intention of the original partners that it should terminate after a term of "thirty years from the date hereof" (on January 8, 1994). APP-17 (Agreement, ¶1). In addition, the Partnership Agreement expressly incorporates by reference "all applicable provisions and sections of General Laws Chapter 108A[2] ....". APP-18 (Agreement, ¶7).

---

[2] Chapter 108A is the Massachusetts Uniform Partnership Act (the "UPA").

In March of 1987, following the death of one of the original partners (Joseph C. Tropeano), the surviving partners entered into a modification of the original Partnership Agreement (the "Modification"). APP-19 (Modification). Prior to the Modification, the Partnership Agreement did not include any provision addressing what would happen in the event that a partner died. The Modification reaffirmed the terms of the original Partnership Agreement and declared that the death of Joseph Tropeano had not dissolved or terminated the Partnership Agreement, nor would the subsequent death of any partner terminate the Partnership, an issue not addressed by the terms of the original Partnership Agreement. APP-19, 22 (Modification, ¶¶1, 3, Introduction, Conclusion). The Modification also provided that Joseph Tropeano's interest in the Partnership was to be distributed as provided for in his will as allowed for probate, another issue not addressed by the terms of the original Partnership Agreement. APP-19 (Modification, ¶2).

The Modification further allowed a partner to designate as beneficiaries of his partnership interest in the event of his death his wife, children or grandchildren, and provided that such beneficiaries would receive upon the partner's death all of the partnership rights of the deceased partner, another issue not addressed by the terms of the original Partnership Agreement. APP-19-20, 22 (Modification, ¶¶ 3, 5 and 9).

In addition, The Modification provided that the partners could terminate the Partnership upon a 60% vote (Modification, ¶4); that each partner could assign or sell his partnership interests to his wife, children or grandchildren without the consent of the other partners (Modification, ¶5); that the partners had a right of first refusal and a separate right of approval (not to be unreasonably withheld) regarding the sale by any partner of his partnership interest to a party other than his wife, children or grandchildren (Modification, ¶6); the voting rights of minors (Modification, ¶7); and the process for distributing liquidation proceeds upon termination of the Partnership (Modification, ¶8).

The Modification does not expressly strike or supersede any provision of the original Partnership Agreement. Indeed, the Modification expressly reaffirms the terms of the original Partnership Agreement. APP-19, 22 (Modification, Introduction, Conclusion). Particularly relevant to this dispute, the Modification makes no mention of striking, extending or otherwise replacing the thirty-year term of the Partnership Agreement. In fact, the partners never expressly extended the term of the Partnership Agreement at any time prior to, or after, January 8, 1994.

As of August 1, 2003, the partners of the Partnership (and their respective partnership interests) were as follows:

| | |
|---|---|
| Philip L. Tropeano | 21.43% |
| Peter Tropeano | 10.715% |
| Carolyn Patten | 10.715% |
| Charlene Dorman | 36.14% |

| | |
|---|---|
| Bianca Dorman | 7.00% |
| Lydia Dorman | 7.00% |
| Todd Dorman | 7.00% |

By letter dated August 21, 2003, Plaintiffs, through their then-counsel, notified Defendants of their intent to withdraw from the Partnership, effective October 1, 2003 (the "Withdrawal Letter"). APP-23 (W. Letter). The Withdrawal Letter also invoked the rights of Plaintiffs to immediately receive the value of their respective interests in the value of the Partnership. APP-24 (W. Letter). The Withdrawal Letter did not insist (as it might have done) upon the liquidation of the Partnership's assets. Instead, recognizing that the remaining partners might wish to continue the business of the Partnership, the Withdrawal Letter requested only that the withdrawing partners be paid their respective interests of the value of the Partnership's assets (primarily, though not exclusively, the Real Estate). APP-24 (W. Letter).

In response to the Withdrawal Letter, Defendants denied that Plaintiffs are entitled to withdraw and receive from the Partnership the liquidation value of their respective interests in the Partnership. The Defendants also denied that the Partnership is a partnership at will, or otherwise subject to termination except by a sixty-percent vote of the existing partners.

Plaintiff Philip Tropeano was an original partner of the Partnership and a party to the Modification. APP-22 (Modification). Each of the remaining existing

partners received their respective partnership interest by assignment some years after the Modification was executed.

## SUMMARY OF ARGUMENT

1.     Plaintiffs are entitled to the requested partial summary judgment (and Defendant's are not entitled to dismissal of Plaintiffs' amended complaint) because the Partnership became a partnership at will at the conclusion of its express thirty-year term on January 8, 1994, Plaintiffs lawfully terminated the Partnership when they filed their amended complaint, and Plaintiffs are therefore entitled to a winding up of the Partnership business, a liquidation of the Partnership assets and a distribution of the liquidation proceeds regardless of the applicability of G.L. 108A, § 42.

2.     Plaintiffs are entitled to the requested partial summary judgment (and Defendant's are not entitled to dismissal of Plaintiffs' amended complaint) because the Modification does not demonstrate any intent by the partners who executed it that the Modification would provide the sole and exclusive means by which a partner could withdraw or retire from the Partnership.

3.     Defendants are not entitled to dismissal of Plaintiffs' amended complaint because the District Court clearly found there to be an ambiguity in the intent of the partners who executed the Modification.

## SCOPE OF REVIEW

1.      Did the District Court err in failing to hold that the Partnership is a partnership at will and that Plaintiffs, having terminated the Partnership, are entitled to a winding up of the Partnership business, a liquidation of the Partnership assets and a distribution of the liquidation proceeds?  This is a legal issue subject to review de novo.  See  Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 147 (1st Cir. 1998).

2.      Did the District Court err in holding that the Modification demonstrates the intent by the partners who executed it that the Modification would provide the sole and exclusive means by which a partner could withdraw or retire from the Partnership?  This is a legal issue subject to review de novo.  See Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 147 (1st Cir. 1998).

3.   .  Did the District Court err in granting Defendants motion to dismiss where the District Court clearly perceived the intent of the partners who executed the Modification as ambiguous?  This is a legal issue subject to review de novo. See Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 147 (1st Cir. 1998).

## ARGUMENT

**1.    The District Court erred in not granting Plaintiffs' motion for partial summary judgment (and in granting Defendants' motion to dismiss) where the Partnership was at will and Plaintiffs lawfully terminated the Partnership.**

On January 8, 1994, the express term of the Partnership Agreement expired and the Partnership became a partnership at will terminable by any partner, at any time, for any reason. APP-17 (Agreement, ¶ 1). There is simply no other reasonable interpretation of the original Partnership Agreement and the Modification when read together.

The express language of the Partnership Agreement clearly and unambiguously demonstrates that the original partners intended the Partnership to end "thirty years from the date hereof" (on January 8, 1994). APP-17 (Agreement, ¶ 1). The Modification does not expressly strike, extend or otherwise modify this thirty-year term. In fact, the Modification makes no mention whatsoever of the thirty-year term, and does not include any language at all that can be legitimately characterized as indicating an intent by the executing partners to avoid the termination of the Partnership which, at the time, was not due to occur for another seven years. To the extent that the Modification has anything to "say" about the thirty-year term, it does so only in its general provisions which incorporate and reaffirm the original terms of the Partnership Agreement. APP-19, 22 (Modification, at Introduction and Conclusion).

What the Modification does include is Paragraph 4. Paragraph 4 provides

that the Partnership may be terminated by a 60% vote of the partners. APP-20

(Modification, ¶ 4). Defendants urged the District Court, and they will no doubt

implore this Court, to interpret Paragraph 4 as a "clear" and "unambiguous"

indication that the partners who executed the Modification intended to replace the

thirty-year term of the original Partnership Agreement with a term of indefinite

years terminable only upon the required vote of a supermajority of partners. Not

only does such an interpretation require an unreasonably strained reading of the

modified Partnership Agreement, it would also, as a matter of law, lead to the

identical result of the Partnership being one at will, and therefore terminable by

any partner, at any time, for any reason.

### A.    The modified Partnership Agreement must be read to give effect to both the thirty-year term and Paragraph 4.

Looking to the words actually used by the parties in crafting their contract,

the only reasonable reading of the modified Partnership Agreement requires that

effect be given both to the thirty-year term and Paragraph 4. The Partnership

Agreement clearly indicates the intent of the original partners that the Partnership

would end "thirty years from the date hereof" (on January 8, 1994). APP-17

(Agreement, ¶ 1). Some seven years before this specified term was due to end, the

original partners (minus Joseph C. Tropeano, whose death clearly appears to have

motivated the Modification) executed the Modification. The Modification

affirmed the Partnership, and made clear that "the partnership agreement dated

January 8, 1964, was not dissolved or terminated by the surviving partners when

Joseph C. Tropeano died, [and] has been and is <u>in full force and effect</u> with the

exception of Joseph's interest". (emphasis added).  APP-19 (Modification, ¶ 1).

The Modification further states that "[e]xcept as herein modified, the said

partnership is hereby affirmed".  APP-22 (Modification, Conclusion).  The

Modification includes no express language or other clear indication that the

executing partners intended to modify the thirty-year term.

     The province of the courts in interpreting contracts is well defined.  The

question of whether a contract is ambiguous is one for the courts.  <u>ITT Corp. v.</u>

<u>LTX Corp.</u>, 929 F.2d 1258, 1261 (1st Cir. 1991)("The determination of whether a

contract provision is ambiguous is a question of law subject to plenary review");

<u>Fashion House, Inc. v. K Mart Corp.</u>, 892 F.2d 1076, 1083 (1st Cir. 1989)

("Determining whether or not a contract is ambiguous is, like other questions of

contract construction, a matter for the court").  Contracts "must be construed so

that every part is given effect, and every section of an agreement must be read in

relation to each other to bring harmony, if possible, between all parts of the

writing."  <u>Chandler Medical Bldg. Partners v. Chandler Dental Group</u>, 175 Ariz.

273, 277, 855 P.2d 787, 791 (Ariz. Ct. App. 1993).

As a corollary, courts must not construe one provision in a contract so as to render another provision meaningless. See Jimenez v. Peninsular & Oriental Steam Navigation Co., 974 F.2d 221, 223 (1st Cir. 1992)("In construing contract language, we endeavor to render no term meaningless"); Cohen v. Steve's Franchise Co., 927 F.2d 26, 29 (1st Cir. 1991) ("A reading rendering contract language meaningless is to be avoided."); Bosse v. Litton Unit Handling Sys., Div. of Litton Sys., Inc., 646 F.2d 689, 694 (1st Cir. 1981)("It is axiomatic that constructions which render contract terms meaningless or futile are to be avoided"); Scolastic, Inc. v. Harris, 259 F.3d 73, 83 (2d Cir. 2001)("In determining whether a contract is ambiguous, a court must look at the entire integrated agreement, to safeguard against adopting an interpretation that would render any individual provision superfluous").

A reading of the modified Partnership Agreement which gives effect to both the thirty-year term and Paragraph 4 is not only possible, it is both the most reasonable construction of the contract and the one which is compelled by this Court's case law. Paragraph 4 is most reasonably read as a modification by addition (as opposed to substitution), setting out a mechanism by which the partners could terminate the Partnership Agreement during the seven years following the Modification but prior to January 8, 1994. Because the Modification contains no express indication that Paragraph 4 was intended to replace the thirty-

year term, and because there is no inherent conflict between Paragraph 4 and the

thirty-year term, the modified Partnership Agreement must be read not to render

the thirty-year term meaningless. As a result, the thirty-year term remained in full

force an effect, and the term of the Partnership Agreement terminated by its

express language on January 8, 1994.

Upon the termination of the thirty-year term, the Partnership became a

partnership at will. Pursuant to G.L. c. 108A, § 23(1):

> When a partnership for a fixed term or particular undertaking is continued
> after the termination of such term or particular undertaking without any
> express agreement, the rights and duties of the partners remain the same as
> they were at such termination, so far as is consistent with a partnership at
> will.

Following the termination of the fixed term of the Partnership on January 8, 1994,

the partners continued without any express agreement to operate the business of

the Partnership as a partnership at will.

The hallmark of a partnership at will is the ability of any partner to terminate

the partnership at any time and for any reason. See, e.g., Meehan v. Shaughnessy,

404 Mass. 419, 428, 535 N.E.2d 1255, 1260 (1989); Hallahan v Haltom Corp. 7

Mass. App. Ct. 68, 71, 385 N.E.2d 1033, 1035 (1979), Johnson v. Kennedy, 350

Mass. 294, 298, 214 N.E.2d 276, 278 (1966); Steele v. Estabrook, 232 Mass. 432,

439, 122 N.E. 562 (1919). Plaintiffs terminated the Partnership when they filed

their amended complaint requesting, inter alia, declaratory judgments by the

District Court that: (1) the Partnership was a partnership at will and therefore terminable by any partner, at any time, for any reason, (2) the Plaintiffs had lawfully terminated the Partnership, and (3) Plaintiffs' termination of the Partnership required the winding up of the Partnership's business, the liquidation of the Partnership's assets, and the distribution of the liquidation proceeds to the partners according to their respective partnership interests.

Because the Plaintiffs are therefore entitled, as a matter of law, to a winding up of the Partnership business, a liquidation of the Partnership assets, and a distribution of the liquidation proceeds according to their respective partnership interests, the District Court erred when it granted Defendants' motion to dismiss and should have, instead, denied Defendants' motion to dismiss and granted Plaintiffs motion for partial summary judgment on Counts I-VI and VIII of the amended complaint

**B.    Even If Paragraph 4 had replaced the thirty-year term, the Partnership Agreement would still be an at will partnership.**

Even if the Modification could reasonably be read as indicating the intent of the partners who executed it to substitute Paragraph 4 for the thirty-year term, Plaintiffs would still be entitled to partial summary judgment because the resulting modified Partnership Agreement would be without a fixed term.

It is the well settled law of Massachusetts that a partnership agreement without a fixed term or a particular undertaking is a partnership at will, terminable

by any partner, at any time, for any reason.  See, e.g., Meehan v. Shaughnessy, 404

Mass. 419, 428, 535 N.E.2d 1255, 1260 (1989)("Where a partnership agreement

provides that the partnership is to continue indefinitely… the partnership is

therefore 'at will'…"); Johnson v. Kennedy, 350 Mass. 294, 298, 214 N.E.2d 276,

278 (1966)(where the partnership agreement "did not specify the life of the agency,

the partnership was at the will of the partners"); Steele v. Estabrook, 232 Mass.

432, 439, 122 N.E. 562 (1919)("In the agreement of partnership between Hervey

and Steele there was no provision as to the time during which the partnership was

to continue. Under these circumstances either party had a right to terminate the

partnership at will"); Wiggins v. Brand, 202 Mass. 141, 147, 88 N.E. 840, 841

(1909)("there having been no definite agreement… as to the time that it was to

continue, the partnership should be treated as being strictly at will and as dissolved

from the date of the filing of the bill); Fletcher v. Reed, 131 Mass. 312, 313

(1881)("A partnership for an indefinite period is in law a partnership at the will of

the partners, and either partner may withdraw when he pleases, and dissolve the

partnership…."); Georg v. Tzavos, 4 Mass. L. Rep. 391 (Mass. Super. Ct.,

September 20, 1995)(because the partnership agreement lacked "any specific

mutual agreement with respect to the duration of the partnership," the partnership

"was therefore a partnership at will, which, under c. 108A, 31, could be dissolved

at any time by either party.").

As a matter of law, Paragraph 4 cannot be deemed to constitute an "undertaking" for purposes of the UPA. Under the UPA, an "undertaking" refers to a business activity or project. See Scolastic, Inc. v. Harris, 259 F.3d 73, 85 (2d Cir. 2001)("When the agreement specifies a durational term, or a defined project, an attempt unilaterally to dissolve the partnership would violate the partnership agreement")(emphasis added); Miami Subs Corp. v. Murray Family Trust, 142 N.H. 501, 509, 703 A.2d 1366, 1371 (1997)("By contrast, business activities which may continue indefinitely are not 'particular' in nature and do not constitute 'particular undertakings'")(emphasis added); See also Jordan v. Bowman Apple Products Co., Inc., 728 F. Supp. 409, 416-17 (W.D. Va. 1990)(undertaking was to carry out a "general orchard operation" and to engage in "such other businesses as the partners may from time to time determine"); Chandler Medical Bldg. Partners v. Chandler Dental Group, 175 Ariz. 273, 275, 280, 855 P.2d 787, 789, 794 (Ariz. Ct. App. 1993)(where undertaking was to develop, construct, operate, lease or sell a two-story medical office building); Canter's Pharmacy v. Westbrook Pharmacy and Surgical Supply, 396 Pa. Super. 505, 508, 512, 578 A.2d 1326, 1328, 1330 (1990)(partnership undertaking was to renovate, equip and operate a personal care facility).

Under either analysis, then, the Partnership was a partnership at will – either because it terminated on January 8, 1994 pursuant to its explicit terms – or because

it was a partnership agreement without a specified term. Either way, however, Plaintiffs were entitled to terminate the Partnership at any time, for any reason, which they did by filing their amended complaint.

Because Plaintiffs are therefore entitled to a winding up of the Partnership business, a liquidation of the Partnership assets, and a distribution of the liquidation proceeds according to their respective partnership interests, the District Court erred when it granted Defendants' motion to dismiss and should have, instead, denied Defendants' motion to dismiss and granted Plaintiffs motion for partial summary judgment on Counts I-III, VI and VIII of the amended complaint.

**2.    The District Court erred in concluding as a matter of law that the Modification was intended to provide the sole and exclusive means by which a partner could withdraw or retire from the Partnership.**

Among the remedies sought by Plaintiffs in their amended complaint was a declaration by the District Court that Plaintiffs were entitled to withdraw from the Partnership and have the value of their respective partnership interests ascertained and paid pursuant to G.L. c. 108A, § 42. In relevant part, Section 42 provides that:

> When any partner retires or dies, and the business is continued ... without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership....

- 19 -

(emphasis added).

The District Court held that Plaintiffs are not entitled to their statutory rights under Section §42, theorizing that the partners who executed the Modification "otherwise agreed" that the sole mechanism for a partner to withdraw or retire from the Partnership was pursuant to Paragraphs 4, 5 and 6 of the Modification. APP-15-16 (Memorandum). Before even legitimately entertaining such a theory, however, the District Court was required to determine that the Partnership was not a partnership at will – a determination that the District Court expressly declined to make, reasoning that whether the Partnership was as partnership at will was immaterial to an analysis of the applicability of Section 42. This is plainly not the case. If the District Court had properly determined that the Partnership was a partnership at will, an inquiry of whether the partners executing the Modification "otherwise agreed" would have been moot because prohibiting a partner from withdrawing would be inconsistent with a partnership at will for all the reasons outlined in Section I above.[3]  For this reason alone, the dismissal by the District Court should be reversed.

---

[3] In short, if the Partnership is a partnership at will, then any partner may voluntarily withdraw or retire just as any partner may terminate the Partnership. To argue to the contrary would require Defendants to assert that they (Defendants) have no option but to cease operations and liquidate their assets. Although it is certainly Plaintiffs' right to require such liquidation, they may also alternatively invoke their rights under G.L. c. 108A, §42 to instead have their respective interests valued and paid.

- 20 -

Even if the Partnership were not a partnership at will, however, a simple reading of the Modification makes crystal clear that no method of withdrawal and valuation was "otherwise agreed" to in the Modification. The District Court nevertheless concluded that the partners who executed the Modification intended Paragraphs 4, 5 and 6 to serve as the exclusive means by which a partner could withdraw from the Partnership and receive the value of his interest. APP-15-16 (Memorandum). The Modification gives absolutely no indication of such intent, and the provisions at issue are all explained by reasoning far less tortured than that adopted by the District Court.

Paragraph 4, for example, provides that the Partnership can be <u>terminated</u> by a 60% vote of the Partners. APP-20 (Modification). As seven years of the fixed term of the original Partnership Agreement remained at the time that the Modification took place, Paragraph 4 was obviously intended to provide the partners with a mechanism by which to terminate the Partnership <u>prior to</u> its automatic termination on January 8, 1994. It is, of course, understandable that the partners would want to establish a high threshold for a full termination of the Partnership given that, upon termination, the Partnership Agreement provides only for the liquidation of the partnership assets.[4] As Section 42 of the UPA makes

---

[4] Upon such a vote, the partners would have been required to "notify the Trustees to liquidate the assets and distribute the net principal and accumulated income as provided by [Paragraph 8 of the Modification]." APP-20 (Modification, ¶ 4).

clear, though, termination and liquidation are not the only options available to a

partner. Because rights to terminate the partnership are entirely different than

rights to retire or withdraw, the District Court erred when it concluded that

Paragraph 4 conflicted with, and therefore superceded, Plaintiffs' rights under G.L.

c. 108A, § 42.

Paragraph 5, likewise, has nothing to do with valuation, retirement or

withdrawal. Instead, Paragraph 5 simply provides that each partner may assign or

sell any portion of his partnership interest to his wife, children or grandchildren

without the consent of the other partners. APP-20 (Modification). Far more likely

motivated by some perceived tax benefit, Paragraph 5 contains no hint of intent

that it was meant to comprise any part of a mechanism for withdrawal from the

Partnership, or to otherwise supplant Section 42 which, as part of G.L. c. 108A,

was expressly incorporated by reference into the Partnership Agreement. APP-18

(Agreement, ¶ 7).

Finally, Paragraph 6 provides that the partners have a right of first refusal

and a separate right of approval (not to be unreasonably withheld) before any

partner may sell his interest to a party other than his wife, children or

grandchildren. APP-20 (Modification). Once again, the plain language of this

paragraph does not indicate any intent to address the retirement or withdrawal of a

partner. Instead, having determined that a partner may sell his partnership interest

to a third-party, the partners who executed the Modification likely intended Paragraph 6 to merely provide them with some measure of discretion as to who could join the Partnership.

While Plaintiffs do not debate that a partnership agreement which specifically provides a right or remedy will "trump" a contrary provision of the UPA, it is equally true that, where a partnership agreement is silent on a particular issue, the UPA is designed to "fill in the blanks." Warnick v. Warnick, 76 P.3d 316, 320 (Wyo. 2003). Indeed, the UPA "is largely a series of 'default rules' that govern the relations among partners in situations they have not addressed in a partnership agreement." Id. (citations omitted). As should be evident from the above review of Paragraphs 4, 5 and 6, none of these provisions are even close to sufficiently on point to be viewed as conflicting with G.L. c. 108A, § 42.

Two cases decided under the UPA are instructive on what is appropriately viewed as conflicting with Section 42. In Zucker v. Rubin, 218 Cal. App. 3d 1198 (1990), the Court addressed a situation in which a partnership agreement specifically provided for a detailed method of valuing a deceased partner's partnership interest, which conflicted with Section 42 of the UPA. The Court first affirmed the general proposition that, to the extent the partnership agreement's method of valuation conflicted with the UPA, the partnership agreement should control. The partnership agreement was silent, however, on the question of

whether or not the deceased partner's estate was entitled to an award of interest on the value of the deceased partner's share. The trial court held that, given the partnership agreement's detailed provisions for the method of valuation, Section 42 was inapplicable. The appeals court rejected this conclusion, however, finding that, "while the partners otherwise agreed as to how the partnership was to be valued, they did not otherwise agree that interest or future profits were not recoverable." Id. at 1204. In short, the Court rejected precisely the notion advanced by Defendants here – that the Court should infer by negative implication the exclusion of certain remedies by virtue of the inclusion of other remedies.

The Court reached a similar result in Chapman v. Dunnegan, 665 S.W.2d 643 (Mo. App. 1984). In Chapman, the partnership agreement provided that a deceased partner's interest should be valued by the agreed upon value which had been set by the partners at the close of the most recent fiscal year. If the partners had failed to agree upon a value at the close of the fiscal year, the prior year's agreed upon value was to be used. Unfortunately, however, the partners in Chapman had never been able to agree upon a value, a circumstance unforeseen by the partnership agreement. Plaintiffs there argued for the use of "fair market value" while Defendants advocated for "book value." Given the absence of a provision governing this particular contingency, the Court found Section 42 of the

UPA to be applicable to the dispute and ordered the deceased partner's interests to be valued at fair market value.

In the present case, then, because the modified Partnership Agreement is entirely silent with respect to the method of valuing a retiring or withdrawing partner's partnership interest, the District Court should have applied Section 42's formula for valuation and determined the fair market values of Plaintiffs' respective interests as of the date of their withdrawal from the Partnership. Accordingly, the District Court erred when it granted Defendants' motion to dismiss and should have, instead, denied Defendants' motion to dismiss and granted Plaintiffs motion for partial summary judgment on Counts IV, V and VIII of the amended complaint.

**3.    Defendants were not entitled to dismissal of Plaintiffs' amended complaint because the District Court clearly found there to be an ambiguity in the intent of the partners who executed the Modification.**

The intent of contracting parties is "generally [] deemed a material issue of fact" precluding summary dismissal. Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir. 1992). See also, Boston Five Cents Sav. Bank v. Department of Housing & Urban Dev., 768 F.2d 5, 8 (1st Cir. 1985)("an argument between parties about the meaning of a contract is typically an argument about a 'material fact,' namely the factual meaning of the contract"). Only in limited circumstances is it appropriate for a court to choose one meaning of a disputed agreement over

another.  Such limited circumstances occur only where "no 'reasonable person'

could differ about what the contract means, either because the language is

unambiguous or the supporting evidence is sufficiently one-sided".  Boston Five

Cents Sav. Bank, 768 F.2d at 8.  Such is not the case in the instant matter.

As discussed above in Section II, Plaintiffs maintain that the modified

Partnership Agreement can only be read as being silent on the issue of the

retirement or withdrawal of partners.  Even if this is not the case, however, the

interpretation adopted by the District Court cannot be considered the only

interpretation possible by a "reasonable person".  In fact, the District Court is quite

clear in its own estimation that there are at least two quite reasonable

interpretations of the intent behind the Modification as it relates to retirement and

withdrawal; that advanced by the Defendants (and adopted by the District Court)

and that advanced by the Plaintiffs.  APP-16 (Memorandum).

However, after expressing its opinion that "[t]his is admittedly a close case,"

the District Court proceeds to choose between what it concedes are two reasonable

interpretations of the Modification.  APP-16 (Memorandum).  As support for this

decision to act as fact finder, the Court identifies what it perceives as certain

practical benefits to the avoidance of a trial.  The Court states that "[t]he practical

problem is that there is no disinterested person living who could shed light on the

partners' intent in modifying the Agreement," an obvious reference to the fact that

the only partner who was party to the Modification is the plaintiff Philip Tropeano.

APP-16 (Memorandum). In addition to positing that a witness on the issue of

intent must be unbiased to be of any evidentiary value, the District Court, without

foundation, also assumed that no disinterested witness could be found. The

District Court further opined that "[g]iven the falling out between families that

underlies this dispute, a firm resolution of the case is to everyone's immediate

benefit". APP-16 (Memorandum). Because the District Court was clearly

motivated by the perceived practical benefit of an immediate determination, as

opposed to its belief that Defendants' interpretation is the only reasonable

interpretation of the Modification, the District Court committed reversible error

when it dismissed Plaintiffs' amended complaint. See Blanchard, 958 F.2d at 494

("although the result reached by the district court is an eminently reasonable one,

our de novo review of the entire record in light of the controlling substantive law

satisfies us that summary judgment for either party would entail impermissible

factfinding").

## CONCLUSION

For these reasons, Philip Tropeano, Peter Tropeano and Carolyn Patten respectfully request that this Court reverse the District Court's dismissal of Plaintiffs' amended complaint and grant Plaintiffs' partial summary judgment on Counts I-VI and VIII of their amended complaint.

Respectfully submitted,

PHILIP L. TROPEANO, PETER TROPEANO, and CAROLYN PATTON

By their attorney,

Thomas Ciampa (BBO # 566898)
Ciampa & Associates
45 Bromfield Street, Suite 200
Boston, MA 02108
(617) 742-5955

Dated:  June 17, 2005