UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PHILIP L. TROPEANO, PETER TROPEANO, and CAROLYN PATTON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 03-CV-12231-RGS |
| v. | ) ) | |
| CHARLENE DORMAN, et al., | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SUBSEQUENT**
**MARKET ACTIVITY AND OPINIONS OF VALUE BASED UPON SUCH DATA**

Despite the First Circuit's ruling that Plaintiffs' former partnership interests are to be

valued as of October 1, 2003, Plaintiffs seek to introduce (a) evidence of 2004 sales of allegedly

comparable properties, (b) a December 2004 letter expressing interest in purchasing the Captain

Parker Arms Apartments ("Captain Parker Arms"), and (c) expert opinions relying almost

exclusively on such information.

Because willing buyers and sellers acting in October 2003 could not have known about

market activity that did not occur until 2004, the subsequent events are not relevant to this

Court's determination of the value of Plaintiffs' former partnership interests as of October 1,

2003. Moreover, as explained more fully below, such evidence lacks the reliability required to

support an expert's opinion of value. Accordingly, Defendants' Motion in Limine to Exclude

Evidence of Subsequent Market Activity and Opinions of Value Based Upon Such Data should

be granted, and the Court should exclude evidence of subsequent market activity, the December 2004 expression of interest, and any opinions relying on such data.

**Background Facts**

On appeal taken by Plaintiffs, the First Circuit held that this Court should determine the value of Plaintiffs' former interests in the Captain Parker Arms Partnership pursuant to section 42 of the Massachusetts Uniform Partnership Act (Mass. Gen. Laws ch. 108A, the "Partnership Act"). Tropeano v. Dorman, 441 F.3d 69, 78-82 (1st Cir. 2005). The date of valuation is to be the date upon which Plaintiffs withdrew from Captain Parker Arms – the "date of dissolution" – October 1, 2003. Id. at 72.

On August 8, 2007, Plaintiffs proffered an expert appraisal report of Eric Reenstierna Associates (the "ERA Appraisal"). The ERA Appraisal contains a sales comparison analysis (id. at 46-63)[1], and as part of that analysis, relies upon the sales of seven allegedly comparable properties, two of which did not occur until the second half of 2004 (id. at 57-60, 63).[2] Additionally, the ERA Appraisal relies upon a purported "offer" letter from Princeton Properties dated December 13, 2004 (id. at 10, 37).[3]

The Princeton Properties letter states a price, but reserves the right to conduct due diligence by qualified professionals, and explicitly states that "this offer will not bind either party legally. "

---

[1]  Because Defendants seek to exclude the reports of Plaintiffs' experts, those reports have not been provided to the Court with the Motion in Limine. To demonstrate the reports' reliance on flawed evidence, and to permit Plaintiffs to respond to this Motion, references to specific pages of the expert reports are provided.

[2]  Defendants' Motion in Limine asks the Court to exclude evidence of the two 2004 sales and expert opinions which rely thereon. Defendants also submit that such sales are not "comparable". Such arguments will be presented at trial if the Motion in Limine is denied.

[3]  The Princeton Properties letter is Exhibit B to the Rikleen Affidavit, filed herewith.

Plaintiffs have also proffered a "rebuttal" expert report by Webster Collins, of CB Richard Ellis, dated September 28, 2007 (the "Collins Report"), which Mr. Collins characterized as an "appraisal review" pursuant to standard 3 of the Uniform Standards of Professional Appraisal Practice ("USPAP") (Collins Report, cover letter at 1-2 & 2-3). The Collins Report includes an opinion of the fair market value of Captain Parker Arms (id. at 23-25). Mr. Collins' opinion of value rests solely upon three allegedly comparable sales, including the two 2004 sales considered in the ERA Appraisal (id. at 19, 21, 22-25), and the Princeton Properties December 2004 letter (id. at 11-12, 15-16, 23, 24-25, addendum F at 64-65).

Discovery has revealed that Plaintiffs solicited Princeton Properties' interest in Captain Parker Arms after this action was commenced. On November 12, 2007, Defendants conducted a Rule 30(b)(6) deposition of Princeton Properties. The CEO of Princeton Properties testified that: (1) the opportunity was brought to him by Mr. Tropeano (Rikleen Aff., Ex. A, at 15:19-16:4, 16:10-21, 23:9-24:9); (2) Princeton Properties did not believe the December 2004 letter constituted a binding offer (id. at 25:17-26:6, 51:1-10); (3) Princeton Properties had not examined the physical condition of the property before sending its December 2004 letter (id. at 26:7-27:6, 46:4-48:22, 51:1-22, 63:9-18); (4) if it had conducted due diligence and uncovered deficiencies which it judged to be of sufficient concern, Princeton Properties would have either reduced the price it was willing to pay or abandoned its interest in the property (id. at 33:2-12, 35:4-36:24, 48:6-22, 49:4-22, 51:1-22 ); and (5) Princeton Properties has no knowledge of the value of Captain Parker Arms as of October 1, 2003 (id. at 60:12-16).

**Argument**

I.    **PLAINTIFFS' INTERESTS ARE TO BE VALUED AS OF OCTOBER 1, 2003, AND SUBSEQUENT MARKET ACTIVITY IS IRRELEVANT.**

The First Circuit remanded this case for determination of the value of Plaintiffs' former partnership interests pursuant to section 42 of the Partnership Act, as of the "dissolution date" – October 1, 2003. Tropeano, 441 F.3d at 78-82. The sole business of the partnership is to operate the Captain Parker Arms Apartments, located in Lexington, Massachusetts. Accordingly, valuation of the real property as of October 1, 2003, or of the income stream generated by the apartment complex, is a necessary step in determination of the value of Plaintiffs' partnership interests.

Section 42 of the Partnership Act provides, in relevant part: "[w]hen any partner retires . . ., and the business is continued . . . [the retiring partner] may have the value of his interest at the date of dissolution ascertained [emphasis added]." By using the term "date of dissolution," the legislature picked a precise, defined time at which to value the departing partners' interests. Anastos v. Sable, 443 Mass. 146, 152 (2004) (specifically concluding that phrase "at the dissolution" cannot be ignored or rendered superfluous).

Under Massachusetts law, "'fair market value' is generally defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Bernier v. Bernier, 449 Mass. 774, 779 n.8 (2007) (internal quote omitted). In other words, the determination requires putting oneself in the position of the willing buyer and willing seller, armed with the information reasonably available to such buyer and seller, at a certain point in time.

When property is valued as of a specific date,

the only relevant facts are those that this hypothetical buyer and seller could reasonably have been expected to know at that time. Thus, a rule has developed that subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation.

First Nat'l Bank of Kenosha v. U.S., 763 F.2d 891, 893-94 (7th Cir. 1985).[4] See also Robertson v. Routzahn, 1 F.Supp. 355, 356 (D. Ohio 1932) ("There are too many 'ifs' in measuring present values by future fruition. Fixing past values by subsequent events is not, in the nature of things, a reliable basis. Looking backward after the future is known is not a fair test.").

Because the legislature has established the point in time for valuing Plaintiffs' former partnership interests – in this case determined by the First Circuit to be October 1, 2003 – subsequent market activity simply has no relevance to the determination. No hypothetical buyer and seller of Plaintiffs' former partnership interests acting as of October 1, 2003 could have been armed with such information.

## II.    PRINCETON PROPERTIES' SUBSEQUENT EXPRESSION OF INTEREST IN THE SUBJECT PROPERTY IS IRRELEVANT.

Plaintiffs' experts rely on a purported "offer" made by Princeton Properties on December 13, 2004, fourteen months after the date for valuing Plaintiffs' former partnership interests (ERA Appraisal at 10, 37; Collins Report at 11-12, 15-16, 23-25, addendum F). On its face, this letter does not constitute a bona fide "offer" because Princeton Properties did not intend to be bound by its expression of interest (Rikleen Aff., Ex. B, at 1 (reserving right to conduct due diligence by qualified professionals), at 2 (stating that "this offer will not bind either party legally"). Moreover, Princeton Properties' CEO testified that, despite its use of the term "offer", Princeton Properties did not consider the December 2004 letter to be an offer that could be accepted, and it

---

[4]    The First Nat'l Bank court excepted from this rule a subsequent sale of the subject property within a reasonable time after the date of determination, holding that such a sale may be indicative of value. 763 F.2d at 894. In the instant case, there has been no sale of Captain Parker Arms.

considered itself free to reduce its price or even walk away (Rikleen Aff., Ex. A, at 25:17-26:6, 35:4-36:24, 48:6-22, 49:4-22, 51:1-22).

An expression of interest that allows the buyer the freedom to adjust the price downward or to abandon its interest constitutes nothing more than an invitation to talk. Estate of Dunia v. C.I.R., 87 T.C.M. (CCH) 1353, 5 (2004) ("The alleged offers . . . do not represent completed transactions. The parties disagree about many details concerning the validity and presentation of these offers, but it is most significant that the potential buyer was not financially committed to the transaction. . . . We do not find the terms of this contract to be indicative of value, because the amount and term of the escrow allowed [the buyer] to abandon the transaction with little economic effect."). Given the substantial due diligence yet to be undertaken (Rikleen Aff., Ex. A at 26:7-27:6, 35:4-36:24, 46:4-48:22, 49:4-22, 51:1-22, 63:9-16) and the explicit declaration that Princeton Properties was not legally bound to the price, the Princeton Properties letter is not evidence of what a buyer really would consider paying for Captain Parker Arms in December 2004. More importantly, Princeton Properties does not claim to know the value of the property as of October 1, 2003 (id. at 60:12-16).

Moreover, pursuant to USPAP standard 1.5 cited by Mr. Collins, an appraiser should consider "agreements of sale, options, or listing of the subject property current as of the effective date of the appraisal" (Collins Report at 11). By Mr. Collins' own admission, the Princeton Properties letter of December 2004 was neither an agreement of sale nor current (id.).

Accordingly, Princeton Properties' December 2004 letter is neither relevant nor competent evidence of the October 1, 2003 value of Plaintiffs' former partnership interests, and all evidence thereof should be excluded.

III.    **SUBSEQUENT SALES DO NOT PROVIDE RELEVANT EVIDENCE, AND
THUS SHOULD BE EXCLUDED.**

Sales of allegedly comparable properties occurring subsequent to October 1, 2003 are not

relevant to the valuation of Plaintiffs' former partnership interests.  No willing buyer and seller

of Plaintiffs' partnership interests, acting as of October 1, 2003, could have had knowledge of

sales made in 2004, and thus such sales are not relevant evidence in this case.  Bernier, 449

Mass. at 779 n.8.

The District of Rhode Island took a dim view of the use of subsequent "comparable"

sales when determining the value of a co-owner's interest in real estate assets that included

apartment complexes.  Bogosian v. Woloohojian, 831 F.Supp. 47, 49-50 (D.R.I. 1993)

(disapproving reliance on sales of properties that occurred after the valuation date of January 19,

1989).  A Special Master had been employed to value the shares of a minority owner, which

required valuation of an apartment complex.  Id. at 48.  The Special Master initially adopted the

valuation approach espoused by the defendants' experts, adjusting sales subsequent to the

valuation date for the difference in time.[5]  Id. at 49.  The Court questioned the Master's

acceptance of subsequent sales and highlighted the prejudicial influence hindsight can have on a

party's expert.  Id. at 49-51.  "The important factor is the future prediction actually made on the

valuation date [by the hypothetical buyer], not what in fact did happen thereafter."  Id. at 50.

"[W]hat happened after January 19, 1989 has absolutely no bearing on a determination of fair

market value on January 19, 1989."  Id. at 50.  Rather than looking at events subsequent to the

valuation date, "considerable weight must be placed on actual forces in the market as of the

valuation date."  Id. at 50 (emphasis added).

---

[5]    The Special Master "relied extensively" on the testimony of Webster Collins, Bogosian at 49,
who has been identified as Plaintiffs' rebuttal expert in this case.

The Court worried that market activity subsequent to the valuation date could contaminate the experts' opinions, holding that "after acquired knowledge is not an appropriate consideration in the determination of fair value nor may what actually happened in the market place be applied to support the opinions of those who profess to be experts", and remanded the matter to a Special Master for further consideration. Id. at 56.

Here, the Plaintiffs rely on evidence of comparable sales which occurred in July and September of 2004 (ERA Appraisal at 57-60, 63; Collins Report at 21-22, 25). Plaintiffs' own lead appraiser identified five earlier sales he deemed comparable (ERA Appraisal at 47-56, 63). Accordingly, Plaintiffs have no need to resort to consideration of subsequent sales, and all evidence of sales of allegedly comparable properties occurring subsequent to October 1, 2003 should be excluded.

## IV.    EXPERT OPINIONS THAT RELY SUBSTANTIALLY ON SUBSEQUENT EVENTS LACK A RELIABLE FOUNDATION AND SHOULD BE EXCLUDED.

The judge functions as a gatekeeper of proffered expert evidence to ensure its relevance and its reliable foundation. United States v. Sebaggala, 256 F.3d 59, 65 (1st Cir. 2001). Rule 702 of the Federal Rules of Evidence specifically addresses the determination of whether opinions of an expert witness should be accepted into evidence. The rule grants expert witnesses testimonial latitude on the assumption that the expert's opinion will be based on reliable data and facts. "[W]here such testimony's factual basis, data, principles, methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis'. . . ." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) (internal citation omitted)). Accordingly, the Court may exclude an expert's opinion if it is not supported by sufficient and reliable facts and data.

As demonstrated above, subsequent sales and expressions of interest are irrelevant, because such information is unknowable by the hypothetical willing buyer and seller acting as of October 1, 2003. Nor are opinions based thereon reliable, because the expert's analysis will be influenced by later occurring market conditions, and mere expressions of interest are not true indications of value because they lack financial consequences.

The sales comparison analysis of Plaintiffs' primary expert relies on two subsequent sales (ERA Appraisal at 57-60, 63). The Court should exclude from the trial any expert opinions based upon subsequent market activity, specifically including 2004 sales of allegedly comparable properties.

The valuation opinion appearing in the report of Plaintiffs' rebuttal expert, Mr. Collins, rests almost entirely on subsequent market activity, and should be excluded in its entirety. Mr. Collins' income analysis relies on a capitalization rate derived from Princeton Properties' December 2004 letter (Collins Report at 15). He bases his sales comparison analysis upon three purportedly comparable sales, two of which occurred in 2004 (id. at 21-22, 25). Additionally, his final conclusion, which appears to be a blend of his income analysis and sales comparison analysis, was influenced by "the very important Princeton Properties offer" (id. at 23-25). Because Mr. Collins' opinion of value rests on subsequent market activity, the Court should prohibit Mr. Collins from offering an opinion as to the value of Captain Parker Arms or Plaintiffs' interests therein as of October 1, 2003.

### Conclusion

For the reasons set forth above, Defendants respectfully ask the Court to exclude from evidence at trial:

(a)    third party expressions of interest in purchasing the Captain Parker Arms Apartments made after October 1, 2003,

- 9 -

(b)   sales of allegedly comparable real estate which took place after October 1, 2003, and

(c)   any opinions of value of the Captain Parker Arms Apartments, or the value of Plaintiffs' former partnership interests, which are based thereon.

Respectfully submitted,

/s/ Sander A. Rikleen
Sander A. Rikleen – BBO# 420280
Christine M. O'Connor – BBO# 647535
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Ph:  617·239·0100
Fx:  617·227·4420
Attorneys for the Defendants

Dated:  November 21, 2007

**Certificate of Service**

I hereby certify that this document filed through the ECF system pursuant to Local Rule 5.4 will be sent electronically to all other parties.

/s/ Sander A. Rikleen