## DECLARATION OF TRUST

WHEREAS it is proposed to form a trust relating to the purchase, holding, improvement, development and management of various parcels of real estate, together with the investment and management of proceeds from the same and any other property, and to accomplish this to build, erect, tear down, repair, remodel, enlarge, rebuild and operate buildings, grade and landscape grounds of every description:

WHEREAS the Trustees hereunder named will by deed acquire title to certain real estate situated in Lexington, Middlesex County, Massachusetts, which deed will be recorded herewith;

NOW, THEREFORE, WE, ALFRED P. TROPEANO of Lexington, Middlesex County, Massachusetts, and WILBUR C. NYLANDER, of Belmont, Middlesex County, Massachusetts hereby declare that we hold the said real estate and any and all other property of whatever nature, both real and personal, however described and wherever located which may hereafter be conveyed or come to us as Trustees under the Trust for the following purposes:

### I - TITLE OF TRUSTEES

The title of the Trustees hereunder shall be The T & N Realty Trust, and any property conveyed, sold or leased to them under that description shall be held under this instrument.

### II - POWERS OF TRUSTEES

(a) To acquire any parcels or parcel of real estate or interest therein, and manage, lease, develop, improve, and hold, mortgage or sell the same.

(b) To enter into, execute, adopt, and fulfill any contract for the erection, alteration, or repair of any structure upon real estate.

(c) To act as agents or trustees in the care and management of real and personal property committed to it by deed of trust or otherwise; to receive for investment the funds of any person, firm, or corporation or association, and to pay out the same as directed by such person, firm,

corporation, or association, and to deal and trade in stocks, bonds, securities, goods, wares, and merchandise of every description.

(d)  To have, purchase, convey, mortgage, and lease within or without the Commonwealth of Massachusetts such real or personal property as the purposes of the Trust may require.

(e)  To do any and all of the things as Trustees to the same extent and as fully as natural persons might or could do as principals, agents, contractors, trustees, developers, even though said express powers do not explicitly appear in this Declaration of Trust.

III - SHAREHOLDERS

There are shareholders other than the Trustees named.  The term "shareholder" used in this instrument shall mean the holder of a certificate of a share or shares issued under this Trust according to the records of the Trustees.  Every such holder of a share or shares becomes a party hereto upon receiving a certificate therefor and ceases to be a party hereto upon parting with the same.  The death of any shareholder during the continuance of this Trust shall not operate to determine the Trust nor shall it entitle the legal representative of such deceased shareholder to an account or to take any action in the courts or otherwise against the Trust or the Trustees; but the executors, administrators, or assigns of the decedent shall accede to all the rights of the decedent under this Trust upon proper proof of title.  Shares shall be transferable as against the Trustees only on the books of the Trustees and upon the surrender of the outstanding certificate; and until such transfer the Trustees may deal with the record owner thereof and such dealings shall be conclusive upon all the parties.

IV - LIMITATIONS OF POWERS OF TRUSTEES

The Trustees shall have no power to act as agent for beneficiaries hereunder and shall not bind them, any person or corporations contracting with the Trustees shall look only to the funds and property of this Trust for

- 2 -

payment under said contract, or for payment of any debt, mortgage, damage, judgment or decree, or for any money that otherwise may become due or payable by reason of any failure on the part of the Trustees, and neither the Trustees nor the beneficiaries under this instrument, either present or future, shall be personally liable therefor, nor shall the beneficiaries be liable for any act or obligation of the Trustees hereunder.

V - COMPENSATION OF TRUSTEES

In addition to all reasonable and proper expenses incurred as hereinbefore provided for the management of this Trust, the Trustees shall receive reasonable compensation for their services in said management.

VI - BOOKS OF ACCOUNT

The Trustees shall at all times keep full and proper books of account and records of their proceedings and doings, and a book showing the names and addresses of all shareholders hereunder, and the number of shares held by each, and all said books shall be open for the inspection of the shareholders at all reasonable times.

VII - RESIGNATION AND SUCCESSION OF TRUSTEES

Any Trustee hereunder or any successor may resign his Trust hereunder by written instrument, signed by him and acknowledged in the manner and form as required for the acknowledgment of deeds, such resignation to take effect when such instrument is recorded with Middlesex South Registry of Deeds. Upon resignation of a Trustee hereunder, he may appoint his successor by the instrument containing his resignation. In case of the death or disability of a Trustee hereunder, the shareholders under this Trust may elect a Trustee to fill the vacancy caused by such death or disability. A certificate of the election of such succeeding Trustee shall be filed in the said Registry of Deeds for Middlesex County, within thirty (30) days after election. The Trust Fund shall immediately vest in the succeeding Trustee upon such appointment or election and he shall thereupon hold the same with all the powers and duties thereby given.

- 3 -

## VIII - BOND AND PERSONAL LIABILITY OF TRUSTEES

No bond shall ever be required of the Trustees hereunder, and the Trustees and/or succeeding Trustees shall be responsible only for his own wilful breach of trust or misfeasance, and shall not be liable for any act or default of any co-trustee or agent.

## IX - ALTERATION OF THE TRUST

The shareholders may alter or add to this Trust Indenture or terminate this Trust if they deem it judicious so to do. The instrument setting forth such alteration, addition, termination shall be signed by the Trustees and shall set forth the vote of the shareholders authorizing said change, but the same shall be ineffectual until recorded in said Middlesex South District Registry of Deeds.

## X - DURATION AND TERMINATION

Upon the expiration of twenty (20) years from date hereof, or at such earlier time as hereinbefore provided, the Trustees shall terminate this Trust, and convey the property or distribute the proceeds among the beneficiaries ratably, or their heirs, executors, and administrators, after paying the Trustees' obligations, charges and expenses; but it shall be the duty of the Trustees, and their power shall continue for that purpose, to prosecute and defend all suits and other proceedings pending at time of such termination, and to sell and convey the net proceeds of any property acquired thereby and terminate this Trust, but the Trustees may always retain such funds or property of the Trust as they shall deem necessary to indemnify them because of costs and expenses of such proceedings, and against such decrees or judgments as have been or may be entered against them.

PROVIDED, HOWEVER, and it is especially declared, that the Trustees shall be under no obligation to terminate this Trust or convey the Trust Fund, except as hereinbefore provided.

IN WITNESS WHEREOF, We, the said Alfred P. Tropeano and Wilbur C. Wylander, Trustees as aforesaid, hereunto set our hands and seals this 26th day

- 4 -

of June, 1962.

*Alfred P. Tropeano*
Individually and as Trustee as aforesaid

*Wilbur C. Nylander*
Individually and as Trustee as aforesaid

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                          June    26  , 1962

Then personally appeared the above-named Alfred P. Tropeano and

Wilbur C. Nylander, Trustees as aforesaid, and acknowledged the foregoing

instrument to be their free act and deed, before me

*Frederick J. Conroy*
Notary Public

My commission expires: *December 5, 1964*

- 5 -



So. Middlesex Reg'd Court
District of Cambridge
REC'D FOR REGISTRATION

JAN - 8 1964

Noted on Cert. No. 143, P.
Edmund C. Burgess
Clerk            Ass't. Recorder

T & N REALTY TRUST

FROM THE OFFICE OF
ALFRED P. TROPEANO
ATTORNEY AND COUNSELLOR AT LAW
THE PROFESSIONAL BUILDING
114 WALTHAM STREET
LEXINGTON, MASS.

## PARTNERSHIP AGREEMENT

WHEREAS Torsten H. Reenstierna of Arlington, Middlesex County, Commonwealth of Massachusetts, and Alfred P. Tropeano, of Lexington, in said County and Commonwealth, are co-partners under an agreement dated January 5, 1955, and the owners of certain lands situated in said Lexington, and being the land referred to in said partnership as "Partnership A"; and

WHEREAS Torsten H. Reenstierna is desirous of selling his interest in said land, and Wilbur C. Nylander, of Belmont, Louis Tropeano, Joseph C. Tropeano and Philip L. Tropeano, all of said Lexington, are desirous of purchasing the said Reenstierna's interest;

NOW, THEREFORE, THIS PARTNERSHIP AGREEMENT.

This partnership agreement is made on this 8 day of January, 1964.

1.  Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano, Joseph C. Tropeano and Philip L. Tropeano will become and remain partners in the business of acquiring the title to the land situated at the intersection of Waltham Street and Worthen Road, in said Lexington, and to construct apartments on said land, for the term of thirty years from the date hereof.

2.  The firm name of the partnership shall be "Captain Parker Arms".

3.  The business of the partnership shall be carried on in the Town of Lexington, Middlesex County, Commonwealth of Massachusetts, and at such other place or places as the partners shall hereinafter determine.

4.  In order to dispense with the necessity of obtaining signatures of the partners' respective wives and of all of the partners' signatures to deeds, mortgages, leases and other documents, the title to the real estate

shall be taken in the name of the partners' nominee, and in accordance with G. L. Chapter 108A, Section 10 (4), namely, Wilbur C. Nylander and Alfred P. Tropeano, Trustees of the T & N Realty Trust under a Declaration of Trust dated June 26, 1962, which Trust has not been recorded and has no present assets and is to be amended by the Trustees thereof to designate that they will hold the real estate in trust for the benefit of this partnership.  The said Wilbur C. Nylander and Alfred P. Tropeano by signing this Agreement of partnership covenant and agree that they will not acquire any other property in the name of said Trust excepting that which pertains to this partnership and that they will not further amend said Trust to designate any beneficiaries other than this partnership.

5.  All net income to the Trust and all losses resulting to the Trust or any deficiencies shall be borne by the partners in the following percentages:  Alfred P. Tropeano - 40% - Wilbur C. Nylander, Louis Tropeano, Joseph C. Tropeano, and Philip L. Tropeano - 15% each.

6.  The parties hereto agree that in the event any lending institution requires personal signatures on any mortgage note or mortgage deed that he will affix his signature to such documents.

7.  All applicable provisions and sections of General Laws Chapter 108A of the  Commonwealth of Massachusetts are herein incorporated by reference and made a part hereof.

_____
Alfred P. Tropeano

_____
Louis Tropeano

_____
Wilbur C. Nylander

_____
Joseph C. Tropeano

_____
Philip L. Tropeano

A  -2-

<u>MODIFICATION</u>

WHEREAS, Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano, Joseph C. Tropeano (now deceased), and Philip Tropeano entered into a Partnership Agreement dated January 8, 1964, a copy of which is hereto attached; and

WHEREAS, Joseph C. Tropeano is now deceased.

NOW, THEREFORE, this Modification and affirmation of the Partnership by the surviving partners.

Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano and Philip Tropeano agree:

Definitions -

Partner:  Shall be the named partner and if he assigns or sells to his wife, children or grand-children, the said successors as their interest may appear.

Trustee:  The Trustees of the T & N Realty Trust, title holder of the partnership assets.

1.  Co-Partners.

That the partnership agreement dated January 8, 1964, was not dissolved or terminated by the surviving partners when Joseph C. Tropeano died, has been and is in full force with exception of Joseph's interest.

2.  Rights of Deceased Former Partner.

The 15% interest of the late Joseph C. Tropeano is to be paid or distributed as provided in his will allowed for probate.

3.  Death of an Existing Partner.

The death of an existing partner shall not terminate the partnership and his interest will be held by the persons or entities set forth on the deceased partner's schedule attached and made a part hereof which bears his signature and they shall have all the rights of the deceased partner.  Said person or entitles shall be to those set forth in 5 hereunder.

Upon the death of a partner, the partners herein agree and so instruct the Trustees to execute whatever documents may be necessary to permit said representative to borrow money to pay estate taxes.

If there is sufficient cash held by the Trustees, the partners agree that the Trustees may loan monies to the representative of the deceased partner who have or will file Federal and State Estate Tax forms bearing interest at the then prime interest rate of Shawmut Boston plus 1%. Said loan shall be paid back to the Trust or deducted from the distributive share of said deceased partner.

4. Termination.

The partnership can be terminated by a vote of not less than 60% interest of 100% and upon such vote the partners shall so notify the Trustees to liquidate the assets and distribute the net principal and accumulated income as provided by number 8 hereunder.

5. Partner's Rights to Assign or Sell to Certain Individuals.

Any partner shall have the right to assign or to sell any portion of his interest to his wife or his children or grandchildren, without the consent of the other partners, who may take title in their own name or a separate entity in which they will be the sole beneficiary.

6. Partners Right to Assign or Sell to Others.

Prior to any assignment or sale of any partner's interest or those having his interest to others than the aforesaid, the assigning or selling partner shall offer the same in writing with a certified copy of the terms offered to him by the proposed assignee or purchaser. The partners shall have thirty (30) business days to accept or reject the offer. If they do not accept the offer, the assignment or sale to the third party shall only be made with the consent of the other partners and those claiming through them which consent will not be unreasonably withheld.

-2-

7.  Voting Minors Interest.

If any holder of an interest in the partnership is a minor, his interest during minority shall be voted by his father and if no father, by his mother and if no mother, by his legal guardian.

8.  Distribution on Termination.

In the event of the dissolution and termination of the partnership, the Trustees shall be instructed to proceed to the liquidation of the partnership and the proceeds of the liquidation shall be applied and distributed in the following order of priority:

(a)  Debts.  To the payment of the debts and liabilities of the partnership (other than any loans or advances that may have been made by the partners to the partnership) and the expenses of liquidation.

(b)  Reserves.  To the setting up of any reserves which the partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the partnership arising out of or in connection with the operation and liquidation of the partnership. Any reserves shall be held by the Trustees as "Escrowee", to be held by them for the purpose of disbursing the reserves in payment of any of the contingencies, and, at the expiration of the period the partners shall deem advisable and have so instructed the Trustees to disburse the balance thereafter remaining to the partners.

(c)  Partner loans.  To the repayment of any loans or advances that may have been made by any of the partners to the partnership, but if the amount available for such repayment shall be insufficient, then pro rata on account thereof.

$C$  -3-

(d)  Balance.  Any balance remaining shall be distributed among all partners as follows   according to their percentage holding:

(aa)  Cash.  In the event that the partnership assets shall have been sold, the net proceeds shall be distributed to each partner in satisfaction of his interest in the partnership.

(bb)  The percentage of distribution as to each partner is as follows:

| | |
|---|---|
| Alfred P. Tropeano | 40% |
| Wilbur C. Nylander | 15% |
| Louis Tropeano | 15% |
| Philip Tropeano | 15% |

In addition, distribution to the holders of Joseph C. Tropeano interest:  15%

9.  Modification of Partners Schedule.

Any partner or successor as set forth in his schedule, may modify or amend his "Schedule" referred to in 3 above and hereto attached, by delivering a signed copy to the other partners, but said modification shall be limited to the category of individuals or entitles referred to in 5 above.

Except as herein modified, the said partnership is hereby affirmed, dated this _____11_____ day of March, 1987.

_____
Alfred P. Tropeano

_____
Wilbur C. Nylander

_____
Louis Tropeano

_____
Philip Tropeano

C -4-

LAW OFFICES OF FREDERICK J. CONROY

THE PROFESSIONAL BUILDING
114 WALTHAM STREET
LEXINGTON, MASSACHUSETTS 02421
(781) 862-8060

FREDERICK J. CONROY, P.C.
ed@conroyandconroy.net

August 21, 2003

TELECOPIER
(781) 861-0.

To:

Charlene Dorman
320 Arlington Way
Menlo Park, CA 94025

Bianca Dorman
320 Arlington Way
Menlo Park, CA 94025

Lydia Dorman
320 Arlington Way
Menlo Park, CA 94025

Todd Dorman
25 W. 70th Street - Apt 2A
New York, NY 10025

Re:  Retirement from Captain Parker Arms Partnership

Please be informed that we, Philip Tropeano, Peter Tropeano and Carolyn Patten wish to retire from the Captain Parker Arms Partnership effective October 1, 2003.

Pursuant to the provisions of M.G.L. Ch 108A, Sec. 29, the change in our relationship effected by our retirement from the partnership is to be treated as dissolution of the partnership.

Pursuant to the provisions of Chapter 108A, Section 42, as retiring partners we wish to have the value of our interests ascertained as of the date of dissolution (that is, October 1, 2003).

There is enclosed herewith an Appraisal by Eric Reenstierna Associates showing the value of the land and buildings of $18,800,000.00.  The partnership accountants, using generally recognized accounting principals, can determine the value of our partnership shares based upon all assets less all liabilities of the partnership as of that date.  We have selected the date of the first of the month for easier calculation of the various accounts of the partnership.

Charlene Dorman, et als
August 21, 2003
Page 2

As of October 1, 2003 Philip Tropeano, Peter Tropean and Mary C. Tropeano will submit resignations as Trustees of T & N Realty Trust, the entity holding title to the real estate of the partnership for the benefit of the partners.

We recognize that in order to terminate the partnership, a vote of 60% of the partners is required. In the absence of this 60% vote, you will of course continue the partnership as the sole partners and we will be general creditors of the partnership for our partnership interest. In this respect, your attention is invited to the provisions of Chapter 108A, Section 42 for the rights of a retired partner (that is, when any partner retires, and the business is continued, unless otherwise agreed, he or she may have the value of his or her interest ascertained as of the date of dissolution and shall receive as an ordinary creditor an amount equal to the value of his or her interest in the dissolved partnership with interest, or at his or her option, in lieu of interest, the profits attributable to the use of his or her rights in the property of the dissolved partnership). We desire of course to be paid in full.

If you wish to vote to terminate the partnership, we would participate in that vote in the affirmative. In that event, there would be a winding up of the affairs of the Partnership.

> Respectfully,
> Philip Tropeano,
> Peter Tropeano, and
> Carolyn Patten
> By their attorney,

FJC:f
Enclosure

Frederick J. Conroy

PETRO GROUP, INC. vs. PREMIER PETROLEUM DISTRIBUTORS, INC.

CIVIL ACTION NO. **03-4420** BLS

MEMORANDUM AND ORDER ON APPLICATION FOR A DECLARATION REGARDING APPRAISAL BASIS

> Petro Group and PPD shall ... obtain an appraisal from a        qualified business appraiser of the value of PPD's Petro Group shares on the basis of a desired sale by a willing Buyer and a willing Seller... .

These simple words appear in Section 2(b) of a Stock Purchase and Sale Agreement (the "Agreement") between Petro Group, Inc. ("Petro Group") and Premium Petroleum Distributors, Inc. ("PPD"). Petro Group and PPD now seek a declaration from the Court as to whether the appraisal called for should be performed on a "fair value" basis or on a "fair market value" basis.

BACKGROUND

The Agreement is part of a settlement of certain litigation between Petro Group and PPD, and another settlement agreement between PPD and one Raymond Cozzi ("Cozzi"). The Court will only set forth here those facts necessary to render the declaration sought. The parties are fully aware of the details of the settlements and litigation involved.

Cozzi was a shareholder of PPD. When Cozzi settled litigation between him and PPD he transferred his shares of PPD, as well as all shares of stock that he held in Petro Group, to PPD. Petro Group is a closely held Massachusetts corporation in which Cozzi, at the time of his

settlement with PPD, held a 33 1/3% interest. There were allegations in the litigation between PPD and Cozzi that Cozzi made improper acquisitions of what were PPD corporate opportunities.

The settlement agreement between Petro Group and PPD included a provision reading: "PPD agrees to sell its one-third sharehold interest in Petro Group to Petro Group pursuant to the Stock Purchase and Sale Agreement annexed hereto as Exhibit B." PPD's one-third interest in Petro Group consisted of the shares transferred to it from Cozzi. "Exhibit B" referred to in the Petro Group/PPD settlement agreement is the Agreement first referenced above.

On the inability of Petro Group and PPD to reach agreement on the selection and obtaining of the separate appraisals called for by the Agreement, and at their specific request, this Court designated Frank R. Zito ("Mr. Zito") of Tofias PC, as the appraiser in connection with the determination of value of the Petro Group stock. Apparently, Mr. Zito has completed his background work and is ready to finish the appraisal following the resolution of whether he should us a "fair value" approach or a "fair market value" approach.

DISCUSSION

At the outset, the Court makes two things clear. First, by this declaration the Court is not dictating to Mr. Zito the manner by which he should conduct his appraisal. He, not the Court, is the expert on that matter.

Second, in determining whether the fair value approach or the fair market value approach should be applied, the Court is rendering its declaration based solely on the information contained in the parties' documents and has not considered any extrinsic evidence as to the meaning of the documentary language.

-2-

The distinction between a fair value approach and a fair market value approach can result in

significant differences in the ultimate valuation. The former - fair value - approach essentially appraises the value of the enterprise in question. The latter - fair market value - approach appraises the value of the enterprise and then considers discounts that may be applied in the market. Two possible discounts are in issue here: the minority interest discount and the lack of marketability discount.

The minority interest discount comes into play when a minority interest in a closely held corporation is being acquired. Since the amount being acquired is not a majority interest, it may lack control for the acquirer and, therefore, may sell for a lower amount.

The lack of marketability discount is a discount that takes into account the fact that the stock in a corporation that has no ready market will be harder, and slower, to sell and, therefore, not worth as much.

Simply stating the existence of the two discounts under the fair market value approach does an analytical injustice to a much more complicated situation. See, e.g., "Shareholder Oppression and `Fair Value': of Discounts, Dates, and Dastardly Deeds in the Close Corporation," 54 Duke L.J. 293 (2004); "Valuing Closely Held Stock: Control Premiums and Minority Discounts," 31 Emory L.J. 137 (1982); I.R.S. Revenue Ruling 59-60.

The case law, too, is all over the lot, and provides no bright line test. See, e.g., Annotation, Propriety of Applying Minority Discount to Value of Shares Purchased by a Corporation or its Shareholders from Minority Shareholders, 13 A.L.R. 5th 840 (1993).

Cogent positions can be taken either in favor of the fair value or the fair market value approach depending primarily on the context in which the appraisal is being made. For example,

-3-

if the context is the result of a court ordered buy-out of a minority shareholder who has been frozen out of a closely held corporation, the minority interest and the lack of marketability discounts are generally inappropriate. On the other hand, in a situation that contemplates a transfer that may be subject to marketplace influences, such as a transaction between a willing buyer and willing seller who are otherwise strangers to each other and who hold no other interest in the entity, the minority discount and the marketability discount each may have a role to play.

Here, neither the Court nor Mr. Zito are looking at either of the foregoing situations. The transfer in issue is mandated by an agreement settling litigation and there is a complex history among the parties involved that includes not just Petro Group and PPD, but also the individual owners of Petro Group and Cozzi, who themselves were deeply involved in the underlying transactions and litigation. Further, Petro Group, the buyer, is not a stranger in some hypothetical marketplace. Rather, Petro Group is buying back its own stock. Thus, while it is buying a minority interest, Petro Group is in actuality strengthening its majority interest and control of itself.

To the extent that this Court, if it were performing the appraisal itself, might have significant discretion and exercise a broad range of equity powers in addressing compensation in circumstances like that faced here, it would be inclined to conclude that equity would dictate that no minority discount should be applied. As noted above however, it is Mr. Zito, not the Court, who is making the appraisal here.

Still further, the Court observes that this transaction is dictated by an agreement. For that reason, there seems no basis to apply a marketability discount. There is no market-influenced delay in this matter.

-4-

All of the foregoing notwithstanding, the Court, in rendering the declaration sought, must be guided as much as possible by its determination of the intent of the parties as revealed from the language they chose and the context of the situation.
DECLARATION

This is not an oppression-forced buy-out of a frozen out minority shareholder. Nor is it an attempt to simulate an open market purchase and sale. The transaction is compelled as part of a settlement agreement; the stock came from a third party, through another settlement; and the buyer is the corporation itself and, therefore, after the purchase will not be left holding a reduced-value minority interest.

When the corporation reacquiring its own stock is a close corporation, the purchase is subject to the additional requirement . . . that the stockholders, who, as directors or controlling stockholders, caused the corporation to enter into the stock purchase agreement, must have acted with the utmost good faith and loyalty to the other stockholders.

Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 579, 598 (1975).

Any rule of law that gave the shareholders less than their proportionate share of the whole firm's fair value would produce a transfer of wealth from the minority shareholders to the shareholders in control.

BNE Massachusetts Corp. v. Sims, 32 Mass. App. Ct. 190, 197 (1992).

So what did the parties mean when they said: "Petro Group and PPD shall . . . obtain an appraisal from a qualified business appraiser of the value of PPD's Petro Group shares on the basis of a desired sale by a willing Buyer and a willing Seller." (Emphasis added.) This Court believes, and declares, that what was meant was that the enterprise value of Petro Group was to be determined as if 100% of its stock was being sold at a specific time to a willing buyer by a willing seller. Thus, there should be no minority interest discount or lack of marketability

-5-

discount in arriving at that enterprise value. The value of 33 1/3% then should be arrived at, again with no minority discount or marketability discount, by a simple mathematical exercise.


Allan van Gestel
Justice of the Superior Court

August 29, 2005

THE  T & N REALTY TRUST AMENDMENT

WHEREAS by Article IX it is provided for the alteration of the T & N Realty Trust; and

WHEREAS by a meeting of all the shareholders of said Trust the Trustees were duly authorized to amend and alter the Trust as hereunder set forth,

NOW, THEREFORE, THIS AMENDMENT.

Alfred P. Tropeano of Lexington and Wilbur C. Nylander of Belmont, both of Middlesex County, Massachusetts, Trustees under an Indenture of Trust entitled "The T & N Realty Trust" dated the 26th day of June, 1962, filed with the Land Registration Office for the Middlesex South Registry District as Document No. 401177, in accordance with the unanimous vote of all the shareholders hereby change and amend said Trust as follows:

By striking out under Article VII entitled "Resignation and Succession of Trustees" the third sentence thereof, namely, "A certificate of the election of such succeeding Trustee shall be filed in the said Registry of Deeds for Middlesex County within thirty (30) days after election" and substituting in lieu thereof "A certificate of the election of such succeeding Trustee shall be filed with the Land Registration Office for the Middlesex South Registry District."

By striking out Article IX as it appears therein and substituting in lieu thereof the following: "IX.  Alteration of the Trust.  By a majority vote of the shareholders having attained the age of 21 or more or the Trustees may alter or add to this Trust Indenture or terminate this Trust if they deem it judicious so to do.  The instrument setting forth such alteration, addition, termination shall be signed by the Trustees and shall set forth the vote of the shareholders authorizing said change, and a statement by the Trustees to that effect shall be conclusive and binding on all persons, but the same shall be ineffectual until filed with the Land Registration Office for the Middlesex South Registry District."

Under Article X "Duration and Termination" by striking out "Upon the expiration of twenty (20) years from the date hereof" and substituting in its place "Upon the expiration of twenty (20) years after the death of the survivor of Alfred P. Tropeano and of Wilbur C. Nylander."

Notwithstanding anything to the contrary appearing in the said Trust, the said Trust is amended or added to as follows: In addition to the powers therein granted and without limiting the generality of the foregoing, the Trustees may borrow money in the name of the Trust and give as security therefor notes, mortgages, pledges, security agreements and any and all other instruments that the Trustees in their discretion may consider expedient with all terms, provisions and conditions in and to all instruments to be left to the absolute discretion of the Trustees and even though the obligation or obligations which said mortgage or mortgages secure extend beyond the period for the duration of the Trust. Excepting as herein amended, modified or amplified the aforesaid Indenture of Trust is hereby confirmed.

IN WITNESS WHEREOF, we, the said Alfred P. Tropeano and Wilbur C. Nylander, Trustees as aforesaid, hereunto set our hands and seals, this 12th day of February, 1965.

_Alfred P. Tropeano_

_Wilbur C. Nylander_
Trustees as aforesaid

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                        February 12  , 1965

Then personally appeared the above-named Alfred P. Tropeano and Wilbur C. Nylander, individually and as Trustees aforesaid, and acknowledged the foregoing instrument to be their free act and deed, before me

_____
Notary Public
My commission expires: Jan 30, 1971

- 2 -



T & W Realty Trust Amendment

So. Middlesex Land Court
Registry District
REC'D FOR REGISTRATION
FEB 26 1965
Rejected on Page No.
Reg. Bk.
Clerk.
Edmund C. Buckley
Ass't Recorder

FROM THE OFFICES OF
ALFRED P. TROPEANO
ATTORNEY AND COUNSELLOR AT LAW
THE PROFESSIONAL BUILDING
114 WALTHAM STREET
LEXINGTON 73, MASS.

<u>T & N REALTY TRUST</u>
<u>AMENDMENT TO TRUST</u>

ALFRED P. TROPEANO, of Lexington, County of Middlesex and Commonwealth of Massachusetts, and WILBUR C. NYLANDER, of Belmont in said County and Commonwealth, Trustees of T & N Realty Trust dated June 26, 1962, and registered January 8, 1964, being Document #401177, filed in the Land Registration Office of South Registry District and referred to in Certificate 113382, Book 697, Page 32, in accordance with Article IX and by vote of the beneficiaries (sometimes referred to in said trust as Shareholders) hereby amend said trust as follows:

A.  The word "Shareholder and the word Beneficiaries" have been interchangeably used in this trust and the word shareholder(s) should have been beneficiary(ies) and, therefore, this amendment corrects the same as follows:

(1)  The words "shareholder(s) appearing in Articles III, VI, VII, IX and any other article where the said word appears are deleted and the word beneficiary or beneficiaries inserted in lieu thereof.

(2)  The word beneficiaries appearing in Articles IV and X are affirmed.

B.   Article III is hereby deleted and the following
inserted in lieu thereof:

Article III - Beneficiaries

The beneficiaries are the successors to a partner-
ship organized January 8, 1955, and modified and
confirmed by the co-partners being Alfred P. Tropeano,
Wilbur C. Nylander, Louis Tropeano, Joseph C. Tropeano,
and Philip L. Tropeano referred to in a written co-
partnership agreement dated January 8, 1964, named
"Captain Parker Arms".

C.   Article X - Duration and Termination

By striking out "Upon the expiration of twenty (20) years
from the date hereof" and inserting in lieu thereof:  "Upon the
expiration of 10 years from the date of death of the survivor of
the five co-partners referred to in Article III above"

D.  By adding Article XI  "Trustees"

In addition to the trustees Alfred P. Tropeano and
Wilbur C. Nylander, Louis Tropeano and Laurence L. Tropeano, both
of said Lexington, are elected and appointed as trustees.

-2-

E.  By adding Article XII  "Signatures"

(1)  The signature of two trustees shall be required
on all deeds, mortgages, notes, agreements for
sale or purchase of land and of leases.

(2)  The signature of one trustee shall be required on
all checks either as maker or endorser.

Except as herein modified, the trust is by vote hereby
affirmed.

IN WITNESS WHEREOF,  we ALFRED P. TROPEANO and WILBUR C.
NYLANDER have hereunder set our hands and seals on this fifth day
of February, 1982.

_____
ALFRED P. TROPEANO, Trustee

_____
WILBUR C. NYLANDER, Trustee

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                February 5, 1982

Then personally appeared the above-named Alfred P. Tropeano
and Wilbur C. Nylander and acknowledged the foregoing to be their
free act and deed, before me

_____
Notary Public
My commission expires: 2-13-87

-3-

## ACCEPTANCE BY TRUSTEES

We the undersigned LOUIS TROPEANO and LAURENCE L. TROPEANO being the elected trustees herein named hereby accept our appointment and election as said Trustees.

_Louis Tropeano_
LOUIS TROPEANO

_Laurence L. Tropeano_
LAURENCE L. TROPEANO



620093

T & N REALTY TRUST

AMENDMENT TO TRUST

MIDDLESEX SOUTH DISTRICT REGISTRY DISTRICT OF THE LAND COURT

AT 9 H 55 M A

FEB 11 1992

NOTED ON CERT. NO. 113382

REG. BK. 627  PAGE 32

CLERK.

JOHN F. ZAMPARELLI
ASSISTANT RECORDER

Rgt $20.00
20.00
Cert 20.00
60.00

ALFRED P. TROPEANO
ATTORNEY AND COUNSELLOR AT LAW
THE PROFESSIONAL BUILDING
114 WALTHAM STREET
LEXINGTON, MASSACHUSETTS 02173

Endorsed By _____
Checked By _____

REGISTRANT

NAME  Alfred P. Tropeano    862-1773  TEL

STREET ADDRESS  114 Waltham St

CITY OR TOWN  Lexington  Mass 02173

Exhibit H

8 8 4 4 0 1

## T & N REALTY TRUST

## AMENDMENT TO TRUST

ALFRED P. TROPEANO, LOUIS TROPEANO AND LAURENCE L.
TROPEANO all of Lexington, County of Middlesex and Commonwealth of
Massachusetts (for appointment and acceptance of Louis Tropeano
and of Laurence L. Tropeano, see Doc. No. 620093) Trustees of
T & N Realty Trust dated June 26, 1962, and registered January 8,
1964 being Document No. 401177, filed in the Land Registration
Office of South Registry District and referred to in Certificate
113382, Book 697, Page 32, in accordance with Article IX and by
vote and assent of the beneficiaries hereby amend said trust as
follows:

 ARTICLE XI: In addition to Trustees named above, Philip
 L. Tropeano of Beverly, MA and Peter Tropeano of said
 Lexington are elected and appointed as Trustees.

 Except as herein modified, the trust is hereby
affirmed.

 IN WITNESS WHEREOF, we ALFRED P. TROPEANO, LOUIS
TROPEANO and LAURENCE L. TROPEANO have hereunder set our hands
and seals on this sixth day of August, 1992.

      _____
      ALFRED P. TROPEANO, Trustee

      _____
      LOUIS TROPEANO, Trustee

      _____
      LAURENCE L. TROPEANO, Trustee

- 1 -

8 8 4 4 0 1

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss                                    August 6, 1992

Then personally appeared the above-named Alfred P. Tropeano and acknowledged the foregoing to be his free act and deed, before me.

Notary Public
My commission expires: 1-28-74

- 2 -

8 3 4 4 0 1

## ACCEPTANCE BY TRUSTEES

We the undersigned PHILIP L. TROPEANO and PETER TROPEANO being the elected trustees herein named hereby accept our appointment and election as said Trustees.

_____
PHILIP L. TROPEANO

_____
PETER TROPEANO

88440 1

SO. MIDDLESEX LAND COURT
REGISTRY DISTRICT
RECEIVED FOR REGISTRATION

ON 10/20/92 AT 01:19:12    60.00 JHS

NOTED ON:

CERT 0113302  BK    697  PG    32

862-1773

ALFRED P. TROPEANO, ESQ.
THE PROFESSIONAL BUILDING
114 WALTHAM STREET

Exhibit I

: 1 2 7 9 4 2

## T & N REALTY TRUST

## AMENDMENT TO TRUST

LAURENCE L. TROPEANO and PETER TROPEANO, both of Lexington, Middlesex County, Massachusetts (for appointment and acceptance of Laurence L. Tropeano see Document No. 620093, for Peter Tropeano see Document No. 884401) and PHILIP L. TROPEANO, of Beverly, Essex County, Massachusetts (for appointment and acceptance of Philip L. Tropeano see Document No. 884401) Trustees of T & N REALTY TRUST under a Declaration of Trust dated June 26, 1962 and filed with the Middlesex South District Land Registration Office as Document No. 401177 and referred to in Certificate No. 113382 in Registration Book 697, Page 32, in accordance with Article IX and said Trust and by vote and assent of the beneficiaries hereby amend said trust as follows:

ARTICLE XI:  In addition to the Trustees named above, MARY C. GANNETT, of Essex, Essex County, Massachusetts is elected and appointed as a Trustee.

Except as herein modified, the trust is hereby affirmed.


IN WITNESS WHEREOF, we, LAURENCE L. TROPEANO, PETER TROPEANO, and PHILIP L. TROPEANO, being all the remaining Trustees, (Alfred P. Tropeano, Wilbur C. Nylander, Louis Tropeano and Joseph C. Tropeano, all being deceased) have hereunder set our hands and seal

1 1 2 7 9 4 2

seals this _____ October, 1998.

_____
Laurence L. Tropeano, Trustee

_____
Peter Tropeano, Trustee

_____
Philip L. Tropeano, Trustee

### ACCEPTANCE BY TRUSTEE

I the undersigned MARY C. GANNETT being the elected Trustee herein named, hereby accepts my appointment and election as said Trustee.

_____
Mary C. Gannett

### COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss                                October, Y, 1998

Then personally appeared the above name Laurence L. Tropeano and acknowledged the foregoing to be his free act and deed, before me

_____
Anthony L. Mancini-Notary Public
My commission expires: 1-12-01

1 1 2 7 9 4 2

P 591 F32

SO. MIDDLESEX LAND COURT
REGISTRY DISTRICT
RECEIVED FOR REGISTRATION

ON 01/05/00 AT 12:06:33    80.00 INS

NOTED ON:
CERT 01:93802    BK    597    PG    32

ANTHONY L. MANCINI, ESQ.
114 Waltham St.



**1278062**

Page 1 of 8

## AMENDMENT & APPOINTMENT OF TRUSTEES OF THE T & N REALTY TRUST

WE, the undersigned duly authorized Trustees of the T & N Realty Trust, created by written Declaration of Trust dated June 26, 1962, as amended, and filed as Document #401177 with Middlesex County Registry of Deeds, Southern District, Registered Land Section, as directed by action of a majority vote of the beneficiaries of the T & N Realty Trust, acting by virtue of power granted by Amendment to Trust dated February 12, 1965, and filed as Document #415806 with Middlesex County Registry of Deeds, Southern District, Registered Land Section, hereby amend the Trust as follows and confirm the appointment of additional Trustees as follows:

1)  That the number of Trustees of the T & N Realty Trust be changed from five to seven.

2)  That additional Trustees, Lydia Dorman and Bianca Dorman be appointed Trustees.

3)  That the signatures of any four trustees only shall be required on all deeds, mortgages, loans, contracts, and other instruments relating to the conduct of the business of the Trust. The Trustees shall further be authorized to designate any two trustees to sign checks, make deposits, and perform such other duties as directed by the said Trustees.

*Directed, Voted, Accepted and Assented to,*

WITNESS our hands and seal

6 - 16 - 03
Date

6/13/03
Date

6/16/03
Date

6/16/03
Date

_Charlene Dorman_
Charlene Dorman, Trustee

_Todd Dorman_
Todd Dorman, Trustee

_Lydia Dorman_
Lydia Dorman, Trustee    *new*

_Bianca Dorman_
Bianca Dorman, Trustee    *new*

_TR_
_Philip L. Tropeano, TR._

STATE OF CALIFORNIA

County San mateo          June 16 , 2003

Then personally appeared the above named **Charlene Dorman** and
acknowledged the foregoing instrument to be her free act and
deed, before me.



_Patricia E Benson_
Notary Public
My Commission Expires: Aug 7, 04

STATE OF NEW YORK

County Queens          June 13 , 2003

Then personally appeared the above named **Todd Dorman** and
acknowledged the foregoing instrument to be his free
deed, before me.

Notary Public
My Commission Expires:

STATE OF CALIFORNIA

County San mateo          June 16 , 2003

Then personally appeared the above named **Lydia Dorman** and
acknowledged the foregoing instrument to be her free act and
deed, before me.

_Patricia E Benson_
Notary Public
My Commission Expires: Aug 7, 04

STATE OF CALIFORNIA

County San mateo          June 16 , 2003

Then personally appeared the above named **Bianca Dorman** and
acknowledged the foregoing instrument to be her free act and
deed, before me.

_Patricia E Benson_
Notary Public
My Commission Expires: Aug 7, 04



## VOTE OF MAJORITY OF BENEFICIARIES OF THE T & N REALTY TRUST

WE, the undersigned beneficiaries of the T & N Realty Trust, created by written Declaration of Trust dated June 26, 1962, as amended, and filed as Document #401177 with Middlesex County Registry of Deeds, Southern District, Registered Land Section, representing a majority vote of the beneficiaries of the T & N Realty Trust, by virtue of power granted by Amendment to Trust dated February 12, 1965, and filed as Document #415806 with Middlesex County Registry of Deeds, Southern District, Registered Land Section, hereby adopt the following votes:

**VOTED:**    That the number of Trustees of the T & N Realty Trust be changed from five to seven.

**VOTED:**    That additional Trustees, Lydia Dorman and Bianca Dorman be appointed Trustees.

**VOTED:**    That the signatures of any four trustees only shall be required on all deeds, mortgages, loans, contracts, and other instruments relating to the conduct of the business of the Trust. The Trustees shall further be authorized to designate any two trustees to sign checks, make deposits, and perform such other duties as directed by the said Trustees.

**VOTED:**    That four or more Trustees shall execute a recordable document evidencing this vote and record same at the Middlesex County Registry of Deeds, Southern District, Registered Land Section forthwith.

In all other manner, we hereby confirm and ratify the provisions of that original Trust Agreement dated June 26, 1962 as amended.

WITNESS our hands and seal

_June 16 2003_
Date

_6/13/03_
Date

_6/16/03_
Date

_6/16/03_
Date

_Charlene Dorman_
Charlene Dorman

_Todd Dorman_
Todd Dorman

_Lydia Dorman_
Lydia Dorman

_Bianca Dorman_
Bianca Dorman

**STATE OF CALIFORNIA**

County San mateo                    June 16 , 2003

Then personally appeared the above named **Charlene Dorman** and acknowledged the foregoing instrument to be her free act and deed, before me.



**Notary Public**
**My Commission Expires:** Aug 7,04

PATRICIA E. BENSON
COMM. # 1273279
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Exp. Aug. 7, 2004

**STATE OF NEW YORK**

County _Queens_                          June 13, 2003

Then personally appeared the above named **Todd Dorman** and
acknowledged the foregoing instrument to be his free act and
deed, before me.

_____
Notary Public
My Commission Expires:

NAZREEN AGOODA
Notary Public, State of New York
No. 01AG6035907
Qualified in Queens County
Commission Expires August 13, 2005

STATE OF CALIFORNIA

County San Mateo                June 16 , 2003

Then personally appeared the above named **Lydia Dorman** and
acknowledged the foregoing instrument to be her free act and
deed, before me.



Notary Public
My Commission Expires: Aug 7, 04

PATRICIA E. BENSON
COMM. # 1273279
NOTARY PUBLIC · CALIFORNIA
ALAMEDA COUNTY
My Comm. Exp. Aug. 7. 2004

**STATE OF CALIFORNIA**

County San Mateo                    June 16 , 2003

Then personally appeared the above named **Bianca Dorman** and
acknowledged the foregoing instrument to be her free act and
deed, before me.

_____
Notary Public
My Commission Expires: Aug 7,04



DOCUMENT 1278062

SO. MIDDLESEX LAND COURT
REGISTRY DISTRICT
RECEIVED FOR REGISTRATION

ON 06/19/03 AT 11:57:19 225.00 JMC

NOTED ON:

CERT 0113882    BK    697    PG    32

Kevin M. Sargis   781.863.0719
NAME                          TEL.

STREET ADDRESS

CITY OR TOWN                          ZIP