# EXHIBIT B

NO. 05-1435

## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

PHILIP L. TROPEANO, PETER TROPEANO
and CAROLYN PATTON,

Plaintiffs-Appellants,

v.

CHARLENE DORMAN, BIANCA DORMAN,
LYDIA DORMAN, TODD DORMAN, T&N REALTY TRUST and
CAPTAIN PARKER ARMS PARTNERSHIP,

Defendants-Appellees.

ON APPEAL FROM AN ORDER ENTERED BY THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

## REPLY BRIEF FOR THE PLAINTIFFS-APPELLANTS PHILIP L. TROPEANO, PETER TROPEANO and CAROLYN PATTON

Thomas M. Ciampa
CIAMPA & ASSOCIATES
45 Bromfield Street, Suite 200
Boston, MA 02108
(617) 742-5955

Attorney for Plaintiffs-Appellants
PHILIP L. TROPEANO, PETER
TROPEANO and CAROLYN
PATTON

August 1, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT ........................................................................................................ 1

1.   Because the Thirty-Year Term of the Partnership Agreement
     Terminated on January 8, 1994, Plaintiffs Need Not Resort to
     Massachusetts G.L. c. 108A, §42 ...................................................... 1

2.   Even if Section 31(1)(b) Did Require Circumstances Where the Partners
     Have Not "Otherwise Agreed," No Reasonable Fact-Finder Could Conclude
     That the Partners Reached the Agreement Proposed By Defendants ............. 2

3.   The Osborne Case Does Not Advance Defendants' Argument. ...................... 6

4.   Paragraph 6 of the Partnership Agreement is, In Fact, Entirely Inconsistent
     With a Partnership at Will.. ............................................................................ 8

5.   Prior Counsel's Statement is Neither As Clear Cut Nor As Binding As
     Defendants Suggest .......................................................................................... 9

6.   After the Express Term of the Partnership Agreement Expired on January 8,
     1994, the Rights and Duties of the Partners Remained the Same So Far as
     Consistent With A Partnership At Will............................................ 11

CERTIFICATE OF SERVICE............................................................ 14

i

# TABLE OF AUTHORITIES

## CASES

Adams v. Jarvis, 127 N.W.2d 400, 23 Wis.2d 453……………….....................7

Balafas v. Balafas, 117 N.W.2d 20, 263 Minn. 267 (1962)………………...4 n.2

Devlin v. Rockey, 295 F.2d 266 (7th Cir. 1961) ………………………………3, 4

Fletcher v. Reed, 131 Mass. 312 (1881)……………………………………...9

Georg v. Tzavos, 4 Mass. L. Rep. 391 (Mass. Super. Ct.,
    September 20, 1995)..…………………………………………………...9

Heath v. Spitzmiller, 663 S.W.2d 351 (Mo. App. S.D. 1983) ..…………..…3, 5

In re Eddy's Estate, 49 N.E.2d 628, 290 NY 677 (1941)………………...........3, 5

Johnson v. Kennedy, 350 Mass. 294, 214 N.E.2d 276, 278 (1966)……………8

Meehan v. Shaughnessy, 404 Mass. 419, 535 N.E.2d 1255 (1989)……………8

Osborne v. Workman, 621 S.W.2d 478, 273 Ark. 538 (1981)………………6, 7

Pappas v. Arfaras, 20 F. Supp. 2d 372, 378 (D. Conn. 1998)………………….12

Robbins v. Salem Radiology, 746 A.2d 885, 145 N.H. 415 (2000)………….3, 5

Steele v. Estabrook, 232 Mass. 432, 122 N.E. 562 (1919)………………........8-9

Wiggins v. Brand, 202 Mass. 141, 88 N.E. 840 (1909)………………………...9

Wood v. Gunther, 201 P.2d 874, 89 Cal. App. 2d 718 (1949)………:……….4, 5

## STATUTES

Mass. Gen. Laws c. 108A, § 23(1) …………………………………………..12

Mass. Gen. Laws c. 108A, § 31(1)(b)…………………………………….. 1-2

**ARGUMENT**

**1.   Because the Thirty-Year Term of the Partnership Agreement Terminated on January 8, 1994, Plaintiffs Need Not Resort to Massachusetts G.L. c. 108A, § 42.**

In reaching the conclusion that Plaintiffs cannot now receive from the Partnership the value of their respective interests, Defendants and the District Court both rely upon the argument that neither withdrawal nor retirement are available pursuant to G.L. c. 108A, § 42 where the partners have "otherwise agreed" to the mechanism by which a partner may withdraw or retire.[1] Appellees' Brief, pp. 11-15; APP-6-10 (Memorandum). This reliance, however, is misplaced as it relates to Plaintiffs' right to terminate a partnership at will. While Plaintiffs did initially designate their desired departure from the Partnership solely as a withdrawal or retirement pursuant to Section 42, APP-23 (W. Letter), Plaintiffs also plainly and unequivocally sought in their First Amended Complaint that the Partnership be terminated, and its assets liquidated and distributed accordingly. Addendum (First Amended Complaint). The express 30-year term of the Partnership Agreement expired on January 8, 1994, leaving the Partnership one at will. APP-17 (Agreement). Consequently, Plaintiffs have a clear right under G.L.

_____

[1] As discussed in detail in their Brief, Plaintiffs deny that any evidence exists from which a reasonable fact-finder could conclude that the original partners "otherwise agreed" to any mechanism for withdrawal or retirement.

1

c. 108A, § 31(1)(b) to terminate the Partnership and require its winding up regardless of any prior restrictions that may have existed regarding their withdrawal or retirement during the express term of the Partnership. Because Section 31(1)(b) does not require circumstances where the partners have not "otherwise agreed," the analysis of Defendants and the District Court is inapplicable to Plaintiffs' termination by this means, which must be allowed.

**2.    Even if Section 31(1)(b) Did Require Circumstances Where the Partners Have Not "Otherwise Agreed," No Reasonable Fact-Finder Could Conclude That the Partners Reached the Agreement Proposed By Defendants.**

While Defendants will no doubt argue that Paragraph 4 of the Modification was intended to void Plaintiffs' right to terminate the partnership at will pursuant to Section 31(1)(b), such a conclusion not only requires an abhorrently convoluted reading of the Partnership Agreement but would also conveniently leave entirely up to Defendants whether Plaintiffs can <u>ever</u> during their lifetime receive the value of their respective partnership interests – a result that could not possibly be intended by the law or by the original partners.

The irrationality of this proposed result is highlighted, ironically, by cases cited by Defendants in support of their position. Appellees' Brief, pp. 12-13. In fact, a reading of these cases beyond their elementary

2

confirmation that Section 42 should defer to a specific agreement to the

contrary clearly demonstrates: (1) the perversity of the result advocated by

Defendants, and (2) the qualitative difference between Paragraphs 4, 5 and 6

and language by which partners can legitimately be considered to have

"otherwise agreed".

Unlike the case at bar, where the specified term of the Partnership

Agreement has expired, the cases cited by Defendants are predominated by

situations where a partner has died or sought to withdraw or retire from a

partnership. However, even in these classic Section 42 scenarios -- where an

analysis of whether the partners have "otherwise agreed" is clearly

appropriate -- the withdrawing partner or the estate of the deceased partner

was consistently entitled to receive from the partnership the value of his or

her interest. See Devlin v. Rockey, 295 F.2d 266, 267 (7th Cir.

1961)(plaintiff *withdrawing* from partnership entitled to have his partnership

interest paid out pursuant to formula specified in partnership agreement);

Robbins v. Salem Radiology, 746 A.2d 885, 886, 145 N.H. 415, 416

(2000)(same); Heath v. Spitzmiller, 663 S.W.2d 351, 354-55 (Mo. App. S.D.

1983)(same);  In re Eddy's Estate, 49 N.E.2d 628, 290 NY 677 (1941)(upon

one partner's *death*, surviving partner allowed to purchase deceased

3

partner's interest in the partnership at a price fixed by formula in partnership agreement)[2].

While the various courts did find that the terms of the partnership agreement governed the method of determining the *value* of the departing partner's interest (as opposed to reliance on Section 42), in none of these cases was payment of that value, once determined, held to be subject to the whim of the remaining partners – the apparent goal of Defendants in this case. Likewise, in the one case cited by Defendants where a partner actually sought to *terminate* the partnership, the Court determined that she could in fact do so, subject to the right of the remaining partners to purchase her interest at market value to avoid the need to liquidate the partnership. Wood v. Gunther, 201 P.2d 874, 881, 89 Cal. App. 2d 718, 729 (1949).

Furthermore, in each of these cases, the partnership agreement at issue had a clear and unambiguous provision governing how the partnership interest of a deceased or withdrawing partner was to be valued, setting them far apart from this case, where Defendants' analysis relies as much upon whimsical speculation as the actual language of the Partnership Agreement. See, e.g., Devlin, 295 F.2d at 267 (Article XI: Withdrawal of Partners and

---

[2] The one exception, Balafas v. Balafas, 117 N.W.2d 20, 263 Minn. 267 (1962), where the Court found an agreement that if one partner died the other would receive the deceased partner's partnership interest, relied upon unusual facts not germane to this case.

Division of Earnings); Robbins, 746 A.2d at 886, 145 N.H. at 416 (Article

IX: Retirement, Death and/or Disability of a Partner); Heath, 663 S.W.2d at

354-55 (partnership agreement provided that withdrawing partner entitled to

his share of partnership's assets, which it valued "by multiplying the billings

to clients for the twelve months preceding the date of withdrawal times

150% and adding it to the fair market value of the partnership's 'equipment'

and 'Capital Investment'"); Wood v. Gunther, 201 P.2d at 876, 89 Cal. App.

2d at 721-22 (partnership agreement explicitly stated that "[s]hould any of

the partners desire to sell his interest in the partnership or to withdraw from

the partnership, … he shall do so only upon the following terms:" (a)-(d)); In

re Eddy's Estate, 49 N.E.2d at 628, 290 NY at 677 (partnership agreement

contained specific formula for setting price at which surviving partner could

purchase the deceased partner's interest).

   In light of these cases, it is impossible to conclude either that the

original partners "otherwise agreed" on a mechanism for withdrawal from

the Partnership or that the result that would obtain from adopting

Defendants' analysis is a reasonable or intended one. See Robbins, 746

A.2d at 888, 145 N.H. at 419 (refusing to construe a partnership agreement

in a manner that "would lead to a harsh and unreasonable result").

3.    **The _Osborne_ Case Does Not Advance Defendants' Argument.**

Defendants also cite a 23 year old decision of the Arkansas Supreme

Court, Osborne v. Workman, 621 S.W.2d 478, 273 Ark. 538 (1981), for the

proposition that a partnership agreement which provided that it could only

be "dissolved mutually or by law" was not terminable at will by an

individual partner.[3]  In the circumstances of the present case, the

Defendants' argument, and the Osborne case miss the mark.

The Court in Osborne held that a provision in the agreement providing

that the partnership could only be "dissolved mutually or by law" conflicted

with -- and so superceded -- the provision of the UPA which allowed for a

partner to dissolve a partnership formed for an indefinite period.  In reaching

its decision, the Osborne Court focused on the specific circumstances of the

case before it, and based its decision on the idea that partnerships amongst

professionals often require agreements that promote continuity and

longevity.  Specifically, the Court noted that:

> It is inconceivable that six doctors would form a partnership,
> enter into an elaborate agreement intended to promote
> longevity, set up a common practice, pool their equipment,

---

[3] The Plaintiff in Osborne was, however, entitled to withdraw from the
partnership and to receive from the partnership the value of his partnership
interest as specified in the partnership agreement -- his percentage of the
partnership's assets, excluding accounts receivable. Id., 621 S.W.2d at 479,
273 Ark. at 539.

records and resources, and intend that any one of them could
end it at any time by demanding dissolution and liquidation.

Osborne, 621 S.W.2d 480; 273 Ark. at 542.

In its reasoning the Osborne Court relied heavily upon the ruling of

the Wisconsin Supreme Court in Adams v. Jarvis, 127 N.W.2d 400, 23

Wis.2d 453, and quoted extensively from that Court's decision, including its

opinion that:

> Persons with professional qualifications commonly associate in
> business partnerships. ... The reasons for an agreement that a
> medical partnership should continue without disruption of the
> services rendered is self-evident. *If the partnership agreement*
> provides for continuation, *sets forth a method of paying the*
> *withdrawing partner his agreed share*, does not jeopardize the
> rights of creditors, the agreement is enforceable.

Adams, 127 N.W.2d at 403, 23 Wis.2d at 458-59 (emphasis added).

The Partnership in this case is not a professional association, and the

concerns of such associations are not at play. Furthermore, the Partnership

Agreement does not, as in Osborne and Adams, set forth a method of paying

a withdrawing partner his agreed share. Finally, and quite simply, this

decades-old Arkansas case is in conflict with all of the controlling

Massachusetts case law. See Appellants' Brief, Section 1.B. of Argument,

and cases cited. As such, it is entitled to absolutely no weight in this matter.

**4.    Paragraph 6 of the Partnership Agreement is, In Fact, Entirely Inconsistent With a Partnership at Will.**

Defendants seek support in their Brief at page 14 from the District

Court's assertion that:

> Paragraph 6 is not inconsistent with a partnership at will
> because it allows a partner to terminate *his or her interest* in the
> Partnership for any reason, at any time, albeit, subject to
> conditions.

APP-15 n.8 (Memorandum)(emphasis added).  Unfortunately for

Defendants, the District Court's conclusion is, as a matter of law, absolutely

incorrect.  The essence of a partnership at will is not that any partner may

terminate "his or her interest" at any time for any reason, but instead that any

partner may terminate "the partnership" at any time for any reason.  See

Meehan v. Shaughnessy, 404 Mass. 419, 428-29, 535 N.E.2d 1255, 1260

(1989)("Where a partnership agreement provides that the partnership is to

continue indefinitely, and the partnership is therefore 'at will,' a partner has

the right to dissolve the partnership" and receive his division of the

partnership assets); Johnson  v. Kennedy, 350 Mass. 294, 298, 214 N.E.2d

276, 278 (1966)("[I]n a partnership of indefinite duration, any partner may

lawfully dissolve the firm at any time"); Steele v. Estabrook, 232 Mass. 432,

439, 122 N.E. 562 (1919)("In the agreement of partnership between Hervey

and Steele there was no provision as to the time during which the partnership

8

was to continue. Under these circumstances either party had a right to terminate the partnership at will"); Wiggins v. Brand, 202 Mass. 141, 147, 88 N.E. 840, 841 (1909)("there having been no definite agreement … as to the time that it was to continue, the partnership should be treated as being strictly at will and as dissolved from the date of the filing of the bill"); Fletcher v. Reed, 131 Mass. 312, 313 (1881)("A partnership for an indefinite period is in law a partnership at the will of the partners, and either partner may withdraw when he pleases, and dissolve the partnership…."); Georg v. Tzavos, 4 Mass. L. Rep. 391 (Mass. Super. Ct., September 20, 1995)(because the partnership agreement lacked "any specific mutual agreement with respect to the duration of the partnership," the partnership "was therefore a partnership at will, which, under c. 108A, 31, could be dissolved at any time by either party").

Any aspect of Defendants' argument or the District Court's opinion founded on this errant understanding of partnerships at will is therefore fatally flawed.

## 5. Prior Counsel's Statement is Neither As Clear Cut Nor As Binding As Defendants Suggest.

Defendants focus a great deal on a letter from Plaintiffs' prior counsel to Defendants which Defendants quote as stating:

> We recognize that in order to terminate the partnership, a 60%
> vote of the partners is required… If you wish to terminate the
> partnership, we would participate in that vote in the affirmative.

Appellees' Brief, p. 8-9, 15 and 22. As is often the case, however, the devil

is in the ellipses and the portions omitted by Defendants are significant. In

full, the relevant portion of the letter reads:

> We recognize that in order to terminate the partnership, a 60%
> vote of the partners is required. In the absence of this 60%
> vote, you will of course continue the partnership as the sole
> partners and we will be general creditors of the partnership for
> our partnership interest. In this respect, your attention is invited
> to the provisions of Chapter 108A, Section 42 for the rights of a
> retired partner (that is, when any partner retires, and the
> business is continued, unless otherwise agreed, he or she may
> have the value of his or her interest ascertained as of the date of
> dissolution and shall receive as an ordinary creditor an amount
> equal to the value of his or her interest in the dissolved
> partnership, with interest, or at his or her option, in lieu of
> interest, the profits attributable to the use of his or her rights in
> the property of the dissolved partnership.) We desire of course
> to be paid in full.
>
> If you wish to terminate the partnership, we would participate
> in that vote in the affirmative.

See APP-23 (W. Letter). To the extent, then, that the Defendants seek to

imply intent from this communication, the Plaintiffs' intent seems clear –

they intended in one form or another to withdraw from the Partnership and

be paid in full for their respective partnership interests. Indeed, it would

appear that predecessor counsel was attempting, albeit somewhat

imprecisely, simply to allow the Defendants the option to continue the

10

partnership business, something which would not be possible if there was a full termination, which requires a liquidation of Partnership assets.

More to the point, though, to the extent that the Defendants seek to use predecessor counsel's statement as some sort of "gotcha" admission, the Defendants overestimate the import of the statement. Counsel cannot, simply by inadvertently misstating the law, actually *change* the law (much to the disappointment of many an attorney). To the extent that predecessor counsel's letter could be interpreted to suggest that the Partnership could only be terminated by a 60 percent vote of the Partnership, the simple answer is that, as a matter of law, predecessor counsel was mistaken.

**6.     After the Express Term of the Partnership Agreement Expired on January 8, 1994, the Rights and Duties of the Partners Remained the Same So Far as Consistent With A Partnership At Will.**

Finally, Defendants make much of the fact that following the termination of the Partnership Agreement's 30-year term, (a) Philip Tropeano and Carolyn Patton modified their prior designations assigning their respective partnership interests in the event of their death pursuant to Paragraph 5 of the Partnership Agreement, (2) the Modification was updated by amendment to reflect (i) that the interest of Joseph Tropeano had been fully paid and distributed following his death, and (ii) a change in ownership

11

of certain partnership interests, and (3) the partners continued to conduct the business of the Partnership. Appellees' Brief, pp. 8, 16, 20-22, 24.

In doing so, Defendants appear to willingly turn a blind eye to G.L. c. 108A, §23. Pursuant to Section 23(1):

> When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will.

(emphasis added). See, e.g., Pappas v. Arfaras, 20 F. Supp. 2d 372, 378 (D. Conn. 1998)(holding that, where a partnership is continued after its fixed term, the terms of the previous partnership agreement continue to apply except that "the fixed-term provision is disregarded").

When the fixed term of the Partnership Agreement expired on January 8, 1994 and the partners continued to conduct the business of the Partnership without any express agreement, the Partnership became a partnership at will. As such, the terms of the Partnership continue to control unless: (1) voluntarily modified by the parties, or (2) inconsistent with a partnership at will. Because the hallmark of a partnership at will is the ability to terminate the partnership for any reason and at any time, terms which prohibit such termination are inconsistent with a partnership at will and are, therefore, inapplicable.

12

The fact that the Partnership became a partnership at will did not at all affect the rights of the partners to modify their respective schedules of beneficiaries or to operate the business of the Partnership, nor is such conduct on the part of these parties at all supportive of Defendants' argument that the Partnership did not become a partnership at will on January 8, 1994.

Respectfully submitted,

PHILIP L. TROPEANO, PETER TROPEANO, and CAROLYN PATTON

By their attorney,

Thomas Ciampa (BBO # 566898)
Ciampa & Associates
45 Bromfield Street, Suite 200
Boston, MA 02108
(617) 742-5955

Dated:  August 1, 2005

13