1

```
 1              COMMONWEALTH OF MASSACHUSETTS

 2    MIDDLESEX, SS.          PROBATE AND FAMILY COURT

 3                            DOCKET NO.: 94E-0216-G1

 4                            EQUITY
```

```
*********************************************
 EMILY A. TROPEANO,                          *
 Individually and as                         *
 Executrix of the Estate of Joseph C.        *
 Tropeano or Successor to his Interest,      *
           Plaintiff,                        *
 VS.                                         *
 ALFRED P. TROPEANO, PHILIP TROPEANO         *
 and PETER TROPEANO, Individually, as        *
 Trustees of the T & N Realty Trust, and     *
 Partners of the Captain Parker Arms         *
 Partnership and CAROLINE PATTEN,            *
 Individually and as Partner of the Captain  *
 Parker Arms Partnership, Parker Arms        *
 Partnership, and LAURENCE L. TROPEANO,      *
 Individually and as Trustee of the          *
 T & N Realty Trust,                         *
           Defendants.                       *
*********************************************
```

   DEPOSITION of ALFRED P. TROPEANO, taken pursuant to Notice Under the Mass. Rules of Civil Procedure, before Rebecca Day, a Professional Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Law Offices of Barry C. Abelson & Associates, 420 North Main Street, Randolph, Massachusetts, on February 26, 1996, commencing at 10:50 a.m.

```
         *************************
         *    MELVIN LIPMAN       *
         * 44 BROMFIELD STREET    *
         *   BOSTON, MA  02108    *
         *     (617) 227-3985     *
         *************************
```

DORMAN-CPA 001456

```
 1                  A P P E A R A N C E S:

 2


 3      Law Offices of Barry C. Abelson & Associates
        (By:  Jill M. Bradley, Esq.)
 4      420 North Main Street
        Randolph, MA 02368
 5                On behalf of the Plaintiff,
                  Emily A. Tropeano
 6


 7


 8


 9


10      Frederick J. Conroy, Esq.
        114 Waltham Street
11      Lexington, MA 02173
                  On behalf of Alfred P. Tropeano
12                and Laurence L. Tropeano


13


14


15


16      Sloane & Walsh
        (By:  Lawrence J. Kenney, Jr., Esq.)
17      Three Center Plaza
        Boston, MA   02108
18                On behalf of Philip Tropeano,
                  Peter Tropeano and Caroline Patten
19


20
        Also Present:
21      Oona Tropeano
        and Thomas Tropeano
22


23


24
```

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001457

3

I N D E X

| DEPOSITION OF | DIRECT | REDIRECT |
|---|---|---|
| ALFRED P. TROPEANO, | | |
| (by Ms. Bradley) | 9-66 | 92-95 |
| | CROSS | RECROSS |
| (by Mr. Conroy) | 66-88 | 91-92 |
| (by Mr. Kenney) | 88-91 | |

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 1 | Notice of Deposition | 11 |
| 2 | Document regarding the Sale of Partnership Interest | 13 |
| 3 | Receipt and Assignment | 13 |
| 4 | 1991 U.S. Partnership Return of Income | 15 |
| 5 | 1992 U.S. Partnership Return of Income | 16 |
| 6 | 1993 U.S. Partnership Return of Income | 19 |
| 7 | 1994 Rent-roll | 25 |

LASER STOCK FORM B
THE CORBY GROUP 1-800-255-5040
DORMAN-CPA 001458

```
1                E X H I B I T S
2     NO.                                              PAGE
3     8        1993 Rent-roll                          26-27
4
5     9        1992 Rent-roll                          27
6
7     10       1991 Rent-roll                          27
8
9     11       1994 Disbursements Journal              30
10
11    12       Letter to Emily Tropeano
12             from Alfred Tropeano,
13             dated 9/12/85                           33
14
15    13       Letter to Emily Tropeano
16             from Alfred Tropeano,
17             dated 7/25/90                           36
18
19    14       Document "To The Partners
20             Of Captain Parker Arms",
21             dated 1/6/86                            38
22
23
24
```

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001459

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 15 | Document regarding Captain Parker Arms, signed by Alfred P. Tropeano, Wilbur C. Nylander and Emily Tropeano, dated 7/20/87 | 40 |
| 16 | Document regarding Captain Parker Arms signed by Alfred P. Tropeano, Wilbur C. Nylander and Emily Tropeano, dated 7/25/88 | 46 |
| 17 | Joseph C. Tropeano Family Trust and Transfer Of Shares Of T & N Realty Trust To Joseph C. Tropeano Trust | 50 |
| 18 | Letter and enclosures addressed to Emily Tropeano from Alfred Tropeano, dated 10/28/91 | 56 |
| 19 | Appraisal of the apartment complex Captain Parker Arms | 56 |

LASER STOCK FORM B
THE CORBY GROUP 1-800-255-5040
DORMAN-CPA 001460

```
 1                    E X H I B I T S

 2         NO.                                              PAGE

 3         20      1988 and 1989 Distribution Letter         59

 4

 5         21      Letter to Emily Tropeano

 6                 from Alfred Tropeano,

 7                 dated 10/3/90                             61

 8

 9         22      Letter to Alfred Tropeano

10                 from William Talis regarding

11                 Emily Tropeano, dated 9/4/92              61

12

13         23      Letter and enclosures addressed

14                 to William Talis from Alfred Tropeano,

15                 dated 9/28/92                             63

16

17         24      Letter to Alfred Tropeano

18                 from Emily Tropeano, dated 8/6/90         65

19

20         25      Schedule of Wilbur C. Nylander            69

21

22         26      Letter to Emily Tropeano

23                 from Alfred Tropeano, dated 1/6/86        73

24
```

DORMAN-CPA 001461

```
 1              E X H I B I T S

 2     NO.                                              PAGE

 3     27    Letter to Alfred Tropeano

 4           from John Lawson, dated 1/7/86              73

 5

 6     28    Letter to Alfred Tropeano

 7           from John Lawson, dated 9/15/86             74

 8

 9     29    Letter and enclosure to John Lawson

10           from Alfred Tropeano, dated 9/19/86         74

11

12     30    Document addressed to John Lawson

13           from Alfred Tropeano, dated 9/22/86         75

14

15     31    Letter to Emily Tropeano

16           from Alfred Tropeano, dated 3/20/92         75

17

18     32    Letter to William Talis

19           from Alfred Tropeano, dated 6/2/93          75

20

21     33    Modification document

22           and attached Schedules                      84

23

24
```

LASER STOCK FORM B
THE CORBY GROUP 1-800-255-5040
DORMAN-CPA 001462

E X H I B I T S

| NO. | | PAGE |
|---|---|---|
| 34 | Letter to Alfred Tropeano from William Talis, dated 8/2/85 | 93 |
| 35A | Durable Power of Attorney of Joseph C. Tropeano | 94 |
| 35B | Certificate of Nonrevocation of Durable Power of Attorney | 94 |

DORMAN-CPA 001463

```
                    P R O C E E D I N G S
     MS. BRADLEY:  Do you want Mr. Tropeano to
read and sign?
     MR. CONROY:  Yes.
     MS. BRADLEY:  Do you want it notarized?
     MR. CONROY:  I'll waive it, if you do.
     MS. BRADLEY:  All right.  And we are going
to have the usual stipulations:  All objections,
except as to form, and motions to strike.
Everything else is waived until the time of
trial.
     MR. KENNEY:  All objections, except as to
form and motions to strike, are reserved until
the time of trial.
     MS. BRADLEY:  Right.
     (Witness sworn)
               ALFRED P. TROPEANO,
a witness called for examination by counsel for
the Plaintiff, being first duly sworn, was
examined and testified as follows:
               DIRECT EXAMINATION
BY MS. BRADLEY:
Q.   Okay.  Good morning, Mr. Tropeano.  I'll
just explain to you that if you don't understand
```

DORMAN-CPA 001464

1  before. I had 40 percent and the others had 15
2  percent. *each.* It would show the 15 percent that was
3  divided.
4      MS. BRADLEY: Okay. I'm going to mark the
5  1992 U.S. Partnership Return, as well.
6      (Document marked as
7      Exhibit No. 5 for identification)
8  Q.  Okay. Now, I'm going to show you --
9      MS. BRADLEY: Would you like to see the 1992
10 Partnership Return before I show it to him?
11     MR. CONROY: Yes (observing document).
12 Q.  Okay. Now, I want you to look at the page
13 which is in front of you. Can you tell me what
14 happened in 1992, that you now have three
15 additional parties who have interests in the
16 Captain Parker Arms Partnership?
17 A.  Okay (observing document). Well, Nylander
18 died and his interest went to his daughter. He
19 had a 17 point fraction percent interest. It
20 went to his -- half went to his daughter and the
21 other remaining half went to his two
22 grandchildren.
23 Q.  All right. And do you recall how long this
24 arrangement continued with each of those three

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001471

1   parties?

2   A.   Until they sold out to Captain Parker

3   Arms.  You have the document in there.  They

4   transferred their interests.

5   Q.   And can you explain how that buyout came

6   about?

7   A.   They wanted their cash, and so it was

8   appraised at the value shown on the agreement,

9   which was $4,966,000.  And then there was the

10  deduction of approximately $2,400,000, and there

11  were the other deductions that made each

12  person's interest at 17.65 percent to be

13  $444,771.

14      And then on the page where they acknowledged

15  the receipt, they transferred their interests in

16  the real estate to myself, and to Louie, and to

17  Phil.  So then I wound up with 57.14 percent,

18  and each of the others wound up with 21.43

19  percent.

20  Q.   All right.  I want to direct your attention

21  to Exhibit 2 and show you that, again.  You have

22  "Purchase Price" on the first page there, and

23  then you have in the middle, "Deduct amount due

24  Estate of Joseph C. Tropeano."  Now, where did

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001472

```
 1    Q.    This is a letter that you produced.  Can
 2    you look at it?
 3    A.    (Observing document).
 4          (Off the record discussion)
 5    Q.    Have you had a chance to review that
 6    letter?
 7    A.    Yes.
 8    Q.    Okay.  Can you explain what happened during
 9    this time period that caused you to write that
10    letter?
11    A.    Well, Joe had died and then Joe's estate
12    was entitled to income up until the date of his
13    death and made payable to her as the executrix
14    or -- well, that check must have been made
15    payable to the estate of Joe Tropeano.  She had
16    not been appointed as the executrix at the time.
17    Q.    When did you first approach Emily Tropeano
18    about buying her interest?
19    A.    I never approached Emily Tropeano about
20    buying her interest.  When Joe died, the real
21    estate interest ceased to be real estate and
22    became personal property.  Emily never had
23    anything to sell.
24    Q.    Then how do you explain how Wilbur
```

```
 1    Nylander's heirs had something to sell to you?
 2    A.   Because the partnership agreement,
 3    reconstructed at time, had provided that
 4    any deceased partner's share would go to there
 5    named principals.  And there was a schedule for
 6    Nylander's estate that provided that his
 7    interest would go to his children, his daughter
 8    and grandchildren.
 9    Q.   Were you aware, though, that Joe Tropeano's
10    interest went to his wife?
11    A.   Beg your pardon?
12    Q.   Were you aware that Joseph Tropeano's
13    interest went to his wife?
14    A.   When Joe died, the interest that Emily
15    received was the value of the real estate being
16    personal property.  And the surviving partners
17    had to administer that as trustees for them, so
18    the partnership terminates the interest in the
19    real estate.
20    Q.   Okay.  But your letters --
21    A.   She was represented by counsel, Goldstein &
22    Manello.  And it was agreed with Goldstein &
23    Manello, and they knew and some of the others in
24    there, that Joe's interest became personal
```

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001490

1  value of the real estate.
2  Q.   All right.  Did you ever discuss that with
3  her?
4  A.   With her lawyers.
5  Q.   When did you discuss this with her lawyers?
6  A.   Shortly after Joe died.  When the will was
7  being probated, we discussed the value and I
8  told her lawyer, and there is a letter in there,
9  that John Hancock had appraised the property at
10  $3,600,000.  So then he wanted -- later on, he
11  wanted the value of the personal property and so
12  forth, and a letter was sent to him setting
13  forth the personal property and the value in
14  there.
15  Q.   And do you know what time period you are
16  referring to?
17  A.   It was while the estate -- while the will
18  was being probated in there.
19  Q.   And now, you referred to a value that was
20  completed by John Hancock.  And what year was
21  that completed?
22  A.   Well, the mortgage went on for $2,500,000.
23  Q.   What year was that?
24  A.   19 -- let me see the other exhibit.

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001497

52

1   Declaration of Trust that was nonexistent in
2   1963. There was a 1962 trust.
3   Q. Well, that trust that you are referring to
4   set up what everyone's interest in the
5   partnership was, though?
6   A. As I stated before, the shares were never
7   issued. They were signed and no considerations
8   were ever paid. Originally, we were going to
9   set up shares and everybody had received copies
10  of the proposed documents.
11      We had a meeting with the accountant, and it
12  developed that by setting up the shares it would
13  have been taxed as a corporation. And
14  therefore, we would form a partnership to avoid
15  the corporate taxes on that.
16      And the partnership agreement specifically
17  provided that the title would be taken in the
18  T & N Realty Trust, dated -- to my recollection
19  it was 1962, the partnership agreement in
20  there. And therefore, we never would have had
21  any shares, and no corporate tax returns were
22  ever filed and no corporate books were ever
23  kept.
24  Q. But the property was held in a trust?

DORMAN-CPA 001507

53

1   A.   The title was. The partnership was the
2   beneficiary, so the trust only had the ~~negative~~ *legal*
3   ~~title~~ *Title* the ~~legal~~ *equitable* title ~~of~~ *to* the beneficiaries, which
4   would be the Captain Parker Arms Partnership.
5   Q.   Okay. So you view this as not valid? Is
6   that what you are saying?
7   A.   That's correct. The first time that I ever
8   heard it come up was after the deposition.
9   Q.   So it was news to you that this document
10  ever existed?
11  A.   I never saw this document.
12  Q.   Okay.
13       MR. CONROY: Excuse me. There were two
14  documents.
15       MS. BRADLEY: Well, what I refer to as a
16  "document" is Exhibit 17, which is both the
17  trust and the transfer. Is that what you're
18  referring to?
19       MR. CONROY: I think he just told you that
20  one of documents that he recently learned
21  about -- I think it was pretty clear. He didn't
22  know about Joe's trust. He was certainly aware
23  that they had negotiated the use of their
24  shares. Maybe I misunderstood your question.

DORMAN-CPA 001508

```
 1                *** C E R T I F I C A T E ***
 2
 3       I, ALFRED P. TROPEANO, do hereby certify
 4  that I have read the foregoing transcript of my
 5  testimony, and further certify that said
 6  transcript is a true and accurate record of said
 7  testimony.    SEE ERRATA SHEET.
 8
 9       Dated at _Lexington MA_, this _22_
10  day of _April_, 1996.
11
12
13
14                          _____
15                          [signature: Alfred P. Tropeano]
16
17
18
19
20
21
22
23
24
```

LASER STOCK FORM B
THE CORBY GROUP  1-800-255-5040
DORMAN-CPA 001451

## Errata Sheet

Re: Emily A. Tropeano

Vs. Alfred P. Tropeano, et al

Deposition of Alfred P. Tropeano on February 26, 1996.

| | | |
|---|---|---|
| 1. | Page 15, Line 14. | Change the word "writes" to "brings" |
| 2. | Page 16, Line 2. | After the word "percent" add the word "each" |
| 3. | Page 26, Line 2. | Change the word "background" to "back rent" |
| 4. | Page 35, Line 4. | Change the word "the" to "those" |
| 5. | Page 35, Line 5. | Add the words "by the" between the words "named" and "principals" |
| 6. | Page 41, Line 8. | Change the word "account" to "accounting" |
| 7. | Page 52, Line 14. | Change the word "find" to "form" |
| 8. | Page 53, Line 2. | Change the word "negative" to "legal title" |
| 9. | Page 53, Line 3. | Change the word "legal" to "equitable" and the word "of" to "to" |
| 10. | Page 62, Line 12. | Change the word "assigned" to "signed" |
| 11. | Page 71, Line 18. | Delete one "that" |
| 12. | Page 77, Line 22. | Change the words "the trust" to "them,", delete the period, and change the capital "T" to a lower case "t" on the word "That" so that it reads "no charge to them, that was" |
| 13. | Page 78, Line 15. | Delete the words "and I am saying" |
| 14. | Page 79, Line 16. | Delete the words "for a --" and insert "per acre" |
| 15. | Page 82, Lines 5 and 14. | Change the word "Harbor" to "Hartwell" |
| 16. | Page 92, Line 7. | Change the words "that there" to "the motion". |

DORMAN-CPA 001452