1

1     COMMONWEALTH OF MASSACHUSETTS

2     MIDDLESEX, SS.        PROBATE AND FAMILY COURT

3                          DOCKET NO.: 94E-0216-G1

4                          EQUITY

5     ***********************************************
      EMILY A. TROPEANO,                            *
6     Individually and as                           *
      Executrix of the Estate of Joseph C.          *
7     Tropeano or Successor to his Interest,        *
              Plaintiff,                             *
8     VS.                                            *
      ALFRED P. TROPEANO, PHILIP TROPEANO           *
9     and PETER TROPEANO, Individually, as          *
      Trustees of the T & N Realty Trust, and       *
10    Partners of the Captain Parker Arms           *
      Partnership and CAROLINE PATTEN,              *
11    Individually and as Partner of the Captain    *
      Parker Arms Partnership, Parker Arms          *
12    Partnership, and LAURENCE L. TROPEANO,        *
      Individually and as Trustee of the            *
13    T & N Realty Trust,                           *
              Defendants.                            *
14    ***********************************************

15        DEPOSITION of ALFRED P. TROPEANO, taken
      pursuant to Notice Under the Mass. Rules of
16    Civil Procedure, before Rebecca Day, a
      Professional Shorthand Reporter and Notary
17    Public in and for the Commonwealth of
      Massachusetts, at the Law Offices of Barry C.
18    Abelson & Associates, 420 North Main Street,
      Randolph, Massachusetts, on February 26, 1996,
19    commencing at 10:50 a.m.

20

21

22        **************************
          *     MELVIN LIPMAN      *
23        *  44 BROMFIELD STREET   *
          *    BOSTON, MA  02108    *
24        *    (617) 227-3985      *
          **************************

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001456

2

```
 1               A P P E A R A N C E S:

 2


 3        Law Offices of Barry C. Abelson & Associates
          (By:  Jill M. Bradley, Esq.)
 4        420 North Main Street
          Randolph, MA 02368
 5                   On behalf of the Plaintiff,
                     Emily A. Tropeano

 6


 7


 8


 9


10        Frederick J. Conroy, Esq.
          114 Waltham Street
11        Lexington, MA 02173
                     On behalf of Alfred P. Tropeano
12                   and Laurence L. Tropeano

13


14


15


16        Sloane & Walsh
          (By:  Lawrence J. Kenney, Jr., Esq.)
17        Three Center Plaza
          Boston, MA  02108
18                   On behalf of Philip Tropeano,
                     Peter Tropeano and Caroline Patten

19


20        Also Present:
21        Oona Tropeano
          and Thomas Tropeano

22


23


24
```

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001457

3

```
 1                      I N D E X

 2    DEPOSITION OF              DIRECT        REDIRECT

 3    ALFRED P. TROPEANO,

 4    (by Ms. Bradley)          9-66          92-95

 5                              CROSS         RECROSS

 6    (by Mr. Conroy)          66-88          91-92

 7    (by Mr. Kenney)          88-91

 8

 9              E X H I B I T S

10    NO.                                     PAGE

11    1     Notice of Deposition             11

12

13    2     Document regarding the

14          Sale of Partnership Interest     13

15

16    3     Receipt and Assignment           13

17

18    4     1991 U.S. Partnership Return of Income   15

19

20    5     1992 U.S. Partnership Return of Income   16

21

22    6     1993 U.S. Partnership Return of Income   19

23

24    7     1994 Rent-roll                   25
```

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001458

4

```
 1              E X H I B I T S

 2        NO.                                    PAGE

 3        8     1993 Rent-roll                  26-27

 4

 5        9     1992 Rent-roll                    27

 6

 7       10     1991 Rent-roll                    27

 8

 9       11     1994 Disbursements Journal        30

10

11       12     Letter to Emily Tropeano

12              from Alfred Tropeano,

13              dated 9/12/85                      33

14

15       13     Letter to Emily Tropeano

16              from Alfred Tropeano,

17              dated 7/25/90                      36

18

19       14     Document "To The Partners

20              Of Captain Parker Arms",

21              dated 1/6/86                       38

22

23

24
```

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001459

5

1                    E X H I B I T S

2      NO.                                              PAGE

3      15    Document regarding Captain Parker Arms,

4            signed by Alfred P. Tropeano,

5            Wilbur C. Nylander and Emily Tropeano,

6            dated 7/20/87                              40

7

8      16    Document regarding Captain Parker Arms

9            signed by Alfred P. Tropeano,

10           Wilbur C. Nylander and Emily Tropeano,

11           dated 7/25/88                              46

12

13     17    Joseph C. Tropeano Family Trust

14           and Transfer Of Shares Of T & N

15           Realty Trust To Joseph C.

16           Tropeano Trust                             50

17

18     18    Letter and enclosures addressed

19           to Emily Tropeano from Alfred Tropeano,

20           dated 10/28/91                             56

21

22     19    Appraisal of the apartment

23           complex Captain Parker Arms               56

24

LASER STOCK FORM B

THE CORBY GROUP  1-800-255-5040

DORMAN-CPA 001460

6

1                    E X H I B I T S

2       NO.                                              PAGE

3       20     1988 and 1989 Distribution Letter         59

4

5       21     Letter to Emily Tropeano

6              from Alfred Tropeano,

7              dated 10/3/90                              61

8

9       22     Letter to Alfred Tropeano

10             from William Talis regarding

11             Emily Tropeano, dated 9/4/92              61

12

13      23     Letter and enclosures addressed

14             to William Talis from Alfred Tropeano,

15             dated 9/28/92                             63

16

17      24     Letter to Alfred Tropeano

18             from Emily Tropeano, dated 8/6/90         65

19

20      25     Schedule of Wilbur C. Nylander           69

21

22      26     Letter to Emily Tropeano

23             from Alfred Tropeano, dated 1/6/86        73

24

LASER STOCK FORM 13

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001461

7

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

1               E X H I B I T S

2    NO.                                          PAGE

3    27    Letter to Alfred Tropeano

4          from John Lawson, dated 1/7/86          73

5

6    28    Letter to Alfred Tropeano

7          from John Lawson, dated 9/15/86         74

8

9    29    Letter and enclosure to John Lawson

10         from Alfred Tropeano, dated 9/19/86     74

11

12   30    Document addressed to John Lawson

13         from Alfred Tropeano, dated 9/22/86     75

14

15   31    Letter to Emily Tropeano

16         from Alfred Tropeano, dated 3/20/92     75

17

18   32    Letter to William Talis

19         from Alfred Tropeano, dated 6/2/93      75

20

21   33    Modification document

22         and attached Schedules                  84

23

24

DORMAN-CPA 001462

8

1                     E X H I B I T S

2       NO.                                          PAGE

3       34      Letter to Alfred Tropeano

4               from William Talis, dated 8/2/85        93

5

6       35A     Durable Power of Attorney

7               of Joseph C. Tropeano                    94

8

9       35B     Certificate of Nonrevocation

10              of Durable Power of Attorney            94

11

12

13

14

15

16

17

18

19

20

21

22

23

24

LASER STOCK FORM B

THE CORBY GROUP  1-800-255-5040

DORMAN-CPA 001463

9

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

P R O C E E D I N G S

1

2     MS. BRADLEY:  Do you want Mr. Tropeano to

3     read and sign?

4     MR. CONROY:  Yes.

5     MS. BRADLEY:  Do you want it notarized?

6     MR. CONROY:  I'll waive it, if you do.

7     MS. BRADLEY:  All right.  And we are going

8     to have the usual stipulations:  All objections,

9     except as to form, and motions to strike.

10    Everything else is waived until the time of

11    trial.

12    MR. KENNEY:  All objections, except as to

13    form and motions to strike, are reserved until

14    the time of trial.

15    MS. BRADLEY:  Right.

16    (Witness sworn)

17             ALFRED P. TROPEANO,

18    a witness called for examination by counsel for

19    the Plaintiff, being first duly sworn, was

20    examined and testified as follows:

21             DIRECT EXAMINATION

22    BY MS. BRADLEY:

23    Q.   Okay.  Good morning, Mr. Tropeano.  I'll

24    just explain to you that if you don't understand

DORMAN-CPA 001464

16

1    before.  I had 40 percent and the others had 15

2    percent.  *each.* It would show the 15 percent that was

3    divided.

4        MS. BRADLEY:  Okay.  I'm going to mark the

5    1992 U.S. Partnership Return, as well.

6        (Document marked as

7        Exhibit No. 5 for identification)

8    Q.   Okay.  Now, I'm going to show you --

9        MS. BRADLEY:  Would you like to see the 1992

10   Partnership Return before I show it to him?

11       MR. CONROY:  Yes (observing document).

12   Q.   Okay.  Now, I want you to look at the page

13   which is in front of you.  Can you tell me what

14   happened in 1992, that you now have three

15   additional parties who have interests in the

16   Captain Parker Arms Partnership?

17   A.   Okay (observing document).  Well, Nylander

18   died and his interest went to his daughter.  He

19   had a 17 point fraction percent interest.  It

20   went to his -- half went to his daughter and the

21   other remaining half went to his two

22   grandchildren.

23   Q.   All right.  And do you recall how long this

24   arrangement continued with each of those three

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001471

1    parties?

2    A.    Until they sold out to Captain Parker

3    Arms.    You have the document in there.    They

4    transferred their interests.

5    Q.    And can you explain how that buyout came

6    about?

7    A.    They wanted their cash, and so it was

8    appraised at the value shown on the agreement,

9    which was $4,966,000.    And then there was the

10    deduction of approximately $2,400,000, and there

11    were the other deductions that made each

12    person's interest at 17.65 percent to be

13    $444,771.

14        And then on the page where they acknowledged

15    the receipt, they transferred their interests in

16    the real estate to myself, and to Louie, and to

17    Phil.    So then I wound up with 57.14 percent,

18    and each of the others wound up with 21.43

19    percent.

20    Q.    All right.    I want to direct your attention

21    to Exhibit 2 and show you that, again.    You have

22    "Purchase Price" on the first page there, and

23    then you have in the middle, "Deduct amount due

24    Estate of Joseph C. Tropeano."    Now, where did

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

34

1    Q.    This is a letter that you produced.  Can

2    you look at it?

3    A.    (Observing document).

4         (Off the record discussion)

5    Q.    Have you had a chance to review that

6    letter?

7    A.    Yes.

8    Q.    Okay.  Can you explain what happened during

9    this time period that caused you to write that

10   letter?

11   A.    Well, Joe had died and then Joe's estate

12   was entitled to income up until the date of his

13   death and made payable to her as the executrix

14   or -- well, that check must have been made

15   payable to the estate of Joe Tropeano.  She had

16   not been appointed as the executrix at the time.

17   Q.    When did you first approach Emily Tropeano

18   about buying her interest?

19   A.    I never approached Emily Tropeano about

20   buying her interest.  When Joe died, the real

21   estate interest ceased to be real estate and

22   became personal property.  Emily never had

23   anything to sell.

24   Q.    Then how do you explain how Wilbur

LASER STOCK FORM B

THE CORBY GROUP  1-800-255-5840

1    Nylander's heirs had something to sell to you?

2    A.   Because the partnership agreement,

3    reconstructed at that time, had provided that

4    any deceased partner's share would go to ~~the~~ those

5    named principals.  And there was a schedule for

6    Nylander's estate that provided that his

7    interest would go to his children, his daughter

8    and grandchildren.

9    Q.   Were you aware, though, that Joe Tropeano's

10    interest went to his wife?

11    A.   Beg your pardon?

12    Q.   Were you aware that Joseph Tropeano's

13    interest went to his wife?

14    A.   When Joe died, the interest that Emily

15    received was the value of the real estate being

16    personal property.  And the surviving partners

17    had to administer that as trustees for them, so

18    the partnership terminates the interest in the

19    real estate.

20    Q.   Okay.  But your letters --

21    A.   She was represented by counsel, Goldstein &

22    Manello.  And it was agreed with Goldstein &

23    Manello, and they knew and some of the others in

24    there, that Joe's interest became personal

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

42

1    value of the real estate.

2    Q.   All right.  Did you ever discuss that with

3    her?

4    A.   With her lawyers.

5    Q.   When did you discuss this with her lawyers?

6    A.   Shortly after Joe died.  When the will was

7    being probated, we discussed the value and I

8    told her lawyer, and there is a letter in there,

9    that John Hancock had appraised the property at

10    $3,600,000.  So then he wanted -- later on, he

11    wanted the value of the personal property and so

12    forth, and a letter was sent to him setting

13    forth the personal property and the value in

14    there.

15    Q.   And do you know what time period you are

16    referring to?

17    A.   It was while the estate -- while the will

18    was being probated in there.

19    Q.   And now, you referred to a value that was

20    completed by John Hancock.  And what year was

21    that completed?

22    A.   Well, the mortgage went on for $2,500,000.

23    Q.   What year was that?

24    A.   19 -- let me see the other exhibit.

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001497

52

1    Declaration of Trust that was nonexistent in

2    1963.  There was a 1962 trust.

3    Q.  Well, that trust that you are referring to

4    set up what everyone's interest in the

5    partnership was, though?

6    A.  As I stated before, the shares were never

7    issued.  They were signed and no considerations

8    were ever paid.  Originally, we were going to

9    set up shares and everybody had received copies

10   of the proposed documents.

11       We had a meeting with the accountant, and it

12   developed that by setting up the shares it would

13   have been taxed as a corporation.  And

14   therefore, we would ~~find~~ *form* a partnership to avoid

15   the corporate taxes on that.

16       And the partnership agreement specifically

17   provided that the title would be taken in the

18   T & N Realty Trust, dated -- to my recollection

19   it was 1962, the partnership agreement in

20   there.  And therefore, we never would have had

21   any shares, and no corporate tax returns were

22   ever filed and no corporate books were ever

23   kept.

24   Q.  But the property was held in a trust?

LASER STOCK FORM B

THE CORBY GROUP  1-800-255-5040

DORMAN-CPA 001507

53

1    A.    The title was.  The partnership was the

2    beneficiary, so the trust only had the ~~negative~~ *legal*

3    ~~Title~~ *equitable* the ~~legal~~ title *to* the beneficiaries, which

4    would be the Captain Parker Arms Partnership.

5    Q.    Okay.  So you view this as not valid?  Is

6    that what you are saying?

7    A.    That's correct.  The first time that I ever

8    heard it come up was after the deposition.

9    Q.    So it was news to you that this document

10   ever existed?

11   A.    I never saw this document.

12   Q.    Okay.

13      MR. CONROY:  Excuse me.  There were two

14   documents.

15      MS. BRADLEY:  Well, what I refer to as a

16   "document" is Exhibit 17, which is both the

17   trust and the transfer.  Is that what you're

18   referring to?

19      MR. CONROY:  I think he just told you that

20   one of documents that he recently learned

21   about -- I think it was pretty clear.  He didn't

22   know about Joe's trust.  He was certainly aware

23   that they had negotiated the use of their

24   shares.  Maybe I misunderstood your question.

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

96

*** C E R T I F I C A T E ***

I, ALFRED P. TROPEANO, do hereby certify

that I have read the foregoing transcript of my

testimony, and further certify that said

transcript is a true and accurate record of said

testimony.   SEE ERRATA SHEET.

Dated at _____, this _____ 22

day of _____, 1996.

_____

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

DORMAN-CPA 001451

**Errata Sheet**

Re: Emily A. Tropeano

Vs. Alfred P. Tropeano, et al

Deposition of Alfred P. Tropeano on February 26, 1996.

| | | |
|---|---|---|
| 1. | Page 15, Line 14. | Change the word "writes" to "brings" |
| 2. | Page 16, Line 2. | After the word "percent" add the word "each" |
| 3. | Page 26, Line 2. | Change the word "background" to "back rent" |
| 4. | Page 35, Line 4. | Change the word "the" to "those" |
| 5. | Page 35, Line 5. | Add the words "by the" between the words "named" and "principals" |
| 6. | Page 41, Line 8. | Change the word "account" to "accounting" |
| 7. | Page 52, Line 14. | Change the word "find" to "form" |
| 8. | Page 53, Line 2. | Change the word "negative" to "legal title" |
| 9. | Page 53, Line 3. | Change the word "legal" to "equitable" and the word "of" to "to" |
| 10. | Page 62, Line 12. | Change the word "assigned" to "signed" |
| 11. | Page 71, Line 18. | Delete one "that" |
| 12. | Page 77, Line 22. | Change the words "the trust" to "them,", delete the period, and change the capital "T" to a lower case "t" on the word "That" so that it reads "no charge to them, that was" |
| 13. | Page 78, Line 15. | Delete the words "and I am saying" |
| 14. | Page 79, Line 16. | Delete the words "for a --" and insert "per acre" |
| 15. | Page 82, Lines 5 and 14. | Change the word "Harbor" to "Hartwell" |
| 16. | Page 92, Line 7. | Change the words "that there" to "the motion". |

DORMAN-CPA 001452